**JOHN J. ZIDZUNAS & ASSOCIATES, LLC**
**John Zidziunas, Esq. (ATTY ID 5544044)**
**6 St. John's Lane, 6th Floor**
**New York, New York 10013**
**Phone: 973-509-8500**
***Attorneys for Plaintiffs, JC Hospitality d/b/a The Surf Lodge and Jayma Cardoso***

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JC HOSPITALITY d/b/a/ THE SURF LODGE and JAYMA CARDOSO,<br><br>Plaintiffs,<br><br>-against-<br><br>MARISA HOCHBERG (In Her Individual and Professional Capacities),<br><br>Defendant. | INDEX NO.<br><br><br><br>**COMPLAINT** |

Plaintiffs, JC Hospitality d/b/a The Surf Lodge ("The Surf Lodge") and Jayma Cardoso ("Cardoso," and collectively with The Surf Lodge, "Surf Lodge" or the "Plaintiffs"), with addresses in New York, New York and at 183 Edgemere Street, Montauk, New York 11945, by way of this Complaint against the Defendant, Marisa Hochberg, in her individual and professional capacities ("Hochberg" or the "Defendant"), with addresses in New York, New York and with her attorneys at 257 Pantigo Road, East Hampton, New York 11937, hereby allege and say the following:

### I. Nature of Action, Jurisdiction, and Venue

1. This is an action at law and equity for trademark infringement, false designation of origin, and unfair competition arising under the Trademark Act of 1946, 15 U.S.C. § 1051 *et seq.* (a/k/a the "Lanham Act") and the common law, as well as violation of New York

State business and consumer protection laws, and tortious interference. The Plaintiffs allege that the Defendant has committed the following wrongful and illegal acts: (1) Violation of federal trademark infringement, 15 U.S.C. § 1114; (2) Violation of federal unfair competition, false designation of origin, and false association, 15 U.S.C. § 1125(a); (3) Violation of New York State trademark infringement prohibitions, NY Gen Bus L § 360-K; (4) Violation of New York State protections against injury to business reputation and dilution, NY Gen Bus L § 360-L; (5) Violation of New York State trademark common law; (6) Violation of New York State Consumer Protection from Deceptive Acts and Practices – deceptive acts and practices, NY Gen Bus L § 349; (7) Violation of New York State Consumer Protection from Deceptive Acts and Practices – false advertising, NY Gen Bus L § 350; (8) Violation of the New York City Consumer Protection Law, NYC Admin Code § 20-700; and (9) tortious interference with prospective economic advantage.

2.   This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338 and the principles of supplemental jurisdiction pursuant to 28 U.S.C. § 1367, as the controversy at issue arises under a federal question.

3.   Upon information and belief, Defendant transacts business within this judicial District, derives substantial revenue from intrastate and interstate commerce, and has committed tortious acts within this judicial District which have had injurious consequences within this judicial District. Therefore, Defendant is within the jurisdiction of this Court.

4. Venue is proper in this judicial District pursuant to, at a minimum, 28 U.S.C. §§ 1391, in that the illegal and improper acts which are the basis for the within asserted causes of action occurred in New York County, State of New York, and the Defendant in

this matter is individual with an address or doing business in New York County, State of New York.

## II. Parties

5.   Plaintiff, JC Hospitality d/b/a The Surf Lodge ("The Surf Lodge") has addresses in New York, New York and at 183 Edgemere Street, Montauk, New York 11945.

6.   Plaintiff, Jayma Cardoso ("Cardoso," and collectively with The Surf Lodge, "The Surf Lodge" or the "Plaintiffs"), has a residential address of 62 Beach Street, TH-A, New York, New York 10013.

7.   At all pertinent times, Cardoso has owned and managed The Surf Lodge, which is a well-known upscale boutique hotel, restaurant, bar and outdoor music venue located in Montauk, New York.

8.   At all pertinent times, Cardoso holds and/or owns various registered intellectual property rights to The Surf Lodge, including trademark registrations under the Lanham Act and filed with the United States Patent and Trademark Office (the "USPTO").

9.   Defendant Marisa Hochberg ("Hochberg" or the "Defendant") resides at and/or does business in New York County, New York.

10.  Additionally, Hochberg's attorneys are located at 257 Pantigo Road, East Hampton, New York 11937.

11. Due to the nature of Hochberg's actions as further explained herein, this present lawsuit is against the Defendant in her individual and professional capacities.

12. At all times pertinent thereto, Hochberg was aware of Cardoso's well-known intellectual property rights, including Cardoso's registered trademark or trademarks for The Surf Lodge.

13. As an employee, business partner, and/or affiliate of Cardoso, Hochberg was aware of the branding and marketing of The Surf Lodge, including the registered trademark or trademarks belonging to Cardoso.

14. Hochberg falls within the definition of "any person" provided in the Lanham Act §1114(1), <u>NY Gen Bus L</u> § 360(e), <u>NY Gen Bus L</u> § 349 *et seq.*, and <u>NYC Admin Code</u> § 20-700 *et seq.*

15. Thus, the Defendant is subject to the claims brought herein.

16. At all times referred to in this Complaint, the Defendant was aware of Plaintiffs' trademark or trademarks, and Cardoso's rights and protections in connection with the exclusive use of such trademark or trademarks.

### III. Factual Allegations

17. In or about April 2008, Plaintiff Cardoso opened The Surf Lodge in Montauk, New York.

18. The Surf Lodge is a hotel offering high-end amenities such as a restaurant, bar, boutique, and outdoor venue space.

19. For a brief period of time, Hochberg was an employee of The Surf Lodge which formed the basis of her business relationship with Cardoso.

20. Prior to the Covid-19 global pandemic ("Covid-19"), The Surf Lodge primarily hosted large gatherings, which were often attended by celebrities and other wealthy clientele.

21. During Covid-19, The Surf Lodge began to shift its focus to wellness and began offering classes and retreats intended to create holistic experiences, by which/through which The Surf Lodge's guests could relax and rejuvenate themselves.

22. Throughout the course of its corporate existence, Cardoso positioned The Surf Lodge as not only a luxury destination, but also as a lifestyle brand.

23. The branding associated with The Surf Lodge was so distinctive and well-known that in 2019, Cardoso and The Surf Lodge's team opened a year-round restaurant and lounge in Aspen, Colorado, under the name "The Snow Lodge."

24.  Since its opening, The Snow Lodge has become a similarly notable destination for clientele searching for luxury experiences, and consequentially, The Snow Lodge is presently a permanent fixture at the St. Regis Aspen Resort.

25. In order to best protect the value of The Surf Lodge's brand, since 2008 Cardoso has filed and obtained numerous trademarks with the United States Patent and Trademark Office (the "USPTO") for the names "The Surf Lodge," and also for the "The Snow Lodge."

26. In or about April 2019, Cardoso and Defendant Hochberg, who had a friendship and business relationship through Hochberg's prior employment with The Surf Lodge, conceived of a yoga studio named "The Sanctuary" which would operate in the town of Montauk, New York, more than one (1) mile from The Surf Lodge's property.

27. At all times pertinent thereto, The Sanctuary was a completely separate entity from The Surf Lodge, with no affiliation to the brand and likeness of The Surf Lodge, except for Cardoso's mutual ownership interest in both corporations.

28. Around this time, Cardoso legally formed the company JM Sanctuary LLC d/b/a The Sanctuary ("JM Sanctuary LLC") and registered the company in New York State. (See copies of JM Sanctuary LLC formation documents, attached hereto as **Exhibit A**).

29. Cardoso was the only listed Member of JM Sanctuary LLC at all times during which "The Sanctuary" was in existence.  (See **Exhibit A**).

30. During the course of their brief business partnership in The Sanctuary, Hochberg controlled the social media Instagram handles for The Surf Lodge and would use and update them accordingly for marketing efforts.

31. In or about March 2020, as COVID-19 was being declared a national and global emergency, The Surf Lodge and The Sanctuary were both forced to cease providing services to the public in accordance with federal, state, and local guidelines.

32. In or about mid-2020, Cardoso, with the understanding that businesses similar to hers would be forced to remain mostly inactive for the foreseeable future, closed all operations of The Sanctuary.

33.   Notably, in the summer of 2020, Hochberg became deeply embroiled in a legal scandal regarding her refusal to pay rent on a luxury property she had leased in Montauk for multiple months. (See *New York Times* Article: "The Talk of Montauk," dated October 23, 2020, attached as **Exhibit B,** and *New York Post* Article: "Influencer squats at Hamptons house after not paying $14k in back rent: suit," dated October 28, 2020, attached as **Exhibit C**).

34.   Shockingly, when Hochberg's landlord for the rented Montauk property brought a legal complaint against her for non-payment of rent, Hochberg allegedly sought to invoke New York State's Tenant Safe Harbor Act (the "Safe Harbor Act") as a legal defense for not paying her rent for the luxury summer home, all the while renting another home in New York City at the same time.

35. Aside from her past due rents and refusal to vacate the rented Montauk property, the allegations against Hochberg focused on her flagrant abuse of the Safe Harbor Act, a law which was clearly enacted to help those desperately affected by the Covid-19

pandemic to avoid losing their homes during the global lockdown, and **not** to protect people seeking to abuse the legal system by illegally squatting at luxury properties.

36. Unfortunately for Hochberg, her legal scandal sparked a campaign of negative press about her and news stories that ran in the *New York Times*, *Page Six*, the *New York Post* and the *Wall Street Journal*. (See **Exhibits B & C**).

37. As a consequence of Hochberg's behavior and the situation as a whole, negative rumors about Hochberg's former employment with The Sanctuary, and *vis a vis*, The Surf Lodge, also began to circulate, which in turn caused reputational harm to Cardoso and her business interests.

38. For example, during this time, numerous Montauk residents and guests of The Surf Lodge began approaching Cardoso in both her personal and professional capacities to discuss Hochberg's actions as they related to Hochberg's prior affiliation with The Surf Lodge, which caused Cardoso significant distress because of the reputational impact it was causing to Cardoso and The Surf Lodge.

39. After attempting to intervene on Hochberg's behalf and resolve the situation to shift negative focus away from The Surf Lodge, Cardoso was rebuffed by Hochberg and left with no recourse for the reputational damage caused, and continuing to be caused, to The Surf Lodge by Hochberg's conduct and subsequent legal scandal.

40. Cardoso reasonably concluded that, based on numerous factors including Hochberg's legal scandal, she could no longer conduct business of any kind with Hochberg without suffering further damage.

41. As such, Cardoso sought to dissolve the JM Sanctuary LLC entity and cut off all communications with Hochberg.

42. Cardoso notified Hochberg of her intentions to permanently cease business relations with Hochberg and to close JM Sanctuary LLC as a courtesy before doing so.

43. However, shortly after Cardoso notified Hochberg of her decision to sever all remaining business ties with her, in or around January 2021, Hochberg began using the name "The Sanctuary," and also using Cardoso's name individually, as a means of luring one of The Surf Lodge's major clients, AMEX (American Express) to do business with Hochberg in Bridgehampton, New York.

44. Without Cardoso's knowledge or approval, Hochberg had apparently been in talks with AMEX for more than three (3) months - from January 2021 to April 2021 - pitching AMEX a partnership activation deal between The Sanctuary and Saks Fifth Avenue to create the "American Express Sanctuary Wellness House" in Bridgehampton.

45. Hochberg's efforts included sending to Saks Fifth Avenue/AMEX brand decks, detailed financial proposals, and conducting extensive communications with both companies to pitch Hochberg's project. (See a Copy of the Hochberg's Brand Deck, full of unauthorized references to The Surf Lodge and Cardoso, attached as **Exhibit D**).

46. Notably, Cardoso learned of Hochberg's secretive dealings from a representative of the production company Black Flower Agency, which was involved on the production side of the project.

47. By way of e-mail, the Black Flower Agency informed Cardoso that they were surprised that Cardoso had missed numerous phone calls, Zoom meetings, and other communications related to the project, and how Cardoso appeared to be irresponsible due to her lack of participation in the process. Thus, it became clear to Cardoso the devastating

effects that Hochberg's unauthorized actions were having both on Cardoso's business relationships and those of The Surf Lodge.

48. Cardoso was stunned when she learned of this, and, reassured the Black Flower Agency that she had cut ties with Hochberg, and that Hochberg had no authority or permission to do business under the name The Sanctuary, and was inappropriately using Cardoso and The Surf Lodge's affiliation for unauthorized purposes to benefit Hochberg.

49. Around the same time, Cardoso made it clear to Hochberg that Hochberg was committing fraud by illegally trying to operate and conduct business as The Sanctuary without Cardoso's permission or consent, and that Hochberg's deceptive misuse of Cardoso's and The Surf Lodge's names as vehicle to gain business for herself was also illegal, infringing on Cardoso's intellectual property, and creating a false association that was and continues to be damaging to Cardoso and The Surf Lodge.

50. Accordingly, Cardoso communicated with Hochberg numerous times that Hochberg must cease and desist her wrongful use of The Surf Lodge's intellectual property, and Hochberg has not ceased her use despite these numerous requests.

51. Despite Cardoso's admonitions, Cardoso learned that Hochberg was still soliciting business for The Sanctuary and affiliating herself with The Surf Lodge as a means of gaining new business. In response, Cardoso's lawyers sent Hochberg two (2) cease-and-desist letters, each letter advising of Hochberg's infringement of Cardoso's registered "The Surf Lodge" trademark, and each letter demanding that Hochberg cease her wrongful use immediately. (See Copies of Letters from Counsel dated October 28, 2020 and December 20, 2021, attached as **Exhibit E**).

52. Despite these legal notices which were received by Hochberg, Hochberg has knowingly and willfully continued using the intellectual property belonging to The Surf Lodge without issuing any disclaimer disassociating her personal business ventures with The Surf Lodge or Cardoso.

53. Cardoso has had numerous communications with patrons, business associates, personal friends, and vendors of The Surf Lodge who were and continue to be under the impression that The Surf Lodge and Hochberg's business ventures were and are associated with one another and, further, that Hochberg's business originates with Cardoso and The Surf Lodge.

54. Hochberg's business ventures have received numerous negative reviews and have tarnished The Surf Lodge's reputation substantially, resulting in dilution of Cardoso's registered trademark for The Surf Lodge.

55. Cardoso has experienced substantial reputational damage and losses due to Hochberg's misleading statements and fraudulent misrepresentation of her relationship with The Surf Lodge and Cardoso, and will continue to experience these damages and losses due to Hochberg's unrelenting use of the infringing mark. In short, the Plaintiffs are certain to experience continued losses, damage and harm.

56. *__Most significantly__*, in the months leading up to the filing of the present lawsuit, and while The Surf Lodge was communicating through its attorneys to cease and desist wrongful and illegal use of The Surf Lodge's intellectual property, Hochberg willfully/deceptively/deliberately changed the username of The Sanctuary from @TheSanctuaryWellness to @TheSurfLodgeSanctuary on the social media platform Instagram, in an effort to create a false association and confusion that The Sanctuary is

affiliated with Cardoso and The Surf Lodge. (See a Copy of Hochberg's Instagram, attached as **Exhibit F**).

57. Notably, @TheSurfLodgeSanctuary handle presently has approximately 1,200 active followers on Instagram. (See **Exhibit F**).

58. When Cardoso discovered that Hochberg's latest violation of her intellectual property rights involved Hochberg's defiant use of @TheSurfLodgeSanctuary on Instagram, it became clear to Cardoso that Hochberg had no intention of ceasing her violations, and further that the damage Hochberg was causing to Cardoso and The Surf Lodge would only continue and increase. Again, Cardoso has written to Hochberg ***numerous times*** through her attorneys demanding that Hochberg cease and desist. (See **Exhibit E**).

59. Rather than comply, Hochberg has continued to demonstrate non-compliance with the Plaintiffs' legal demands, necessitating relief to be granted by the court in the present action to prevent irreparable harm.  In fact, on December 05, 2022, Hochberg's attorneys wrote back to the Plaintiffs indicating their client's intentions to not comply and instead to stall the process. (See Correspondence from Jordan & LeVerrier, PC Law Offices dated December 05, 2022, attached as **Exhibit G**).

60. Nevertheless, Cardoso wrote to Hochberg one final time through her attorneys and demanded that Hochberg cease and desist, threatening legal action against Hochberg. (See Correspondence from Law Offices of John J. Zidziunas & Associates, LLC dated January 09, 2023, attached as **Exhibit H**).

61. Unbelievably, even after a final letter advising her of her illegal actions and the pendency of a lawsuit, Hochberg took no corrective actions to change the Instagram handle from @TheSurfLodgeSanctuary.

62. In letters sent by Cardoso's and The Surf Lodge's counsels to date, the Plaintiffs' attorneys have amply demonstrated that: (a) Cardoso is and was the legal owner of JM Sanctuary LLC at all times; (b)  Cardoso is the only owner of record of any and all intellectual property related to The Surf Lodge, including registration of trademarks with the USPTO; (c) Hochberg has no legal right to The Sanctuary, and in any event, The Sanctuary is dissolved; and (d) Hochberg's misuse of the @TheSurfLodgeSanctuary Instagram handle was and continues to be patently illegal and in violation of the Lanham Act and New York State statutory and common law.

63. As explained herein, in these correspondences, Cardoso and The Surf Lodge's undersigned counsel made it clear that if Hochberg did not immediately change the @TheSurfLodgeSanctuary Instagram name and cease and desist from further infringement of The Surf Lodge's name/brand/likeness, as well as desist from further actions relating to falsely generating business *via* The Sanctuary, then Cardoso and The Surf Lodge would be left with no choice but to file suit and injunctive relief against Hochberg to stop further harm.

64. To date, Plaintiffs continue to suffer due to Defendant's willful infringement, and no corrective action has been taken by Hochberg and/or her attorneys.

65. As set forth herein, Plaintiffs' claims arise under the Lanham Act, New York State General Business Law, and New York City Consumer Protection Law; provided, however, that Plaintiffs reserve the right to allege additional causes of action under all applicable federal, state, and local laws.

66. Defendant, through her non-licensed use of registered trademarks on social media and as otherwise alleged herein, has subjected and continues to subject Plaintiffs to unlawful infringement.

67. As a direct and proximate result of Defendant's infringing uses, Plaintiffs have suffered and continue to suffer injuries and damages, including but not limited to: dilution of The Surf Lodge brand and its goodwill; past and future lost profits of The Surf Lodge; past and future harm to The Surf Lodge's business reputation; past and future out-of-pocket expenses, such as the cost of marketing and advertising required to mitigate the reputational damage caused to The Surf Lodge by Defendants' actions; past and future emotional distress damages for Cardoso; past and future harm to Cardoso's professional reputation; attorneys' fees and costs for being forced to commence a legal action against Hochberg, and other past and future pecuniary and non-pecuniary damages, as Plaintiffs will demonstrate at the trial.

68. Defendant's infringing use of Plaintiffs' social media intellectual property was willful, intentional, and conducted with full knowledge of wrongdoing.

69. As a result of Defendant's infringing use of Plaintiffs' intellectual property, Plaintiffs have suffered and will continue to suffer legal and economic harm, and are entitled to injunctive relief and damages, including punitive damages subject to determination at trial, to the maximum extent permitted by law.

70. As of today's date, Defendant continues to use Plaintiffs' intellectual property and dilute the "The Surf Lodge" trademark.

71. Cardoso has continued to experience emotional distress associated with the situation and Hochberg's malicious actions.

72. Cardoso has now been forced to retain an attorney and protect Cardoso's and The Surf Lodge's rights and assert the Plaintiffs' claims.

## COUNT I

**(Federal trademark infringement, 15 U.S.C. 3 §§ 1114- 1117)**

73.   Plaintiffs reallege and incorporate the above paragraphs as if fully set forth herein.

74.   This is a trademark infringement action against Defendant Hochberg based upon her unauthorized use in commerce of numerous of the Plaintiffs' registered trademarks in connection with the sale, marketing, and publication of Hochberg's services.

75.   Plaintiffs' marks are highly distinctive. Consumers have come to expect the highest quality of services from Plaintiffs' business provided under the trademark "The Surf Lodge" as stated in the foregoing paragraphs.

76.   Defendant has offered to sell, marketed, and advertised, and is still selling, marketing, and advertising services in connection with Plaintiffs' "The Surf Lodge" trademark without Plaintiffs' permission or consent.

77.   Plaintiff Cardoso is the registered owner of The Surf Lodge and The Snow Lodge trademarks. As such, valid USPTO Registrations for Plaintiffs' trademarks are in full force and effect. Upon information and belief, Hochberg has knowledge of Plaintiff Cardoso's rights in her trademarks and is willfully infringing and intentionally misusing the "The Surf Lodge" trademark in connection with her services. Defendant's willful, intentional, and unauthorized use of Plaintiffs' trademarks are likely to cause and are causing confusion, mistake, and deception as to the origin and quality of Defendant's services among the general public.

78.   Therefore, Defendant's activities constitute willful trademark infringement in violation of 15 U.S.C. §l 1114, 1117.

79.    As a direct and proximate result of the actions of Defendant Hochberg, Plaintiff Cardoso has suffered mental anguish, embarrassment, emotional distress injuries, physical manifestations of emotional distress injuries, and diminished professional reputation. Furthermore, Plaintiff The Surf Lodge has suffered lost profits, a diminished ability to maintain a profitable business, and a diminished business reputation.

80.    Plaintiffs have no adequate remedy at law, and, if Defendant's actions are not enjoined, Plaintiffs will continue to suffer irreparable harm to their reputation and the goodwill of their intellectual property and brand.

## COUNT II

### (Federal unfair competition, false designation of origin, and false association, 15 U.S.C. § 1125 *et seq.*)

81.    Plaintiffs reallege and incorporate the above paragraphs as if fully set forth herein.

82.    Defendant's promotion, marketing, offering of, and sale of Defendant's services has created and is creating a likelihood of confusion, mistake, and deception among the general public as to the affiliation, connection, or association with Plaintiffs or the origin, sponsorship, or approval of Defendant's services by Plaintiffs.

83.    By using Plaintiffs' "The Surf Lodge" trademark in connection with the services Hochberg is offering, Defendant has created a false designation of origin and a misrepresentation of facts as to the origin and sponsorship of her services.

84.    Defendant's conduct constitutes willful false designation of origin and misrepresentation of facts as to the origin and/or sponsorship of the services to the general public, in violation of 15 U.S.C. §§ 1114, 1125.

85.    As a direct and proximate result of the actions of Defendant Hochberg, Plaintiff Cardoso has suffered mental anguish, embarrassment, emotional distress injuries, physical manifestations of emotional distress injuries, and diminished professional reputation. Furthermore, Plaintiff The Surf Lodge has suffered lost profits, a diminished ability to maintain a profitable business, and a diminished business reputation.

86.    Plaintiffs have no adequate remedy at law, and, if Defendant's actions are not enjoined, Plaintiffs will continue to suffer irreparable harm to their reputation and the goodwill of their brand.

## COUNT III

### (New York State Law - trademark infringement, NY Gen Bus L § 360-K)

87.    Plaintiffs reallege and incorporate the above paragraphs as if fully set forth herein.

88.    Defendant Hochberg has engaged in acts violating New York State law including, but not limited to, passing off her services as those of Plaintiffs, causing likelihood of confusion and/or misunderstanding as to the source of her services; causing likelihood of confusion and/or misunderstanding as to an affiliation, connection, or association with Plaintiffs' services; representing that her services have Plaintiffs' approval when they do not; and engaging in other conduct which creates a likelihood of confusion or misunderstanding among the public.

89.   The Defendant's acts as set forth herein constitute a willful violation of the New York State General Business Law regarding Trademarks, NY Gen Bus L § 360-K.

90.   As a direct and proximate result of the actions of Defendant Hochberg, Plaintiff Cardoso has suffered mental anguish, embarrassment, emotional distress injuries, physical manifestations of emotional distress injuries, and diminished professional reputation. Furthermore, Plaintiff The Surf Lodge has suffered lost profits, a diminished ability to maintain a profitable business, and a diminished business reputation.

91.   Plaintiffs have no adequate remedy at law, and, if Defendant's actions are not enjoined, Plaintiffs will continue to suffer irreparable harm to their reputation and the goodwill of their brand.

## COUNT IV

### (New York State Law - injury to business reputation and dilution, NY Gen Bus L § 360-L)

92.   Plaintiffs reallege and incorporate the above paragraphs as if fully set forth herein.

93.   Defendant Hochberg has engaged in acts violating New York State law including, but not limited to, passing off her services as those of Plaintiffs, causing likelihood of confusion and/or misunderstanding as to the source of her services; causing likelihood of confusion and/or misunderstanding as to an affiliation, connection, or association with Plaintiffs' services; representing that her services have Plaintiffs' approval when they do not; and engaging in other conduct which creates a likelihood of confusion or misunderstanding among the public.

94.   The Defendant's acts as set forth herein constitute a willful violation of the New York State General Business Law regarding injury to business reputation and dilution, NY Gen Bus L § 360-L.

95.   As a direct and proximate result of the actions of Defendant Hochberg, Plaintiff Cardoso has suffered mental anguish, embarrassment, emotional distress injuries, physical manifestations of emotional distress injuries, and diminished professional reputation. Furthermore, Plaintiff The Surf Lodge has suffered lost profits, a diminished ability to maintain a profitable business, and a diminished business reputation.

96.   Plaintiffs have no adequate remedy at law, and, if Defendant's actions are not enjoined, Plaintiffs will continue to suffer irreparable harm to their reputation and the goodwill of their brand.

## **COUNT V**

**(New York State common law – trademark infringement and unfair competition)**

97.   Plaintiffs reallege and incorporate the above paragraphs as if fully set forth herein.

98.   Defendant Hochberg's actions set forth above constitute unfair competition and trademark infringement under the common law of New York State based on Defendant's use of the confusingly similar username/handle of @TheSurfLodgeSanctuary in connection with Defendant's wellness and yoga services, which services have no connection with The Surf Lodge.

99.    Plaintiffs have used the name and mark "The Surf Lodge" in a geographical area comprising the State of New York and beyond.

100.    The Defendant has taken advantage of and misappropriated the goodwill Plaintiffs have built for their business and in their "The Surf Lodge" mark by using a confusingly similar name in connection with Defendant's unrelated business that mimics the look and feel of Plaintiffs' business in a manner that is intended to cause, has caused, and will continue to cause consumer confusion.

101.    Defendant's actions as set forth herein constitute unfair competition and trademark infringement under the common law of New York State.

102.    Upon information and belief, Defendant has profited from her infringement.

103.    Defendant's infringement of the "The Surf Lodge" mark was and is willful and/or intentional.

104. As a direct and proximate result of the actions of Defendant Hochberg, Plaintiff Cardoso has suffered mental anguish, embarrassment, emotional distress injuries, physical manifestations of emotional distress injuries, and diminished professional reputation. Furthermore, Plaintiff The Surf Lodge has suffered lost profits, a diminished ability to maintain a profitable business, and a diminished business reputation.

105. Plaintiffs have no adequate remedy at law, and, if Defendant's actions are not enjoined, Plaintiffs will continue to suffer irreparable harm to their reputation and the goodwill of their brand.

## COUNT VI

**(New York State Consumer Protection from Deceptive Acts and Practices – Deceptive Acts and Practices, NY Gen Bus L § 349)**

106.    Plaintiffs reallege and incorporate the above paragraphs as if fully set forth herein.

107.    Defendant Hochberg's acts, as described above, were performed by Defendant in the course of trade or commerce.

108.    Defendant's acts, as described above, constitute unfair or deceptive acts and practices.

109.    Defendant's acts, as described above, are likely to deceive consumers into thinking that there is an affiliation between the Plaintiffs and the Defendant, and/or that Plaintiffs endorse Defendant's services and/or business practices.

110. As a direct and proximate result of the actions of Defendant Hochberg, Plaintiff Cardoso has suffered mental anguish, embarrassment, emotional distress injuries, physical manifestations of emotional distress injuries, and diminished professional reputation. Furthermore, Plaintiff The Surf Lodge has suffered lost profits, a diminished ability to maintain a profitable business, and a diminished business reputation.

111. Plaintiffs have no adequate remedy at law, and, if Defendant's actions are not enjoined, Plaintiffs will continue to suffer irreparable harm to their reputation and the goodwill of their brand.

## COUNT VII

### (New York State Consumer Protection from Deceptive Acts and Practices – False Advertising, NY Gen Bus L § 350)

112.   Plaintiffs reallege and incorporate the above paragraphs as if fully set forth herein.

113.   Defendant Hochberg's acts, as described above, constitute false advertising in the conduct of business and furnishing of services in the State of New York.

114.   Defendant's acts, as described above, are likely to deceive consumers into thinking that there is an affiliation between the Plaintiffs and the Defendant, and/or that Plaintiffs endorse Defendant's services and/or business practices, which Plaintiffs have made clear that they do not.

115.   As a direct and proximate result of the actions of Defendant Hochberg, Plaintiff Cardoso has suffered mental anguish, embarrassment, emotional distress injuries, physical manifestations of emotional distress injuries, and diminished professional reputation. Furthermore, Plaintiff The Surf Lodge has suffered lost profits, a diminished ability to maintain a profitable business, and a diminished business reputation.

116.   Plaintiffs have no adequate remedy at law, and, if Defendant's actions are not enjoined, Plaintiffs will continue to suffer irreparable harm to their reputation and the goodwill of their brand.

## COUNT IIX

### (New York City Consumer Protection Law – Unfair Trade Practices, NYC Admin Code § 20-700 *et seq.*)

117.    Plaintiffs reallege and incorporate the above paragraphs as if fully set forth herein.

118.    Defendant Hochberg's acts, as described above, were performed by Defendant in the course of trade or commerce.

119.    Defendant's acts, as described above, constitute unfair, deceptive, or unconscionable trade practices in the sale or offering for sale of consumer services.

120.    Defendant's acts, as described above, are likely to deceive consumers into thinking that there is an affiliation between the Plaintiffs and the Defendant, and/or that Plaintiffs endorse Defendant's services and/or business practices.

121. As a direct and proximate result of the actions of Defendant Hochberg, Plaintiff Cardoso has suffered mental anguish, embarrassment, emotional distress injuries, physical manifestations of emotional distress injuries, and diminished professional reputation. Furthermore, Plaintiff The Surf Lodge has suffered lost profits, a diminished ability to maintain a profitable business, and a diminished business reputation.

122. Plaintiffs have no adequate remedy at law, and, if Defendant's actions are not enjoined, Plaintiffs will continue to suffer irreparable harm to their reputation and the goodwill of their brand.

## <u>COUNT IX</u>

**(Tortious Interference with Prospective Economic Advantage)**

123.    Plaintiffs reallege and incorporate the above paragraphs as if fully set forth herein.

124.    Plaintiffs had expectations to continue operating a successful business, free from external interference.

125.    Defendant Hochberg had full knowledge of Plaintiffs' desire to continue operating The Surf Lodge using the intellectual property associated therewith.

126.    Defendant intentionally interfered with Plaintiffs' continued economic viability by infringing on Plaintiffs' intellectual property rights and causing significant confusion between Defendant's business and Plaintiffs'.

127.    Defendant had and has today no lawful justification for her tortious interference with Plaintiffs' prospective economic advantage with The Surf Lodge, which economic advantage has been substantially disrupted.

128. As a direct and proximate result of the actions of Defendant Hochberg, Plaintiff Cardoso has suffered mental anguish, embarrassment, emotional distress injuries, physical manifestations of emotional distress injuries, and diminished professional reputation. Furthermore, Plaintiff The Surf Lodge has suffered lost profits, a diminished ability to maintain a profitable business, and a diminished business reputation.

129.    Plaintiffs have no adequate remedy at law, and, if  Defendant's actions are not enjoined, Plaintiffs will continue to suffer irreparable harm to their reputation and the goodwill of their brand.

**WHEREFORE**, as to each and every count, Plaintiffs demand judgment on each and all of these Counts against Defendant Marisa Hochberg as follows:

      A.    Compensatory damages consisting of, at a minimum:

            1.    Loss of past and future profits;

            2.    Loss of professional reputation;

            3.    Loss of business reputation;

            4.    Cost of mitigation for such reputational damage;

      B.    Damages for humiliation, mental, and emotional distress;

      D.    Statutory damages, where applicable;

      E.    Punitive damages and or liquidated damages where and to the extent permitted by law, including treble damages for Defendant's knowing and intentional infringement;

      F.    Attorneys' fees and costs of suit;

      G.    Lawful interest, including pre-judgment interest;

      H.    Injunctive relief in the form of Defendant being prohibited by way of Court order from further using any name, trademark, or other intellectual property associated with Plaintiffs; and

      I.    Such other, further, and different relief as the Court deems fitting, just, and proper.

Plaintiffs hereby reserve the right to amend this Complaint to supplement or modify the factual obligations and claims contained herein, based upon information received from the Defendant, witnesses, experts, and others in the course of discovery in this matter.

## DEMAND FOR TRIAL BY JURY

Pursuant to the Federal Rules of Civil Procedure, Plaintiffs respectfully demand a trial by jury on all issues in the within action so triable.

## DESIGNATION OF TRIAL COUNSEL

In accordance with the Federal Rules of Civil Procedure, JOHN J. ZIDZUNAS, ESQ. is hereby designated as trial counsel on behalf of Plaintiffs.

## CERTIFICATION OF NO OTHER ACTIONS OR PARTIES

I hereby certify that the matter in controversy is not the subject of any other action pending in any court or of a pending arbitration proceeding, that no other action or arbitration proceeding is contemplated, and that there are no other parties known to me at this time who should be joined as parties to this action.

DATED:      March 9, 2023

**JOHN J. ZIDZUNAS & ASSOCIATES, LLC**
***Attorneys for Plaintiffs, JC Hospitality d/b/a***
***The Surf Lodge and Jayma Cardoso***

**By:**      **/s/ John J. Zidziunas**
**JOHN J. ZIDZUNAS, ESQ.**
**For the Firm**