**JOHN J. ZIDZUNAS & ASSOCIATES, LLC**
**John Zidziunas, Esq. (ATTY ID 5544044)**
**6 St. John's Lane, 6th Floor**
**New York, New York 10013**
**Phone: 973-509-8500**
*Attorneys for Plaintiffs, JC Hospitality, LLC and Jayma Cardoso*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| **JC HOSPITALITY, LLC and**<br>**JAYMA CARDOSO,**<br><br>       **Plaintiffs,**<br><br>   **-against-**<br><br>**MARISA HOCHBERG (In Her Individual**<br>**and Professional Capacities),**<br><br>       **Defendant.** | **CASE NO.: 1:23-CV-02051-LJL** |

---

### PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S CROSS-MOTION TO DISMISS AND IN FURTHER SUPPORT OF PLAINTIFF'S MOTION FOR LEAVE TO FILE A SECOND AMENDED COMPLAINT

---

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT .................................................................1

PROCEDURAL HISTORY ...................................................................2

STATEMENT OF FACTS .....................................................................5

LEGAL ARGUMENT ......................................................................17

      Legal Standard ....................................................................17

POINT I
      PLAINTIFF JC HOSPITALITY UNEQUIVOCALLY HAS STANDING TO ASSERT FEDERAL TRADEMARK INFRINGEMENT AND DILUTION CLAIMS   UNDER THE LANHAM ACT.................................................................17

      A. THE EXPRESS TERMS OF THE LICENSE AGREEMENT AND FIRST AMENDMENT TO THE LICENSE AGREEMENT UNEQUIVOCALLY GRANT PLAINTIFF JC HOSPITALITY, LLC, A PROPERTY INTEREST AND RIGHT TO "INITIATE LEGAL ACTION" TO PROTECT "THE SURF LODGE" TRADEMARKS.................................................................17

            Telebrands Holds that if the License Agreement Between the Licensor and Licensee Contains a Provision that Grants a Licensee the Right to Sue, then it is "Dispositive" of the Inquiry of Standing........................21

      B. THE DECLARATION OF JEFF GORKSY CONFIRMS TSLM'S INTENT AND ELECTION TO GRANT PLAINTIFF JC HOSPITALITY THE RIGHT TO BRING SUIT IN ORDER TO PROTECT THE SURF LODGE TRADEMARKS..........25

POINT II
      PLAINTIFFS' PROPOSED SECOND AMENDED COMPLAINT IS NOT FUTILE AND CLEARLY DEMONSTRATES PLAINTIFF JC HOSPITALITY'S STANDING TO ENFORCE RIGHTS.................................................................26

POINT III
      DEFENDANT IS NOT ENTITLED TO COSTS AND ATTORNEYS' FEES BECAUSE PLAINTIFFS' CLAIMS ARE LEGITIMATE AND HAVE NOT BEEN INSTITUTED IN BAD FAITH.................................................................27

CONCLUSION.................................................................28

## **TABLE OF AUTHORITIES**

**Cases**

Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007)………..……………………………17

Chambers v. Time Warner, Inc., 282 F.3d 147 (2d Cir. 2002)…………………………17, 25

Fed. Treasury Enter. Sojuzplodoimport v. SPI Spirits, LTD., 726 F.3d 62 (2d Cir. 2013)…20

Int'l Audiotext Network, Inc. v. Am. Tel. Tel. Co., 62 F.3d 69 (2d Cir. 1995)…………16, 25

Nespresso USA, Inc. v. Peet's Coffee, Inc., No. 22-cv-02209 (CM), 2023 U.S. Dist. LEXIS

12228 (S.D.N.Y. Jan. 24, 2023)……………………………………………….………19

Telebrands Corp. v. Del Laboratories, Inc., 719 F.Supp. 2d 283

(S.D.N.Y. 2010)…………………………………………………………..16, 21, 24

Vaupel Textilmaschinen KG v. Meccanica Euro Italia, S.P.A., 944 F.2d 870, 875

(Fed. Cir. 1991)…..………………………………………………………………24

**Statutes and Regulations**

Fed. R. Civ. P. 11 …………………………………………………………………..4

Fed. R. Civ. P. 15(a)(2) …………………………………………………………..27

**PRELIMINARY STATEMENT**

As explained below and reflected in Plaintiffs' Complaint, First Amended Complaint ("FAC"), and proposed Second Amended Complaint ("proposed SAC") and licensing agreements in this matter, Plaintiff JC Hospitality, LLC ("JC Hospitality") possesses an exclusive license that explicitly grants JC Hospitality *all substantial rights* to use The Surf Lodge trademarks without restriction, which includes the rights to legally sue, enforce, and protect such trademarks including the claims at bar (See Declaration of Jeff Gorsky, attached as Exhibit A to Plaintiffs' FAC). This fact is evidenced not only by the clear, express language of the 2012 License Agreement and 2022 Amendment to the License Agreements, but also by the Declaration of Jeff Gorsky who is the Treasurer or TSL Management, Inc. ("TSLM") which demonstrates this right and ends the inquiry of standing. Defendant's attempt to supersede and override TSLM and JC Hospitality's intentions to bring this action, and all the substantial rights that JC Hospitality clearly possesses, should not be countenanced.

It is undisputed that Defendant Hochberg is not an owner in TSLM or JC Hospitality, nor has she ever been assigned a license, or granted a sublicense, to use The Surf Lodge's trademarks/intellectual property by JC Hospitality or TSLM in any capacity.  To this day, Defendant Marisa Hochberg knowingly and continuously infringes upon The Surf Lodge trademarks without any defense of any kind other than challenging JC Hospitality's right to bring this suit.  Because of this undisputable fact, Defendant's futile and relentless challenge of Plaintiff JC Hospitality's standing to assert its claims in federal court for violations of The Lanham Act against Defendant Hochberg must be

immediately dismissed and attorneys' fees should be awarded to Plaintiff for having to defend against frivolous motion practice.

**PROCEDURAL HISTORY**

Plaintiffs' initial Complaint was filed on March 10, 2023.   On April 20, 2023, Defendant filed a Motion to Dismiss the Complaint for lack of subject matter and personal jurisdiction. On May 11, 2023, Plaintiffs' filed their First Amended Complaint without leave of Court pursuant to Fed. R. Civ. P. 15(a)(1)(B), in order to amend the caption and the Parties' section to properly identify the asset holding companies set forth in our filed AO 120 Form, as well as to add facts and evidence, including an affidavit of Jeff Gorsky, Treasurer of TSLM, *inter alia*, demonstrating that Plaintiff JC Hospitality had standing to brings claims for violations of the Lanham Act. Pursuant to Paragraph 3(C) of the Court's Individual Rules of Practice in Civil Cases, the Court denied Defendant's motion to dismiss as moot.

On May 25, 2023, an initial pretrial conference was held before the Honorable Lewis J. Liman. During the telephone conference, opposing counsel, Steven Storch, argued that Plaintiffs did not have standing because JC Hospitality was not identified as an LLC in the caption or Parties' section of the First Amended Complaint. Plaintiffs' counsel represented to Judge Liman and Mr. Storch that it was merely a clerical error and JC Hospitality, LLC is in fact a registered New York State Limited Liability Company that was formed in 2012. Mr. Storch refused to accept our good-faith representation of JC Hospitality's LLC formation and requested proof of same. In an attempt to render the issue moot, we provided Mr. Storch with JC Hospitality's LLC formation documents *via* email on May 30, 2023. We proved Mr. Storch incorrect on this issue, which is now moot and

does not need to take up additional resources from the Court's time in this analysis.  Mr. Storch, however, refused to accept our representation that JC Hospitality possessed a license agreement from TSLM that granted JC Hospitality the exclusive rights to use, assert, and defend all of The Surf Lodge's registered trademarks.  During that call with Your Honor, we agreed to produce the license agreements to Mr. Storch and if needed, this Court, to demonstrate our good faith and moot the issue of standing once and for all.

On May 31, 2023, Judge Liman memorialized the deadlines announced on the record during our May 25th pretrial conference, permitting Plaintiffs to file a motion to file a second amended complaint on June 9, 2023. Thereafter, Mr. Storch demanded that we produce him the license agreement prior to filing our motion to file a second amended complaint. Our office informed Mr. Storch that we would produce the license agreement to him by June 9, 2023, under the condition that it be produced "For Attorneys' Eyes Only-Not to Be Filed With the Court by Defendants" and with limited redactions to black out any irrelevant content that goes outside of defeating and mooting the issue of Plaintiffs' standing.

On June 6, 2023, Mr. Storch filed a letter motion to compel Plaintiffs to produce the License Agreement between TSL Management, Inc. ("TSLM") and JC Hospitality, LLC ("JC Hospitality"). That same day, the Court denied Defendant's letter motion to compel without prejudice and stated that "[t]he [license] agreement need not be publicly filed when it is produced to defendant" and the "Court takes no position at this time as to whether it should be produced in redacted form." See ECF Text Order/Document No. 31.

On June 9, 2023, Plaintiffs filed their Motion to File a Second Amended Complaint. In Plaintiffs' proposed Second Amended Complaint submitted with their Motion to File a

Second Amended Complaint, Plaintiffs added JC Hospitality's proper LLC formation, modified Counts I and II to clearly demonstrate the standing Plaintiff possesses here, clear violations of the Lanham Act by Defendant Hochberg, and added a new Count III asserting a violation of the Anticybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d). That same day, our office produced the License Agreement ("License Agreement") and First Amendment to the License Agreement ("Amendment") to Mr. Storch *via* an online file sharing platform called Box. (Attached hereto as Exhibit A and Exhibit B, respectively). The License Agreement and Amendment were marked "Attorneys Eyes Only" and with limited redactions as previously stated. After producing these licensing agreements that clearly articulate JC Hospitality possesses the ***exclusive license and rights from TSLM to use, defend, assert, and commence litigation*** in order to protect The Surf Lodge marks (without any borders or boundaries as Defendants would have this Court believe), we cautioned Mr. Storch *via* email that if he continued to abuse the Court's resources, our client, and his client's limited resources on this issue by pursuing a motion to dismiss for lack of standing, we would seek attorneys' fees and costs for having to defend against frivolous motion practice pursuant to Fed.R.Civ.P. 11 and gave him a safe harbor.

On June 16, 2023, Mr. Storch filed y*et another* letter motion to compel the production of downloadable and unredacted copies of the License Agreement and Amendment. On June 22, 2023, the Court again ***denied*** Mr. Storch's letter motion, stating:

> Because there has been no request for jurisdictional discovery, the Court declines to compel the production of the documents. Plaintiffs represented at the May 25, 2023 Initial Pretrial Conference that the license agreement would moot Defendant's anticipated motion to dismiss for lack of subject matter jurisdiction. Should Plaintiffs' production be insufficient to moot this issue, Defendant may seek appropriate relief through its motion to dismiss.

NYSCEF Text Order/Document No. 36.

On June 23, 2023, in opposition to Plaintiffs' Motion for Leave to File a Second Amended Complaint, Defendant Hochberg filed this Cross-Motion to Dismiss for Lack of Subject Matter Jurisdiction. Defendant Hochberg and Mr. Storch filed this frivolous, unnecessary motion in the face of our Rule 11 warning and in defiance of the clear black and white text of the licensing agreements he reviewed in advance of same that articulates out JC Hospitality's standing to bring any and all claims to enforce The Surf Lodge's registered trademarks.

***Mr. Storch's attempt to play "lawyer" for The Surf Lodge business and tell Plaintiff JC Hospitality that its agreements with TSLM do not mean what they say, and do not give JC Hospitality the right to sue Defendant Hochberg for trademark infringement, is completely disingenuous and defies the clear terms of agreement between TSLM and JC Hospitality that confers those rights.***

## STATEMENT OF FACTS

Plaintiff, JC Hospitality, LLC ("JC Hospitality") is a New York State Limited Liability Company formed in 2012. Plaintiff, Jayma Cardoso ("Cardoso") owns one hundred percent (100%) of JC Hospitality. Plaintiff JC Hospitality has owned, operated, and managed The Surf Lodge, which is a well-known upscale boutique hotel, restaurant, bar and outdoor music venue located in Montauk, New York.  Plaintiff Cardoso has been, and remains to date, a co-owner in the entity, TSLM, which holds all of The Surf Lodge's intellectual property assets for strategic structural reasons.  JC Hospitality has owned and operated The Surf Lodge business and exclusively used The Surf Lodge trademarks without interruption since its inception in 2008 and through the date of this filing.

Cardoso's co-owned entity, TSLM, has held, owned, and used various registered intellectual property rights to The Surf Lodge, including trademark registrations under the Lanham Act and filed with the United States Patent and Trademark Office (the "USPTO").

In Form AO 120 previously filed with this Court by Plaintiffs, and in Compliance with 35 U.S.C. § 290 and/or 15 U.S.C. § 1116, Plaintiffs identified TSLM as the registered owner of various The Surf Lodge trademarks. As explained in detail below and attached hereto as Exhibit A, TSLM granted an exclusive license to Plaintiff Cardoso's business, Plaintiff JC Hospitality, in 2012 to exercise and utilize such lawful trademarks and intellectual property rights of The Surf Lodge, and the full rights to enforce those trademarks in a court of law as specified in Amended License agreement effective February 1, 2022.

Defendant Marisa Hochberg ("Hochberg" or "Defendant") resides in New York County, New York, and was served with process by a process server at her home address in New York, New York, with the initial Complaint matter.[1] At all times pertinent thereto, Hochberg was aware that Cardoso is the owner of The Surf Lodge, and that The Surf Lodge has acquired valuable intellectual property assets over the years. At all times thereto, Defendant was aware of Plaintiffs' trademark or trademarks, and JC Hospitality's rights and protections in connection with the exclusive use of such trademark or trademarks.

For a brief period of time, Hochberg was an employee of The Surf Lodge which formed the basis of her business relationship with Cardoso. Prior to the Covid-19 global

---

[1] Defendant continues to reference an unsigned and unsealed summons which is puzzling. Plaintiff was personally served at her residence and had to be personally served because her prior counsel before Mr. Storch refused to accept service on Ms. Hochberg's behalf.

pandemic ("Covid-19"), The Surf Lodge primarily hosted large gatherings, which were often attended by celebrities and other wealthy clientele.  Prior to Covid-19, The Surf Lodge began to shift its focus to wellness and began offering classes and retreats intended to create holistic experiences, by which/through which The Surf Lodge's guests could relax and rejuvenate themselves. Throughout the course of its corporate existence, Cardoso positioned The Surf Lodge as not only a luxury destination, but also as a lifestyle brand.   In order to best protect the value of The Surf Lodge's brand, since 2008, Cardoso and her attorneys have filed and obtained numerous trademarks with the United States Patent and Trademark Office (the "USPTO") for the names "The Surf Lodge," and also for its winter-based concept, "The Snow Lodge." Those trademark assets were initially held by the company Montauk Properties, LLC, and subsequently held by a second corporation, TSLM.

### The License Agreement

In 2012, Montauk Properties, LLC, entered into a License Agreement with Plaintiff JC Hospitality, making it the "exclusive licensee of The Surf Lodge business, the United States Trademark, and the Brand of The Surf Lodge."   (See Exhibit A).  In 2013, Montauk Properties, LLC assigned and delegated the License Agreement in its entirety to TSLM. As the Licensor and holder of Surf Lodge's intellectual property, TSLM continued to grant JC Hospitality, without any interruption, an exclusive license to use the Surf Lodge trademarks in all actions of business. The License Agreement between TSLM and JC Hospitality was amended effective February 1, 2022, and JC Hospitality's exclusive license to use The Surf Lodge trademarks was renewed and continues to this date without any interruption. (See Exhibit B).

For over eleven (11) years, TSLM has continued to acquire intellectual property for The Surf Lodge for JC Hospitality to use and enforce.  At all pertinent times, TSLM has been the registered owner and holding company of intellectual property assets related to The Surf Lodge. Since the entity's inception, Cardoso has been, and remains to date, a co-owner in TSLM. As the licensee of such intellectual property for The Surf Lodge, Plaintiff JC Hospitality has brought the within lawsuit in order to defend the actions of intellectual property infringement by Defendant Hochberg, and assert and protect its rights.

Notably, at no time has Defendant Hochberg possessed a verbal license, written license agreement, express license, or implied license, to use The Surf Lodge's trademarks from TSLM or JC Hospitality. At no point has Hochberg declared or purported to declare in defense of this case, or two (2) previous cease and desist demand letters to her and her counsel, that she is an owner or partner in TSLM, owner or partner in JC Hospitality, or produced any documents or evidence to suggest or support otherwise that would give her rights to willfully and actively infringe on Plaintiff's marks.  As explained below, Defendant continues to willfully and illegally infringe on The Surf Lodge's protected trademarks in commerce and on social media @TheSurfLodgeSanctuary in order to cause a deliberate likelihood of confusion with Hochberg's ongoing use of "The Sanctuary" wellness business.

**<u>Relevant Background</u>**

In or about April 2019, Cardoso and Defendant Hochberg, who had a friendship and business relationship through Hochberg's prior employment with The Surf Lodge, conceived of a yoga studio named "The Sanctuary" which would operate in the town of

Montauk, New York, more than one (1) mile from The Surf Lodge's property. At all times pertinent thereto, The Sanctuary was a completely separate entity from The Surf Lodge, with no affiliation to the brand and likeness of The Surf Lodge, except for Cardoso's mutual ownership interest in both corporations and desire to make it succeed at the time.

Around this time, Cardoso legally formed the company JM Sanctuary LLC d/b/a The Sanctuary ("JM Sanctuary LLC") and registered the company in New York State. Cardoso was the only listed Member of JM Sanctuary LLC at all times during which "The Sanctuary" was in existence.  At no point, ever, was Defendant Hochberg granted a license, legal right, contract, written or verbal agreement, to use The Surf Lodge's trademarks/intellectual property owned by TSLM. At no point, ever, was Defendant Hochberg assigned a license, or granted a sublicense, to use The Surf Lodge's trademarks/intellectual property by JC Hospitality or TSLM.

During the course of their brief business partnership in The Sanctuary, **Hochberg exclusively controlled** the social media Instagram for The Sanctuary, and its login and passwords, and would use and update The Sanctuary's social media accordingly for marketing efforts. In or about March 2020, as COVID-19 was being declared a national and global emergency, The Surf Lodge and The Sanctuary were both forced to cease providing services to the public in accordance with federal, state, and local guidelines. In or about mid-2020, Plaintiff Cardoso, with the understanding that businesses similar to hers would be forced to remain mostly inactive for the foreseeable future, closed all operations of The Sanctuary.

Notably, in the summer of 2020, Hochberg became deeply embroiled in a legal scandal regarding her refusal to pay rent on a luxury property she had leased in Montauk

for multiple months. Shockingly, when Hochberg's landlord for the rented Montauk property brought a legal complaint against her for non-payment of rent, Hochberg allegedly sought to invoke New York State's Tenant Safe Harbor Act as a legal defense for not paying her rent for the luxury summer home, all the while renting another home in New York City at the same time. Aside from her past due rents and refusal to vacate the rented Montauk property, the allegations against Hochberg focused on her flagrant abuse of the Safe Harbor Act, a law which was clearly enacted to help those desperately affected by the Covid-19 pandemic to avoid losing their homes during the global lockdown, and not to protect people seeking to abuse the legal system by illegally squatting at luxury properties. Unfortunately for Hochberg, her legal scandal sparked a viral campaign of negative press about her and news stories that ran in the *New York Times*, *Page Six*, the *New York Post* and the *Wall Street Journal* – a reputation that lives on the internet likely preventing Defendant Hochberg from gaining new business or employment in the future at no fault to the Plaintiffs.

As a consequence of Hochberg's behavior and the situation as a whole, negative rumors about Hochberg's former employment with The Sanctuary, and *vis a vis*, The Surf Lodge, also began to circulate, which in turn caused reputational harm to Cardoso and her business interests. For example, during this time, Montauk residents and guests of The Surf Lodge began approaching Cardoso in both her personal and professional capacities to discuss Hochberg's actions as they related to Hochberg's prior affiliation with The Surf Lodge, which caused Cardoso significant distress because of the reputational impact it was causing to Cardoso and The Surf Lodge.  Moreover, numerous brands that The Surf Lodge was doing business with, both then and now, insisted that Cardoso and The Surf

Lodge (JC Hospitality) sever ties with Defendant Hochberg due to Hochberg's offensive actions.

After attempting to intervene on Hochberg's behalf and resolve the situation to shift negative focus away from The Surf Lodge, Cardoso was rebuffed by Hochberg and left with no recourse for the reputational damage caused, and continuing to be caused, to The Surf Lodge by Hochberg's conduct and subsequent legal scandal. Cardoso reasonably concluded that, based on numerous factors including Hochberg's legal scandal, she could no longer conduct business of any kind with Hochberg without suffering further damage. As such, Cardoso sought to dissolve the JM Sanctuary LLC entity and cut off all communications with Hochberg. Cardoso notified Hochberg of her intentions to permanently cease business relations with Hochberg in 2021 and to close JM Sanctuary LLC as a courtesy before doing so.

**Defendant Hochberg's Infringement on The Surf Lodge Trademarks**

However, shortly after Cardoso notified Hochberg of her decision to sever all remaining business ties with her, in or around January 2021, Hochberg began using the name "The Sanctuary" on Instagram which she exclusively held the login credentials for, and also using Cardoso's name individually as a means of luring one of The Surf Lodge's major clients, AMEX (American Express) to do business with Hochberg in Bridgehampton, New York. Without Cardoso's knowledge or approval, Hochberg had apparently been in talks with AMEX for more than three (3) months—from January 2021 to April 2021— pitching AMEX a partnership activation deal between The Sanctuary and Saks Fifth Avenue to create the "American Express Sanctuary Wellness House" in Bridgehampton. Hochberg's efforts included sending to Saks Fifth Avenue/AMEX brand

decks, detailed financial proposals, and conducting extensive communications with both companies to pitch Hochberg's project.

Notably, Cardoso learned of Hochberg's secretive dealings from a representative of the production company Black Flower Agency, which was involved on the production side of the project. By way of e-mail, the Black Flower Agency informed Cardoso that they were surprised that Cardoso had missed numerous phone calls, Zoom meetings, and other communications related to the project, and how Cardoso appeared to be irresponsible due to her lack of participation in the process.  Thus, it became clear to Cardoso the devastating effects that Hochberg's unauthorized actions were having on Cardoso's personal reputation, The Surf Lodge's reputation, and various business relationships related to The Surf Lodge. Cardoso was stunned when she learned of Hochberg's actions and reassured the Black Flower Agency that she had cut ties with Hochberg, and that Hochberg had no authority or permission to do business under the name The Sanctuary, and was inappropriately using Cardoso's name and The Surf Lodge's name and affiliation for unauthorized purposes to benefit Hochberg.

Around the same time, Cardoso made it clear to Hochberg that Hochberg was committing fraud by illegally trying to operate and conduct business as The Sanctuary without Cardoso's permission or consent, and that Hochberg's deceptive misuse of Cardoso's name and The Surf Lodge's names as vehicle to gain business for herself was also illegal, infringing on Plaintiff JC Hospitality's intellectual property, and creating a false association that was and continues to be damaging to both Cardoso and The Surf Lodge. Accordingly, Plaintiff Cardoso communicated with Hochberg numerous times that Hochberg must cease and desist her wrongful use of The Surf Lodge's intellectual

property. Despite Cardoso's demands and warnings, Cardoso learned that Hochberg was still soliciting business for The Sanctuary and falsely affiliating herself with The Surf Lodge as a means of gaining new business.

In response, Cardoso's lawyers sent Hochberg two (2) cease and desist letters, each letter advising of Hochberg's infringement on The Surf Lodge's intellectual property in all aspects, including her flagrant actions on Instagram that was causing damage to Plaintiffs. In the December 20, 2021, cease and desist letter sent by Plaintiffs Cardoso and JC Hospitality attorney, Daryl B. Cramer, Esq., whose office is located in Aspen, CO, Plaintiffs' counsel demanded that Hochberg refrain from making and publishing false, defamatory statements against them. The demand letter warned Hochberg that litigation would be imminent if she continued defaming Plaintiff Cardoso and her business to third parties, and reserved all rights to take legal action as necessary.

However, just days after she received the letter, Defendant Hochberg appeared at The Snow Lodge's property inside the St. Regis in Aspen, CO.  Fearing for her safety and that Hochberg would persist with further malicious actions, Plaintiff Cardoso filed a police report with the Aspen Police Department in order to document the incident and seek restraints against Hochberg.

Despite these legal notices which were received by Hochberg and her counsel, Hochberg continues to this date to knowingly, deceitfully, and willfully use the intellectual property belonging to The Surf Lodge without issuing any disclaimer disassociating her personal business ventures with The Surf Lodge or Cardoso. Cardoso has had numerous communications with patrons, business associates, personal friends, and vendors of The Surf Lodge who were and continue to be under the impression that The Surf Lodge and

Hochberg's business ventures were and are associated with one another and, further, that Hochberg's business originates with Cardoso and The Surf Lodge.

Plaintiff Cardoso has experienced substantial reputational damage and monetary losses due to Hochberg's defamatory, misleading statements and fraudulent misrepresentation of her relationship with The Surf Lodge and Cardoso, and will continue to experience these damages and losses due to Hochberg's unrelenting use of the infringing marks, and Hochberg's publicly disgraced reputation as published in the *New York Times*, *Page Six*, the *New York Post*, and the *Wall Street Journal*.

Most significantly, in the months leading up to the filing of the present lawsuit, and while The Surf Lodge was communicating through its attorneys to cease and desist wrongful and illegal use of The Surf Lodge's intellectual property, Hochberg willfully/deceptively/deliberately changed the username of The Sanctuary from @TheSanctuaryWellness to @TheSurfLodgeSanctuary on the social media platform Instagram, ***in order to create a clear false association and likelihood of confusion that The Sanctuary is affiliated with Cardoso and The Surf Lodge***. (See copy of Hochberg's Instagram, attached to Plaintiffs' First Amended Complaint as Exhibit G, published as of May 10, 2023 on Instagram). Notably, @TheSurfLodgeSanctuary handle presently has approximately 1,220 active followers on Instagram. (Id.) Additionally, the @TheSurfLodgeSanctuary Instagram page also lists "716 Montauk Highway, Suite #3, Montauk, New York" as its business address – ***which is further evidence that Hochberg is still actively falsely portraying that The Sanctuary is open and conducting business***. (Id.)

14

Defendant Hochberg's promotion, marketing, offering of, and sale of Defendant's services through the use of The Surf Lodge name has created and is creating a likelihood of confusion, mistake, and deception among the general public as to the affiliation, connection, or association with Plaintiffs or the origin, sponsorship, or approval of Defendant's services by Plaintiffs. When Cardoso discovered that Hochberg's latest violation of her intellectual property rights involved Hochberg's defiant use of @TheSurfLodgeSanctuary on Instagram, it became clear Hochberg has no intention of ceasing her violations, and further that the damage Hochberg was causing to Cardoso and The Surf Lodge would only continue and increase.

Again, Plaintiff Cardoso has written to Hochberg numerous times through her attorneys demanding that Hochberg cease and desist. Rather than comply, Hochberg has continued to demonstrate non-compliance with the Plaintiffs' legal demands and continued to impermissibly use The Surf Lodge's well-known name and distinct brand in violation of the Lanham Act.  In fact, on December 05, 2022, Hochberg's attorneys wrote back to the Plaintiffs indicating their client's intentions to not comply and instead to stall the process.  Nevertheless, Cardoso wrote to Hochberg one final time through her attorneys and demanded that Hochberg cease and desist, threatening legal action against Hochberg. Hochberg took no corrective actions to change the Instagram handle from @TheSurfLodgeSanctuary.

In letters and communications by Cardoso's and The Surf Lodge's attorneys to date, the Plaintiffs' attorneys have amply demonstrated that: (a) Cardoso is and was the legal owner of JM Sanctuary LLC at all times; (b) JC Hospitality, through Cardoso, holds the rights to use The Surf Lodge's registered trademarks with the USPTO, and has the

right to enforce same; (c) Cardoso is a co-owner of TSLM, the registered owner and holding company of all intellectual property related to The Surf Lodge, and has the rights to use and defend such trademarks; (d) Hochberg is not an owner of The Surf Lodge or its intellectual property, and therefore has no legal right to use or create @TheSurfLodgeSanctuary Instagram social media and cause such confusion; and (e) Hochberg's illegal use and infringement on The Surf Lodge's trademarks continues to be patently illegal and in violation of the Lanham Act and New York State statutory and common law.

As explained herein, in these correspondences, Cardoso and JC Hospitality's undersigned counsel made it clear that if Hochberg did not immediately change the @TheSurfLodgeSanctuary Instagram name and cease and desist from further infringement of The Surf Lodge's name/brand/likeness, as well as desist from further actions relating to falsely generating business via The Sanctuary, then Cardoso and The Surf Lodge would be left with no choice but to file suit and/or injunctive relief against Hochberg to stop further harm. Defendant Hochberg performed these illegal acts, and continues to perform these acts, with full knowledge and awareness that she does not possess a license, legal right, contract, or agreement, to use The Surf Lodge's trademarks/intellectual property. To date, Plaintiffs continue to suffer due to Defendant's willful infringement, and no corrective action has been taken by Hochberg and/or her attorneys.

## LEGAL ARGUMENT

### Legal Standard

When ruling on a motion to dismiss, courts "must accept as true all well-pleaded facts alleged in the complaint and draw all reasonable inferences in the plaintiff's favor." Telebrands Corp. v. Del Laboratories, Inc., 719 F.Supp. 2d 283, 289 (S.D.N.Y. 2010). The complaint "must include 'enough facts to state a claim for relief that is plausible on its face.'" Id. (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 547 (2007)). In reviewing a motion to dismiss, a complaint is "deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir. 2002) (quoting Int'l Audiotext Network, Inc. v. Am. Tel. Tel. Co., 62 F.3d 69, 72 (2d Cir. 1995) (per curiam)). "Even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint 'relies heavily upon its terms and effect,' which renders the document 'integral' to the complaint." Id. at 153 (quoting Int'l Audiotext, 62 F.3d at 72).

### POINT I

### PLAINTIFF JC HOSPITALITY UNEQUIVOCALLY HAS STANDING TO ASSERT FEDERAL TRADEMARK INFRINGEMENT AND DILUTION CLAIMS UNDER THE LANHAM ACT

#### A. THE EXPRESS TERMS OF THE LICENSE AGREEMENT AND FIRST AMENDMENT TO THE LICENSE AGREEMENT UNEQUIVOCALLY GRANT PLAINTIFF JC HOSPITALITY, LLC, A PROPERTY INTEREST AND RIGHT TO "INITIATE LEGAL ACTION" TO PROTECT "THE SURF LODGE" TRADEMARKS.

Plaintiff JC Hospitality, LLC ("JC Hospitality") has standing to assert Federal and State trademark infringement claims based on the explicit language in the original License Agreement ("License Agreement") and the First Amendment to the License Agreement

17

("Amendment"). (Marked as Exhibit A and Exhibit B, respectively). Plaintiffs' Complaint, First Amended Complaint ("FAC"), and proposed Second Amended Complaint ("proposed SAC") rely on the terms and effects of the License Agreement and Amendment to demonstrate Plaintiff JC Hospitality's standing to initiate legal action to protect The Surf Lodge trademarks.

Numerous times throughout the four corners of the Complaint and the FAC, Plaintiffs allege that TSLM granted an exclusive license to Plaintiff JC Hospitality, an LLC which Plaintiff Cardoso is the sole owner of, to use and defend "The Surf Lodge" trademarks in all actions of business. By way of example, in Paragraphs 12 and 30 of the FAC, Plaintiffs asserted that in 2012, TSLM granted an exclusive license to Plaintiff JC Hospitality to use the Surf Lodge trademarks and intellectually property rights in all actions of business. In Paragraph 7 of the FAC, Plaintiffs stated that Plaintiff Cardoso owns one hundred percent (100%) of JC Hospitality. In Paragraph 32 of the FAC, Plaintiffs stated that "TSLM has been the registered owner and holding company of intellectual property assets related to The Surf Lodge." Plaintiffs further stated in Paragraphs 9 and 33 of the FAC that Plaintiff Cardoso is a co-owner in TSLM. In Paragraph 34 of the FAC, Plaintiff alleged Defendant Marisa Hochberg infringed upon the intellectual property of The Surf Lodge and "as the licensee of such intellectual property for The Surf Lodge, Plaintiff JC Hospitality has brought the within lawsuit in order to defend the actions" of Hochberg's infringement. As such, the License Agreement and Amendment Agreement are considered "integral to the complaint" and therefore, should be considered by the Court when deciding this motion to dismiss.

Here, the License Agreement dated June 13, 2012, between Montauk Properties, LLC and JC Hospitality, LLC, granted JC Hospitality an **exclusive license** to the Surf Lodge business, trademarks, and brand for a period of ten (10) years. (<u>See</u> Exhibit A). The First Amendment to License Agreement effective February 1, 2022, is between TSL Management, Inc. ("TSLM") and JC Hospitality, LLC. (<u>See</u> Exhibit B).

In the First Amendment to Licensing Agreement effective February 1, 2022, it sets forth that as of April 1, 2013, the former licensor, Montauk Properties, assigned all rights and obligations under the June 13, 2012 License Agreement to the current licensor, TSLM. (<u>See</u> Exhibit B, ¶ 2). TSLM, as the new licensor, "agree[d] to be bound by the obligations set forth in the License Agreement." (<u>See</u> Exhibit B, ¶ 2). In addition to delegating the License Agreement to a new licensor, the Amendment included a provision to the License Agreement that **explicitly permits Plaintiff JC Hospitality to initiate legal action to protect the Surf Lodge trademarks**, such as the instant action here and therefore ends the inquiry of standing any further. The relevant provision states:

4. The following subparagraph shall be added after Section 4(m) of the License Agreement:

n) JCH shall promptly notify Licensor if any legal action is instituted against JCH relating to JCH's use of the Service Marks. JCH shall also promptly notify Licensor of any counterfeiting or other infringement of the Service Marks, or any other unauthorized use thereof of which JCH becomes aware. Licensor shall have the right, but not the obligation, to institute legal action or take any other actions which it deems necessary to protect its interest in the Service Marks, and JCH shall fully cooperate with Licensor in any such action. Any monetary recovery resulting from any such action shall belong solely to Licensor. **Licensee, with the consent of Licensor, which will not be unreasonably withheld, shall also have the right, but not the obligation, to either join Licensor in any action against a third party <u>or institute legal action</u> *or take any other actions against third parties which it deems necessary to protect its interest in the Service Marks, at its sole expense*,** in which event (i) JCH shall not make any statement or admission that might implicate Licensor and/or the

Service Marks and/or the validity or ownership therefrom in any way without the prior written consent of Licensor in each instance; (ii) Licensor shall approve any counsel retained by JCH; and (iii) any monetary recovery to JCH resulting therefrom shall be split evenly between Licensor and JCH after JCH deducts therefrom the costs of legal fees directly related to pursuing the relevant action.

(Exhibit B, ¶ 4).

Defendant Hochberg, relying on <u>Nespresso USA, Inc. v. Peet's Coffee, Inc.</u>, No. 22-cv-02209 (CM), 2023 U.S. Dist. LEXIS 12228 (S.D.N.Y. Jan. 24, 2023), argues that Plaintiffs are nothing more than a typical exclusive licensee and therefore, do not have standing to bring infringement claims under the Lanham Act. Defendant willfully ignores and dismisses the clear language provisions in the 2012 License Agreement and 2022 Amendment which unequivocally grants JC Hospitality the right **"to institute legal action"** against third parties to protect its interest in the Surf Lodge marks, and instead focuses on the fact that TSLM still retains ownership rights of the Surf Lodge marks. Plaintiffs do not dispute that TSLM has retained ownership rights in the Surf Lodge marks. This fact is obvious and was done for deliberate business reasons commonly exercised by many brands, hotels, and businesses around the world for liability purposes.

However, the crucial fact here is that the black and white *terms* of the License Agreement and Amendment between TSLM, the licensor, and JC Hospitality, the licensee, unequivocally demonstrates the parties' intent to *grant* JC Hospitality the right to institute legal action to protect the Surf Lodge marks – thus giving Plaintiff JC Hospitality standing to bring the claims at bar. <u>See</u> <u>Fed. Treasury Enter. Sojuzplodoimport v. SPI Spirits, LTD</u>., 726 F.3d 62, 78 (2d Cir. 2013) (holding that a plaintiff only has standing to bring its trademark infringement claims if the plaintiff shows that "its 'license' amounts, in fact, to an assignment to establish an entitlement to sue under Section 32(1)"). Here, not

20

only is Plaintiff Cardoso a co-owner in TSLM with rights to use and enforce The Surf Lodge trademarks, but the License Agreement and Amendment demonstrate without question that TSLM has granted Cardoso's 100% owned entity, Plaintiff JC Hospitality, the right ***"to institute legal action"*** against third parties to protect its interest in the Surf Lodge marks. (<u>See</u> Exhibit B, ¶ 4). These actions clearly amount to an assignment to establish an entitlement to sue under Section 32(1) and under <u>SPI Spirits, LTD.</u>  Mr. Storch's attempt to override TSLM's desire for JC Hospitality to bring this suit is improper and flies in the face of the parties' intentions.

> ### *Telebrands* **Holds that if the License Agreement Between the Licensor and Licensee Contains a Provision that Grants a Licensee the Right to Sue, then it is "Dispositive" of the Inquiry of Standing.**

The District Court in <u>Telebrands</u> concluded that because each license is unique, the Court "'must ascertain the intention of the parties and examine the substance of what [the license agreement] granted" to determine if it conveys all of the substantial rights in the patent and is sufficient to grant standing to the licensee.'" <u>Telebrands Corp. v. Del Laboratories, Inc.</u>, 719 F.Supp. 2d 283, 290 (S.D.N.Y. 2010). "Courts have looked particularly at whether the license agreement grants the licensee the right to sue for infringement." <u>Ibid.</u> After review of the license Agreement, the Court found that the licensor, who owned the design patent and trademark and was not a party to the suit, granted its licensee, Plaintiff Telebrands, "the right to sue infringers in its own name and without joining the patent owner 'to the extent permitted by applicable law.'" <u>Id.</u> at 291. The Court determined that "[t]he existence of such a provision is ***considered dispositive*** on the question of whether a license agreement grants a licensee all substantial rights in the patent." <u>Ibid.</u>

While TSLM mutually retains ownership rights in the Surf Lodge trademarks, it is imperative that the Court understand the deliberately designed relationship here between TSLM and the Plaintiffs, and their intentions when drafting the License Agreement and 2022 Amendment. Plaintiffs' exclusive license extends well beyond just the sale of a patented product or the use of a trademarked name. Plaintiffs have the exclusive license to the entire business that is "The Surf Lodge." The License Agreement dated June 13, 2012, provides:

> WHEREAS, [JC Hospitality] has offered to lease The Premises and to pay [Montauk Properties] to become the exclusive licensee of the Surf Lodge business, the United States Trademark, and Brand of the Surf Lodge, upon the terms and conditions contained herein
>
> (Exhibit A).

The License Agreement granted an exclusive license to JC Hospitality and its sole owner, Plaintiff Jayma Cardoso, to operate the Surf Lodge for a period of ten (10) years in the Town of East Hampton.[2] (See Exhibit A). Since the inception of the License Agreement, Plaintiff JC Hospitality has owned, operated, and managed The Surf Lodge hotel, restaurant, bar, and outdoor music venue in Montauk, New York. Plaintiff Cardoso is the

---

[2] In Steven Storch's declaration at Paragraph 5, shockingly he argues that JC Hospitality's exclusive license to use the Surf Lodge trademarks is "restricted to the Town of East Hampton." Mr. Storch's assertion is completely disingenuous and unfounded and deliberately misconstrues the terms of the License Agreement for convenience of his motion. This geographic limitation to the Town of East Hampton is purely meant for the physical location of The Surf Lodge restaurant, bar, and hotel. Plaintiffs are not restricted to the Town of East Hampton when it comes to protecting the "The Surf Lodge" trademark and brand worldwide under any reading of the 2012 or 2022 Amended Licensing Agreements which would defy all business logic. Ironically, the ongoing infringement committed by Defendant Hochberg is occurring exactly within that geographic limitation of Montauk, which is located within the village of East Hampton, NY, as evidence by @TheSurfLodgeSanctuary's current Instagram page listing "716 Old Montauk Highway, Suite #3, Montauk, NY" as The Sanctuary's business address to lure and confuse Surf Lodge clients as a wellness destination. (See copy of Hochberg's Instagram, attached to Plaintiffs' First Amended Complaint as Exhibit G, published as of May 10, 2023 on Instagram).

sole owner of JC Hospitality, LLC. Notably, Plaintiff Cardoso is also a co-owner in TSLM. In addition to granting the rights to the physical location of The Surf Lodge, the License Agreement also granted JC Hospitality the exclusive license to "The Surf Lodge" intellectual property rights, including the "The Surf Lodge" trademark registered with the USPTO and "The Surf Lodge" brand. (See Exhibit A). Plaintiffs' Complaint, FAC, and proposed SAC have clearly pled these facts.

The License Agreement further stated that in order to "maintain the value of the Surf Lodge business, the United States Trademark and the Surf Lodge Brand," JC Hospitality must conform to the standards of operation set forth in the License Agreement. The following list is only a summary of the extensive list of rights and responsibilities of Plaintiffs JC Hospitality and Jayma Cardoso under the License Agreement, which include, but is not limited to: "assuming all responsibility for the operation and management of The Premises"; "hiring, training, oversight, management of all employees, contractors, and subcontractors"; "negotiat[ing] all contracts including employee contracts, purveyor contracts, entertainment and special event contracts, advertising and promotion contracts and activities; acting "solely as an independent contractor" when administering, managing, and operating the Surf Lodge; exercising prudent hiring practices and complying with all applicable employment and labor laws; ensuring that there are no violations of any applicable laws or regulations affecting the operation of The Surf Lodge business and premises; and ensuring that the premises and business are "maintained and operate in a clean, safe, and attractive condition, and to have sufficient, appropriate and proper operating supplies and equipment, so as to provide the hotel, food and beverage service consistent with the operation of the Surf Lodge business and Brand."

(See Exhibit A ¶¶ 4(a) – 4(m)). This extensive list of the standards of operation clearly demonstrates that from the outset of the License Agreement, Montauk Properties/TSLM intended to grant Plaintiffs JC Hospitality and Jayma Cardoso a significant amount of rights that are necessary to exclusively operate The Surf Lodge business and protect the value and integrity of the "The Surf Lodge" marks and brand.

The addition of Section 4(n) in the Amendment granting JC Hospitality the right to institute legal action is further proof of the licensor's intention to afford JC Hospitality the legal avenue to protect the value and integrity of the "The Surf Lodge" marks and brand. Moreover, the obligation that JC Hospitality has to notify TSLM of legal action and seek consent "which will not be unreasonably withheld" does not affect JC Hospitality's entitlement to sue for infringement. See Vaupel Textilmaschinen KG v. Meccanica Euro Italia, S.P.A., 944 F.2d 870, 875 (Fed. Cir. 1991) (holding that an exclusive licensee had standing to sue for infringement despite having to notify the patent owner "because the ultimate question . . . is whether [the licensee] can bring suit on its own or whether [the patent owner] must be joined as a party"). Here, JC Hospitality has been explicitly granted the right to "institute legal action or take any other actions against third parties which it deems necessary to protect its interest in the Service Marks, at its sole expense" (See Exhibit B, ¶ 4). Similar to the Plaintiff in Telebrands, the License Agreement and Amendment do not set forth any restrictions on JC Hospitality's ability to enforce The Surf Lodge trademarks.  The Telebrands Court ultimately held that because the license agreement did not restrict the licensee's ability to enforce the trademarks or other intellectual property of the licensor's patent, and had broad rights to sell the patented product, royalty free, for a potentially unlimited period, the licensee "has a property

interest in the trademark and qualifies as an assignee of the registrant for standing purposes." <u>Telebrands</u>, 719 F. Supp.2d at 293.

For the last eleven (11) years, JC Hospitality's exclusive license to The Surf Lodge premises, trademark, and brand has remained **_uninterrupted_** during the initial 10-year leasing term, and has since been renewed, without interruption, under the same terms. The intent of the licensor when drafting the License Agreement and Amendment is crucial to determining the issue of standing in this case. The intent of the licensor is clear here and the language of the Section 4(n) of the Amendment unequivocally grants JC Hospitality the right to "institute legal action or take any other actions against third parties which it deems necessary to protect its interest in the Service Marks." (See Exhibit B). This provision should be viewed as dispositive and as such, the question of Plaintiffs' standing to assert trademark infringement claims against Defendant Hochberg should be deemed moot.

**B. THE DECLARATION OF JEFF GORKSY CONFIRMS TSLM'S INTENT AND ELECTION TO GRANT PLAINTIFF JC HOSPITALITY THE RIGHT TO BRING SUIT IN ORDER TO PROTECT THE SURF LODGE TRADEMARKS.**

Defendant argues that the Declaration of Jeff Gorsky that Plaintiffs provided in their FAC does not provide enough information on its own to support a finding of standing. In reviewing a motion to dismiss, a complaint is "deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." <u>Chambers</u>, 282 F.3d at 152 (quoting <u>Int'l Audiotext</u>, 62 F.3d at 72). When viewed alongside the License Agreement and Amendment, the Declaration of Jeff Gorsky, Treasurer of TSLM, outright confirms the intent of the parties to grant Plaintiffs JC Hospitality and Cardoso the right to institute legal action on its own. Specifically, the

Declaration of Jeff Gorksy states that licensee, JC Hospitality, has been granted the right to "enforce its rights and those of TSLM in Service Marks against any third party that infringes or misuses the Services Marks," as well as the right to "[c]laim damages and pursue causes of action with respect to the Service Marks, whether accruing before, on, or after the Effective Date, including all TSLM's rights to and claims for damages, restitution, and injunctive and other legal and equitable relief for past, present, and future infringement, dilution, violation, breach, or default." (See Declaration of Jeff Gorsky, attached as Exhibit A to Plaintiffs' FAC and Proposed SAC). When viewing the License Agreement, Amendment, and the Declaration of Jeff Gorksy together, Plaintiffs have aptly met their burden in proving that they have standing to assert their trademark infringement claims.   Mr. Storch's convenient desire to avoid the clear facts, the black and white language of the 2012 and 2022 Amended Licensing Agreement, and TSLM's consent and insistence by Mr. Gorsky to assign JC Hospitality the right of standing to sue Defendant Hochberg for ongoing trademark infringement should not be countenanced by this Court.

<u>**POINT II**</u>
<u>**PLAINTIFFS' PROPOSED SECOND AMENDED COMPLAINT IS NOT FUTILE AND CLEARLY DEMONSTRATES PLAINTIFFS' STANDING TO ENFORCE RIGHTS**</u>

For the reasons outlined above, Plaintiffs' SAC is not futile because Plaintiffs have demonstrated that the License Agreement and Amendment explicitly grant JC Hospitality the right to institute legal action against third parties to protect The Surf Lodge marks. Plaintiffs reiterate the arguments set forth in Plaintiffs' Motion to File a Second Amended Complaint filed on June 9, 2023. In Plaintiffs' proposed Second Amended Complaint, Plaintiffs have added JC Hospitality's proper LLC formation, modified Counts I and II to clearly demonstrate violations of the Lanham Act, and added a new Count III asserting a

violation of the Anticybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d). Fed. R. Civ. P. 15(a)(2) states that "[t]he court should freely give leave when justice so requires." As set forth in the Certification of Counsel attached to our Motion to File a Second Amended Complaint, and as stated before the Court in the May 25th pretrial conference, the purpose of the SAC is to properly reflect the Plaintiffs, their trademark licenses, and the violations at issue.  Moreover, granting leave to file a second amended complaint during the pleading stage of this case will not prejudice the Defendant, nor will any additional amended Complaints in the future if warranted. No discovery has taken place yet.  Defendant will not be unfairly disadvantaged if the Court permits Plaintiffs to amend the pleadings. For these reasons, we respectfully request that the Court grant Plaintiffs' Motion to File a Second Amended Complaint.

**POINT III**
**DEFENDANT IS NOT ENTITLED TO COSTS AND ATTORNEYS' FEES BECAUSE PLAINTIFFS' CLAIMS ARE LEGITIMATE AND HAVE NOT BEEN INSTITUTED IN BAD FAITH**

Contrary to Defendant's argument, this is not an "exceptional case" that warrants the issuance of attorneys' fees and costs to Defendant. Since the initiation of this litigation, Plaintiffs' counsel has consistently communicated with our adversary and have promptly addressed Mr. Storch's concerns regarding the Plaintiffs standing to assert the claims against Defendant Hochberg. Our office addressed the issue in good faith before the Court and attempted to moot the issue by providing Mr. Storch LLC formation documents and the License Agreements he demanded in an effort to avoid further attorneys' fees and judicial resources. Our office did not violate any Court order in producing the License Agreements to counsel and marking it "Attorneys Eyes Only" and with limited redactions. Notably, Mr. Storch is actually the one who acted in bad faith by taking screenshots of the

License Agreements produced to him prior to this filing today. Our office has continuously responded to Mr. Storch demands for documents which he was not entitled to during the pleading stage of the case. This is evidenced by the fact that the Court **denied** not only one, but two of Defendant's letter motions to compel the production of the License Agreements.  Nonetheless, we produced the documents in good faith.

Mr. Storch has been incessantly questioning the Plaintiffs' standing in this case in an attempt to deflect from the fact his client, Marisa Hochberg is continuing to infringe upon The Surf Lodge trademarks without any defense other than hoping the Plaintiff does not have standing. As explained in Plaintiffs' Complaint, FAC, and proposed SAC, Defendant Hochberg has willfully ignored numerous cease and desist letters and continues to use the Surf Lodge marks without a license or authorization to do so. Defendant Hochberg has no defense to her conduct and instead, seeks to question the rights of the Plaintiff. Defense counsel is actually the one who has conducted himself in such a manner that is objectively unreasonable and has needlessly consumed both the Court's and Plaintiffs' time and resources. As such, we alternatively seek attorneys' fees and costs associated with Defendant's frivolous motion practice.

## CONCLUSION

For the foregoing reasons, Defendant's Cross-Motion to Dismiss for lack of jurisdiction should be denied and Plaintiff's Motion for Leave to File a Second Amended Complaint be granted.

**JOHN J. ZIDZIUNAS & ASSOCIATES, LLC**
**Attorneys for Plaintiffs**

**By:**     **_/s/ John J. Zidziunas_**
**Dated: July 7, 2023**              **John J. Zidziunas, Esq.**