**JOHN J. ZIDZUNAS & ASSOCIATES, LLC**
**John J. Zidziunas, Esq. (ATTY ID 5544044)**
**225 Broadway, Suite 3800**
**New York, New York 10007**
**T: (212) 516-1868**
***Attorneys for Plaintiffs, JC Hospitality, LLC and Jayma Cardoso***

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **JC HOSPITALITY, LLC and JAYMA CARDOSO,**<br><br>          **Plaintiffs,**<br><br>      **-against-**<br><br>**MARISA HOCHBERG (In Her Individual and Professional Capacities),**<br><br>          **Defendant.** | **CASE NO.: 1:23-CV-02051-LJL** |

---

## MEMORANDUM OF LAW IN SUPPORT OF
## PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT

---

John J. Zidziunas, Esq.
Of Counsel and On the Brief

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT……………………………………………………………………1

PROCEDURAL HISTORY AND RELEVANT BACKGROUND……………………………2

FACTUAL ALLEGATIONS……………………………………………………………………17

LEGAL ARGUMENT……………………………………………………………………………27

POINT I:   LEGAL STANDARD FOR ENTRY OF DEFAULT JUDGMENT…………….27

POINT II:   DEFENDANT HOCHBERG'S CONDUCT DEMONSTRATES A CLEAR AND
ONGOING PATTERN OF WILLFUL DEFAULT THAT WARRANTS AN
ENTRY OF DEFAULT JUDGMENT TO AVOID FURTHER PREJUDICE TO
PLANTIFFS…………………………………………………………………………..28

POINT III: PLAINTIFFS HAVE ADEQUATELY PLED A VIOLATION OF 15 U.S.C. §
1125(A) UNDER THE LANHAM ACT, AND ESTABLISHED LIABILITY
AGAINST DEFENDANT HOCHBERG, WHO HAS WILLFULLY FAILED TO
DEFEND SUCH CLAIMS, AND THUS DEFAULT JUDGMENT IS
WARRANTED AS TO COUNT TWO UNDER FED. R. CIV. P. 55……………32

A. Defendant Hochberg Intentionally Misrepresented Her Services and
Disseminated False Statements Regarding Her Affiliation with Plaintiffs in
Order to Create Consumer Confusion in the Marketplace for Defendant's
Benefit and to Harm the Business and Professional Reputation of
Plaintiffs……………………………………………………………………………34

B. Defendant Hochberg's False Statements and Misrepresentation to Brands
in the Industry and to the Public at Large via Instagram Constitutes Use in
Commerce as Required Under the Lanham Act……………………………39

POINT IV: PLAINTIFFS HAVE ADEQUATELY PLED VIOLATIONS OF NEW YORK
STATE CONSUMER PROTECTION FROM DECEPTIVE ACTS AND
PRACTICES, NY GEN. BUS. L. §§ 349 AND 350, AND ESTABLISHED
LIABILITY AGAINST DEFENDANT HOCHBERG, WHO HAS WILLFULLY
FAILED TO DEFEND, AND THUS DEFAULT JUDGMENT IS WARRANTED
AS TO COUNTS SEVEN AND EIGHT UNDER FED. R. CIV. P. 55…………42

POINT V: PLAINTIFFS HAVE ADEQUATELY PLED AND ESTABLISHED LIABILITY
AGAINST DEFENDANT HOCHBERG FOR TORTIOUS INTERFERENCE
WITH PROSPECTIVE ECONOMIC ADVANTAGE, WHICH DEFENDANT
HOCHBERG HAS WILLFULLY FAILED TO DEFEND, AND THUS DEFAULT
JUDGMENT IS WARRANTED AS TO COUNT TEN UNDER FED. CIV. P.
55…………………………………………………………………………………..45

POINT VI: PLAINTIFFS' REQUEST FOR INJUNCTIVE RELIEF AND EQUITABLE RELIEF IS SUPPORTED BY EVIDENCE OF IRREPARABLE HARM TO PLAINTIFFS' BRAND AND BUSINESS REPUTATION………………………48

POINT VII: DEFENDANT HOCHBERG'S CONDUCT THROUGHOUT THIS LITIGATION WARRANTS AN AWARD OF ATTORNEYS FEES AND COSTS TO PLAINTIFFS PURSUANT TO RULE 54(D) AND THE LANHAM ACT………51

CONCLUSION……………………………………………………………………………53

## <u>TABLE OF AUTHORITIES</u>

### <u>Statutes and Rules</u>

15 U.S.C. § 1125(a)………………………………………1, 4, 17, 32, 33, 34, 36, 39, 41, 49

15 U.S.C. § 1117(a)……………………………………………………………………50, 51

NY Gen. Bus. L § 349………………………………………….........2, 4, 17, 42, 45

NY Gen. Bus. L § 350……………………………………………2, 4, 17, 42, 45

Fed. R. Civ. P. 55………………………………………………………...9, 27

Fed. R. Civ. P. 54(d)(1)…………………………………………………………51

### <u>Cases</u>

*Bricklayers & Allied Craftworkers Local 2 v. Moulton Masonry & Constr., LLC,* 779 F.3d 182(2d Cir. 2015)……………………………………………………………27, 28, 31

*Carvel Corp. v. Noonan*, 350 F.3d 6 (2d Cir.2003)…………………………………………46

*CBS Inc. v. Springboard Int'l Records*, 429 F. Supp. 563 (S.D.N.Y. 1976)…………32, 39

*CJ Prods. LLC v. Snuggly Plushez LLC*, 809 F. Supp. 2d 127 (E.D.N.Y. 2011)………..33

*Coca–Cola Co. v. Tropicana Products, Inc.*, 690 F.2d 312 (2d Cir. 1982)………………33

*C=Holdings B.V. v. Asiarim Corp.*, 992 F. Supp. 2d 223 (S.D.N.Y. 2013)………………39

*eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388 (2006)…………………………………48

*E. Mishan & Sons v. Novel Brands LLC*, 18-CV-02932 (VSB)(SN) (S.D.N.Y. Feb. 13, 2020)…………………………………………………………………………………52

*Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc.*, 314 F.3d 48 (2d Cir. 2002)…..34

*George Basch Co. v. Blue Coral, Inc.*, 968 F.2d 1532 (2d Cir. 1992)……………………50

*Greyhound Exhibit Group, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155 (2d Cir. 1992).....................................................................................................28

*Grp. One Ltd. v. GTE GmbH*, 625 F. Supp. 3d 28, 54 (E.D.N.Y. 2022)..................28, 30

*Himmelstein, McConnell, Gribben, Donoghue & Joseph, LLP v. Matthew Bender & Co., Inc.*, 37 N.Y.3d 169 (2021).....................................................................................43

*Johnson & Johnson v. GAC Int'l, Inc.*, 862 F.2d 975 (2d Cir. 1988)..........................33

*Keebler v. Rath*, 405 F. App'x 517 (2d Cir. 2010)..................................................28

*Koch v. Acker, Merrall & Condit Co.,* 18 N.Y.3d 940 (2012)...................................42

*Lexmark Int'l., Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 122 (2014).........33

*Merck Eprova AG v. Gnosis S.p.A.*, 760 F.3d 247 (2d Cir. 2014)..............................50

*New York v. Green*, 420 F.3d 99 (2d Cir. 2005)...............................................30, 31

*N. Star IP Holdings, LLC v. Icon Trade Servs., LLC*, 710 F. Supp. 3d 183 (S.D.N.Y. 2024)...................................................................................................39

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545 (2014)............50, 51

*Orlander v. Staples, Inc.*, 802 F.3d 289 (2d Cir. 2015)......................................42, 43

*PKG Grp., LLC v. Gamma Croma, S.p.A.*, 446 F. Supp. 2d 249 (S.D.N.Y. 2006).........46

*Schering Corp. v. Pfizer Inc.*, 189 F.3d 218 (2d Cir. 1999)......................................33

*Sleepy's LLC v. Select Comfort Wholesale Corp.*, 909 F.3d 519 (2d Cir. 2018)...........51

*Swarna v. Al-Awadi*, 622 F.3d 123 (2d Cir. 2010)................................................30

*Time Warner Cable, Inc. v. DIRECTV, Inc.*, 497 F.3d 144 (2d Cir. 2007)..................33

*Trane Int'l Inc. v. Calentadores de Am., S.A. de C.V.*, No. 21-CV-4497 (DLC), 2022 WL 1523527 (S.D.N.Y. May 13, 2022).....................................................................39

*Venus By Maria Tash, Inc. v. Prinatriam Ltd.*, 21-CV-2098 (LGS) (RWL), 12 (S.D.N.Y. Aug. 24, 2022)…………………………………………………………………………...51, 52

*4 Pillar Dynasty LLC v. New York & Co., Inc.*, 933 F.3d 202 (2d Cir. 2019)………………51

**Other Sources:**

Carl Campanile, *Ex-gov's kin name-drop for Montauk pal,* NEW YORK POST, June 9, 2025, at 25……………………………………………………………………………………..16

Akshay Kumar, *Marisa Hochberg Opens Up About Bullying, Loss of Power, and Resilience*, HAUTE LIVING, (April 9, 2025) https://hauteliving.com/2025/04/marisa-hochberg-opens-up-about-bullying-loss-and-the-power-of-resilience/767672/ (last visited June 19, 2025)…………………………………………………………………………15

MARISA HOCHBERG, https://www.marisahochberg.com/work/marisahochberg (last visited Aug. 5, 2025)………………………………………………………………………………15

Marisa Hochberg (@marisahochberg), INSTAGRAM, https://www.instagram.com/marisahochberg/?igsh=MWsyaWo2cDNzMmtucw%3D%3D # (last visited Aug. 5, 2025)…………………………………………………………………..15

@thesurflodge, INSTAGRAM, https://www.instagram.com/thesurflodge/?igsh=YWowZDJzZ3kzejY2# (last visited Aug. 5, 2025)……………………………………………………………………………40, 44

@thesurflodgesanctuary, INSTAGRAM, https://www.instagram.com/thesurflodgesanctuary/?igsh=eGQzdXVzc25hc3F3# (last visited Aug. 5, 2025)…………………………..25, 26, 27, 31 36, 37, 38, 41, 42, 43, 47, 48

@gos.sip.tow.er, INSTAGRAM, https://www.instagram.com/gos.sip.tow.er?igsh=MXQwM2RuaXBwaHFwNg== (last visited Aug. 5, 2025)………………………………………………………………………..14

## PRELIMINARY STATEMENT

Plaintiff JC Hospitality, LLC ("JC Hospitality") and Jayma Cardoso ("Cardoso") (collectively the "Plaintiffs") respectfully submit this Memorandum of Law in Support of their Motion for Default Judgment against Defendant Marisa Hochberg ("Defendant Hochberg"), pursuant to Rule 55 of the Federal Rules of Civil Procedure, Local Rules 55.2 and 7.1 of the United States District Courts for the Southern and Eastern Districts of New York, and Rule 3(E) of this Court's Individual Practices.

Defendant Hochberg's conduct throughout the entirety of this litigation has been obstructive, defiant, and offensive to the Court and to Plaintiffs. As explained in detail below, Defendant Hochberg has deliberately ignored Court orders requiring her appearance on multiple occasions, refused to engage in discovery or otherwise defend against this action, despite being duly served, all while threatening Plaintiffs' counsel and engaging in an ongoing tirade of defamatory statements against Plaintiff Cardoso. As a direct result of Defendant Hochberg's conduct over the course of this litigation, the Parties have been unable to engage in discovery or make any meaningful progress in this case due to the Defendant Hochberg's abusive motion practices, deliberate delays, intentional misuse of Plaintiffs' and the Court's time and resources, and overall flagrant disrespect for our judicial system.

Plaintiffs are now renewing their Motion for Default Judgment to comply with the procedural requirements and addressing deficiencies identified by the Court. As explained in detail below, Plaintiffs have adequately pled violations of and established liability against Defendant Hochberg as to Count II, 15 U.S.C. § 1125(a) of the Lanham Act, Counts VII and VIII, violations of the New York State Consumer Protection from

Deceptive Acts and Practices, NY Gen Bus L §§ 349 and 350, and Count X, tortious interference with prospective economic advantage. Pursuant to the Court's direction, Plaintiffs' motion also includes a voluntary dismissal of Counts IV, V, VI, and IX, contingent upon the granting of default judgment.

Defendant Hochberg has willfully failed to defend each of the above-mentioned claims and thus, default judgment is warranted as to Counts II, VII, VIII, and X. Defendant Hochberg's conduct demonstrates a clear and ongoing pattern of willful default that warrants the entry of default judgment to avoid further prejudice to Plaintiffs. For the reasons set forth below, Plaintiffs JC Hospitality and Cardoso respectfully requests that the Court grant their Motion for Default Judgment as to Counts II, VII, VIII, and X of the Second Amended Complaint, seeking injunctive and other equitable relief, attorneys' fees, and costs.

## PROCEDURAL HISTORY AND RELEVANT BACKGROUND

Plaintiffs filed their Complaint in this action on March 10, 2023, asserting claims under the Lanham Act and related New York state laws. Defendant Hochberg was personally served with the Summons and Complaint via process server on March 29, 2023, as evidenced by the proof of service filed with this Court on April 4, 2023. (*See* Affidavit of Service attached to the Declaration of John J. Zidziunas, Esq. ("Zidziunas Declaration") as "Exhibit 1").

On April 20, 2023, Defendant Hochberg, *via* her first attorney, Steven Storch, Esq. filed a motion to dismiss the Complaint for lack of personal and subject matter jurisdiction. On May 11, 2023, Plaintiffs filed a First Amended Complaint without leave of Court pursuant to Fed. R. Civ. P. 15(a)(1)(B), in order to amend the caption and the Parties'

section to properly identify the asset holding companies set forth in Plaintiffs' filed AO 120 Form. On May 12, 2023, the Court denied Defendant's Motion to Dismiss as moot.

On May 18, 2023, defense counsel, Steven Storch, filed his first Motion to Withdraw as counsel for Defendant Hochberg, with his reason for the motion being that his ability to effectively communicate with Defendant has irreparably deteriorated to the extent that continued representation of Defendant by the Firm is untenable. An Initial Conference was held on May 25, 2023, before Judge Liman, where Mr. Storch advised that he had resolved his problems with his client and would be withdrawing his motion.

Following Mr. Storch's withdrawal of his motion, Defendant argued that Plaintiffs First Amended Complaint did not correct the standing issue because JC Hospitality was not identified as an LLC in the case caption, which prompted Judge Liman to allow Plaintiffs to file a proposed Second Amended Complaint to correct the issue.

On June 12, 2023, Plaintiffs filed a Motion to Amend the First Amended Complaint and to File a Second Amended Complaint. (*See* copy of Plaintiffs' Motion to File Second Amended Complaint ("SAC") dated June 12, 2023, attached to Zidziunas Declaration as "Exhibit 2"). Plaintiffs' SAC asserts the following federal claims against Defendant Marisa Hochberg ("Hochberg"): (1) Violation of the Lanham Act – Trademark Infringement, 15 U.S.C. § 1114; (2) Violation of the Lanham Act – Trademark Dilution, 15 U.S.C. § 1125; and (3) Violation of the Anti-cybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d)); (4) Violation of New York State trademark infringement prohibitions, NY Gen Bus L § 360-K; (5) Violation of New York State protections against injury to business reputation and dilution, NY Gen Bus L § 360-L; (6) Violation of New York State trademark common law; (7) Violation of New York State Consumer Protection from Deceptive Acts

3

and Practices – deceptive acts and practices, NY Gen. Bus. L § 349; (8) Violation of New York State Consumer Protection from Deceptive Acts and Practices – false advertising, NY Gen. Bus. L § 350; (9) Violation of the New York City Consumer Protection Law, NYC Admin Code § 20-700; and (10) tortious interference with prospective economic advantage. (*Id.*).

On June 23, 2023, defense counsel filed an opposition to Plaintiffs' Motion to Amend and Cross-Motion to Dismiss for Lack of Jurisdiction. On July 28, 2023, before the Court had even ruled on Defendant's Cross-Motion to Dismiss, Mr. Storch filed his second motion to withdraw as counsel for Defendant Hochberg, citing to unreasonable difficulties that Defendant Hochberg has created by ceasing to cooperate with the Firm in her defense. Another conference was held before Judge Liman on August 7, 2023, where Mr. Storch once again advised that he had resolved his problems with his client and would be withdrawing his second motion.

On November 27, 2023, in a 26-page order Opinion and Order, Judge Liman granted Defendant's motion to dismiss in part. Judge Liman dismissed Plaintiffs' claims for trademark infringement under 15 U.S.C. § 1114-1117, trademark dilution under 15 U.S.C. § 1125(c), and cybersquatting under 15 U.S.C. § 1125(d), for lack of standing. However, Judge Liman declined to dismiss Plaintiff's claims for false designation of origin and misrepresentation of facts under 15 U.S.C. § 1125(a), along with Counts 4-10 under New York statutory and common law. (*See* copy of Judge Liman's Order dated November 27, 2023, attached to Zidziunas Declaration as "Exhibit 3").

On December 14, 2023, Mr. Storch filed his third motion to withdraw as counsel for Defendant Hochberg. In support of his motion to withdraw, Mr. Storch reiterated his

same arguments cited to in his first two motions, and explained that he was unable to work with Defendant Hochberg who has, at various times during the representation in this matter, fired him and then subsequently begged him to represent her, threatened the Firm and its lawyers, refused to communicate with the Firm, and refused to authorize the Firm to take actions required by the Court's scheduling orders and applicable rules.

In a Text Order dated December 20, 2023, Judge Liman informed the Parties that an in-person hearing would be held on January 4, 2024, to address Mr. Storch's third Motion to Withdraw as counsel. Judge Liman specifically ordered that Defendant Hochberg be present at the hearing.

On December 28, 2023, Plaintiffs filed a letter response to Mr. Storch's motion, arguing that Defendant's excessive motion practice in filing and withdrawing motions to withdraw as counsel is a misuse of the Court's rules, time, and judicial resources, and has caused undelay delay, prejudice, and costly legal fees for Plaintiffs. Plaintiffs further advised the Court that Defendant Hochberg had been inappropriately contacting and harassing Plaintiffs' counsel and business representatives of Plaintiffs in an attempt to improperly influence the case.

On January 4, 2024, Plaintiffs' counsel and Mr. Storch appeared for the hearing. Defendant Hochberg defied Judge Liman's Order and failed to appear for the hearing. In an Order dated January 4, 2024, Judge Liman granted Mr. Storch's motion to withdraw as counsel, permanently relieving him as counsel for Defendant Hochberg. Judge Liman further ordered that another in-person hearing would be held on February 8, 2024 to establish a renewed case management plan with the Parties. (*See* copy of Order dated January 4, 2024, attached to Zidziunas Declaration as "Exhibit 4"). Notably, Judge Liman

directly ordered that if Defendant Hochberg failed to appear personally or through counsel for the February 8th in-person hearing, "she risks default". (Id.)

On the eve of the hearing scheduled for February 8th, Defendant Hochberg's new attorney, Alexander Dudelson, entered his appearance. Once again, Defendant Hochberg defied Judge Liman's order and failed to appear for the hearing. Following the February 8th hearing, Judge Liman set forth a discovery schedule with a fact discovery DED of June 7, 2024.

Furthermore, Judge Liman ordered Defendant to file her Answer no later than February 22, 2024. On the eve of the deadline to file an Answer, defense counsel, Mr. Dudelson, sought an additional one-week extension to February 29, 2024. Because of Ms. Hochberg's history of abusive motion practices in this case and refusal to respect Court ordered deadlines, this office respectfully declined defense counsel's request for the extension.

In a Text Order dated February 22, 2024, Judge Liman granted Mr. Dudelson's request on the condition that if a responsive pleading was not filed by February 29, 2024, Plaintiff would be granted leave to commence default proceedings against Defendant Hochberg.

On February 27, 2024, just two (2) days before the extended deadline to file her Answer, Defendant Hochberg's new attorney, Mr. Dudelson, filed a Motion to Withdraw as Counsel. In Mr. Dudelson's Motion to Withdraw as Counsel, Mr. Dudelson asserted that he must be relieved as counsel because his client failed to pay his retainer fee, made baseless claims regarding counsel's conduct, threatened counsel with charges of harassment and malpractice, and has refused to cooperate with counsel to draft her

responsive pleading, rendering it impossible to effectively represent his client. Mr. Dudelson sought immediate withdrawal as counsel of record for Defendant Hochberg, as well as a stay of all proceedings and deadlines for thirty days to afford Defendant the opportunity to retain counsel or appear *pro se*.

In immediate response to Mr. Dudelson's last minute motion, Plaintiffs filed an opposition to Mr. Dudelson's motion to withdraw and request to stay the proceedings, arguing once again that Defendant Hochberg's ongoing abusive practices, deliberate delays, and flagrant disrespect for the judicial system that have caused not one, but two defense attorneys to withdraw, has significantly prejudiced the Plaintiffs by causing undue delay and disruption to the case.

In an Order dated February 29, 2024, Judge Liman denied Mr. Dudelson's request for a 30-day stay of the proceedings and held his motion to withdraw *sub judice*. In denying this request, Judge Liman stated that "***the progress of this case has been frustrated by what the Court can only interpret as Hochberg's repeated efforts to avoid answering the claims against her.***" (*See* copy of Judge Liman's Order dated February 29, 2024, attached to Zidziunas Declaration as "Exhibit 5") (emphasis added).

In his Order, Judge Liman referenced Defendant Hochberg's failure to appear at the January 4, 2024 hearing despite being directly ordered by the Court, as well her failure to appear at the February 8, 2024 hearing and Mr. Dudelson's late appearance for same. Your Honor noted that the Parties eventually agreed to an amended case management plan "***after a two-month delay owing to Defendant's dilatory conduct.***" (*Id.*) (emphasis added). Your Honor further stated that the "***election of counsel to represent Defendant is not something that Hochberg can turn on and turn off, whenever she***

***chooses not to meet a Court deadline.*** She has been warned that she would have to proceed with counsel or proceed pro se." (Id.) (emphasis added)

On February 29, 2024, Mr. Dudelson filed Defendant's Answer to the Second Amended Complaint. On March 7, 2024, Mr. Dudelson requested that the Court schedule a hearing for his Motion to be Relieved as Counsel. The Court scheduled a hearing on the motion for March 27, 2024.

Separately, on March 7, 2024, a Settlement Conference before Magistrate Judge Katharine Parker was scheduled for May 8, 2024, directing all Parties to attend in-person with their counsel.

Following the hearing on March 27, 2024, notably which Defendant Hochberg did <u>not</u> attend despite being ordered to do so, Judge Liman granted Mr. Dudelson's motion to be relieved as counsel for Defendant Hochberg. (*See* copy of Judge Liman's Order dated March 27, 2024, attached to Zidziunas Declaration as "Exhibit 6"). In Judge Liman's March 27, 2024, Order, he stated the following:

> Permitting counsel to withdraw will not have an adverse impact on the timing of the proceeding, any more than Ms. Hochberg's dilatory response to this litigation already has had on the proceeding. The case management plan in effect provides for all fact discovery to be complete by June 7, 2024, all discovery to be complete by August 9, 2024, and a status conference on August 14, 2024, in person in Courtroom 15C at 500 Pearl Street. Dkt. No. 69. There is no stay in discovery in the case. As an individual defendant proceeding ***pro se***, Ms. Hochberg will be ***subject to the same responsibilities*** as if she were represented, and will ***suffer the same consequences*** if she defaults in those responsibilities that she also would have were she represented. Each party may serve discovery on the other. If Ms. Hochberg fails to respond to ordered discovery, she may face a number of potential sanctions, including but not limited to the issuance of a default judgment against her. See Fed. R. Civ. P. 37(b)(2)(A)(vi). The Court may also impose similar sanctions on Ms. Hochberg, including entry of a default judgment, if she fails to disclose information required by discovery, see Fed. R. Civ. P. 37(c)(1), or fails to attend her own deposition, see Fed. R. Civ. P. 37(d). Finally, ***if Ms. Hochberg fails to "otherwise defend" this***

***lawsuit, she may be subject to a default judgment***. *See* Fed. R. Civ. P. 55(a).

(*Id.*) (emphasis added).

On May 1, 2024, Plaintiffs served their Requests for Interrogatories, Production of Documents, and Requests for Admissions to Defendant Hochberg via ECF and email copy. Judge Liman confirmed that as an individual appearing *pro se*, service would be deemed effectuated *via* Pacer's ECF notifications, as well as *via* email and regular mail. Plaintiffs requested Ms. Hochberg's current mailing address via email on May 1 and May 7, 2024, however, Plaintiff failed to provide same. (*See* copies of emails to Defendant Hochberg dated May 1, and May 7, 2024, attached to Zidziunas Declaration as "Exhibit 7"). To date, Defendant Hochberg has neither responded to Plaintiffs' discovery demands nor served discovery propounds upon Plaintiffs.

On May 6, 2024, Judge Katharine Parker issued an Order Requiring Appearance at Settlement Conference to Defendant Hochberg in advance of the mandatory in-person Settlement Conference scheduled for May 9, 2024. Plaintiffs promptly served a copy of the Order to Hochberg via email on May 7, 2024. (*See* Exhibit 7; *see also* copy of Judge Parker's Order dated May 6, 2024, attached to Zidziunas Declaration as "Exhibit 8").

On May 9, 2024, Plaintiff Cardoso and the undersigned counsel for Plaintiffs attended the Settlement Conference before Judge Parker. Once again, Defendant Hochberg defied the Court's direct orders and failed to appear for the mandatory Settlement Conference.

On May 22, 2024, after enduring fourteen months of Defendant Hochberg's antics, which forced two defense attorneys to withdraw as counsel, involved four motions to withdraw, and caused ongoing delays with prolonged periods of no communication with

defense counsel, Plaintiffs filed a Proposed Clerk's Certificate of Default and a Declaration of Counsel in Support of Clerk's Certificate of Default. The Clerk of the Court signed the Certificate of Default on May 22, 2024. (*See* Clerk's Certificate of Default, dated May 22, 2024, attached to Zidziunas Declaration as "Exhibit 9"). On the same day, upon receiving the executed Clerk's Certificate of Default, Plaintiffs filed for Default Judgment on May 28, 2024. (*See* Declaration of Counsel in Support of Plaintiff's Motion for Default, dated May 28, 2024, attached to Zidziunas Declaration as "Exhibit 10").

The same night after Plaintiffs filed for Default Judgment, Defendant Hochberg emailed the Firm's Associate, Caroline McCallan, Esq., threatening her with claims that "law enforcement" would take action against her if she contacted Defendant again, among other inappropriate and hostile remarks. Plaintiffs subsequently filed a letter to Judge Liman on May 30, 2024, requesting intervention and seeking permission to file a motion for sanctions, financial penalties and attorney's fees against Defendant Hochberg for her continuous belligerent conduct throughout his litigation. Judge Liman promptly granted Plaintiff leave to file a motion or request for an order to show cause for sanctions and authorized Plaintiffs to seek a Court order restraining Defendant from making threats or engaging in inappropriate conduct toward opposing counsel or any persons associated with opposing counsel. (*See* copy of letter to Judge Liman from Plaintiff's counsel dated May 30, 2024, attached to Zidziunas Declaration as "Exhibit 11"). Plaintiffs filed a Request for Order to Show Cause seeking same on June 13, 2024.

On June 17, 2024, Judge Liman scheduled a hearing to give Defendant Hochberg the opportunity to defend against Plaintiffs' Request for an Order to Show Cause. Although Defendant Hochberg was expected to receive all filings via ECF, Judge Liman

additionally ordered Plaintiffs to serve the hearing order on Defendant Hochberg. Plaintiffs notified Judge Liman that despite our attempts to personally serve Hochberg, we were unable to do because the only mailing address we had on file for her was no longer accurate and Hochberg refused our Plaintiff's requests to provide an updated address. As a result, Judge Liman had to issue another Order on June 21, 2024, ordering Defendant Hochberg to provide her home mailing address for service of process and requiring her to "keep the Court apprised of her home address and is presumed to be aware of docket entries". (*See* copy of Judge Liman's letter Order, dated June 21, 2024, attached to Zidziunas Declaration as "Exhibit 12"). To date, Defendant Hochberg has not compiled with the Court's Order and has not provided her current home mailing address.

On June 24, 2024, Plaintiffs attended the hearing on Plaintiffs' Request for Order to Show Cause. Once again, Defendant Hochberg did not appear despite being ordered to do so by the Court. That same day, Judge Liman granted Plaintiffs' Request for Order to Show Cause and issued an Order prohibiting Defendant Hochberg from making threats, disparaging remarks, or engaging in disrespectful conduct towards Plaintiff Cardoso, Plaintiffs' counsel, Plaintiffs' attorneys and staff, or any persons known to be associated with Plaintiffs or their counsel. Judge Liman further ordered that Plaintiffs be permitted to continue contacting Defendant Hochberg, as a *pro se* litigant, via email for all litigation matters, without fear of threats or retaliation from Defendant. (*See* Judge Liman's Order to Show Cause, attached to Zidziunas Declaration as "Exhibit 13").

On July 11, 2024, following Plaintiffs' request to the Court, Judge Liman canceled the previously scheduled discovery conference set for July 12, 2025, due to Defendant Hochberg's failure to respond to discovery demands or submit discovery propounds. In

turn, Judge Liman scheduled an in-person hearing on Plaintiffs' initial Motion for Default. On August 21, 2024, Plaintiffs appeared for the in-person hearing on the Motion for Default, which Defendant failed to attend and thus, failed to defend against.

Following the August 21st hearing, Judge Liman permitted Plaintiffs to file supplemental submissions providing evidence to support their requests for injunctive and monetary relief. On August 27, 2024, Plaintiffs mailed a copy of the Court's Order dated August 21, 2024, to Defendant Hochberg via certified mail at her last known address. In conjunction with Plaintiffs' initial Motion for Default Judgment filed in May 2024, Plaintiffs filed an Affidavit of Plaintiff Jayma Cardoso on September 4, 2024, followed by Plaintiffs' Application for Attorneys' Fees and Expenses, pursuant to Fed. R. Civ. P. 54(d), on September 11, 2024. Defendant failed to file any opposition to Plaintiffs' Motion for Default by the September 11, 2024, deadline. To date, there has been no opposition briefing or any such correspondence filed on the docket by Defendant Hochberg.

In an Order dated November 27, 2024, Judge Liman found that while Plaintiffs had made an ample showing that they were entitled to an entry of default for Defendant's failure to defend, the Motion for Default Judgment was denied due to Plaintiffs' procedural failure to comply with Rules 55.2 and 7.1 of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York, as well as Rule 3(E) of this Court's Individual Practices. (*See* copy of Judge Liman's Order, dated November 27, 2024, attached to Zidziunas Declaration as "Exhibit 13")

Since Plaintiffs' initial Motion for Default Judgment in May 2024, Defendant Hochberg has continued to infringe on Plaintiffs' intellectual property and continued to misrepresent herself to consumers and business associates of Plaintiff Cardoso by falsely

associating her business services with The Surf Lodge brand. Furthermore, Defendant Hochberg has continued to engage in ongoing defamatory acts against Plaintiff Cardoso in direct violation of Judge Liman's June 24, 2024 Order, prohibiting Defendant Hochberg from making threats, disparaging remarks, or engaging in disrespectful conduct towards Plaintiff Cardoso, Plaintiffs' counsel, Plaintiffs' attorneys and staff, or any persons known to be associated with Plaintiffs or their counsel. (*See* Declaration of Jayma Cardoso, dated August 5, 2025, hereinafter "Declaration of Cardoso.").

As recently as March 12, 2025, Defendant Hochberg sent an unsolicited text to a business colleague of Plaintiff Cardoso after seeing a collaborative Instagram post between Plaintiff Cardoso's business, The Snow Lodge, and the Suite Reyard/Apres Hair Salon located at the St. Regis Hotel in Aspen, Colorado. (*See* screenshots of Defendant Hochberg's text message to Plaintiff Cardoso's business associate and the St. Regis Aspen Instagram post, dated on or around March 12, 2025, attached to Declaration of Cardoso as "Exhibit D"). Shortly after seeing the St. Regis Aspen's Instagram post showing only a formal dinner table setting and tagging "theSnowLodgeAspen" and "suitereyad", Defendant Hochberg sent the owner of the Suite Reyard/Apres Hair Salon a text message containing the following defamatory statements about Plaintiff Cardoso:

> I knew Jayma [Cardoso] was capable of being cruel, but I'm shocked that you could stoop to that level. After I brought you to Aspen and you told me you wouldn't work with Jayma and get involved and saw what she did to me as my dad was dying (and killed him) is just unbelievable. I truly don't know how you can sleep at night. The good thing is, I now have more proof for the new lawsuit, I didn't steal Jayma [Cardoso's] brands but instead, she stole mine and intentionally wanted to hurt me.

> (<u>Id.</u>).

This text message demonstrates that not only is Defendant Hochberg continuously

keeping tabs on Plaintiff Cardoso's business activities and business associates, but she is actively aware of this litigation yet refuses to engage in discovery, respond to motions, or abide by the Court's orders. (*See* Declaration of Cardoso).

Furthermore, upon information and belief, Defendant Hochberg has and continues to send defamatory statements and spread false antisemitic rhetoric about Plaintiff Cardoso for publication by "gossip" Instagram pages to publicly damage Plaintiff Cardoso. On August 4, 2025, the Instagram handle "@gos.sip.tower"[1] published the following statement in a public post accusing Plaintiff Cardoso of being antisemitic: "Cardoso took her only Jewish employee, Marisa Hochberg, to federal court. Marisa's father (President of Park East Synagogue) was hospitalized due to the stress. He passed away on October 19. All while Jayma [Cardoso] publicly claimed to "stand with the Jewish community." (*See* Exhibit E attached to Declaration of Cardoso). Plaintiff Cardoso became aware of this harmful and defamatory statement after she was contacted by a writer from the New York Post requesting a comment on the "@gos.sip.tower" Instagram post and informing her that the New York Post is planning to run a story on it. (*See* Declaration of Cardoso). Based on Defendant Hochberg's unrelenting efforts to cause reputational harm to Plaintiff Cardoso and her businesses, one can only logically conclude that Defendant Hochberg is initiating the publication of these defamatory and harmful statements to the media and to consumers.

While Defendant Hochberg is sending unsolicited defamatory messages to Plaintiff Cardoso's business associates to harm her reputation and The Surf Lodge brand, Defendant Hochberg is taking advantage of Plaintiff Cardoso's success and goodwill of

---

[1] @gos.sip.tow.er, INSTAGRAM,
https://www.instagram.com/gos.sip.tow.er?igsh=MXQwM2RuaXBwaHFwNg== (last visited Aug. 5, 2025).

The Surf Lodge brand by publicly associating herself with The Surf Lodge and misrepresenting her business experience as it relates to The Surf Lodge and The Snow Lodge. (*Id.*).

By way of example, on April 9, 2025, an online media outlet, Haute Living, published an article of an interview with Defendant Hochberg wherein she falsely overstated her business ventures and her role as a former employee of The Surf Lodge and Plaintiff Cardoso. (*See* Exhibit F, attached to Declaration of Cardoso)[2]. In particular, Defendant Hochberg falsely stated that she "helped launch The Snow Lodge Aspen", which is not the case as Hochberg has no affiliation, ownership, interest, financial stake or sweat equity in creating The Snow Lodge. (*Id.*).

Defendant Hochberg maintains this misrepresentation on her personal website, "marisahochberg.com", which is active and shared on Defendant Hochberg's personal Instagram account "@marisahochberg" for public viewing to her 11,300 Instagram followers.[3] Defendant Hochberg states in her "About Me" section of her website that she "founded [the Surf Lodge's] wellness program" and is "responsible for opening The Snow Lodge Aspen (the sister property of The Surf Lodge". (*See* Exhibit G attached to Declaration of Cardoso)[4].

In addition to her continued infringement and misrepresentation, Defendant Hochberg has engaged in and continues to engage in a calculated smear campaign against Plaintiff Cardoso in order to hurt Plaintiff Cardoso's reputation and businesses.

---

[2] Akshay Kumar, *Marisa Hochberg Opens Up About Bullying, Loss of Power, and Resilience*, HAUTE LIVING, (April 9, 2025) https://hauteliving.com/2025/04/marisa-hochberg-opens-up-about-bullying-loss-and-the-power-of-resilience/767672/ (last visited June 19, 2025).
[3] Marisa Hochberg (@marisahochberg), INSTAGRAM, https://www.instagram.com/marisahochberg/?igsh=MWsyaWo2cDNzMmtucw%3D%3D# (last visited Aug. 5, 2025).
[4] MARISA HOCHBERG, https://www.marisahochberg.com/work/marisahochberg (last visited Aug. 5, 2025).

Upon information and belief, Defendant Hochberg has solicited reporters from various media publications including the New York Post and Business Insider to initiate "hit pieces" against Plaintiff Cardoso and The Surf Lodge.

Most recently, as of June 2025, Defendant Hochberg leaked confidential email correspondence between Plaintiff Cardoso and Christina Cuomo, wife of news correspondent, Chris Cuomo, and sister-in-law to former Governor Andrew Cuomo, to the New York Post in order to aid in the publishing of a destructive article against Christina Cuomo and Plaintiff Cardoso, titled "Ex-gov's kin name-drop for Montauk pal".[5] (*See* Exhibit H attached to Declaration of Cardoso). Upon information and belief, Defendant Hochberg leaked confidential email(s) between Plaintiff Cardoso and Christina Cuomo in or around 2020, which Defendant Hochberg's employee email address was copied on while she was still employed by The Surf Lodge in 2020. Christina Cuomo, Defendant Hochberg, and Plaintiff Cardoso were the only individuals on the email correspondence that is the subject of this New York Post article. Immediately following Defendant Hochberg's termination from The Surf Lodge in 2020, she was no longer permitted to use the company email address and therefore, it appears Defendant Hochberg illegally retained and misappropriated property of The Surf Lodge. As Defendant Hochberg was one of only three people on this email correspondence, it cannot be refuted that she is the link contacting news publications in an effort to harm Plaintiff Cardoso's personal and professional reputation, and The Surf Lodge brand.

This behavior further shows why Plaintiffs previously filed for default against Defendant Hochberg in May 2024 and are renewing their Motion for Default here.

---

[5] Carl Campanile, *Ex-gov's kin name-drop for Montauk pal,* NEW YORK POST, June 9, 2025, at 25.

Plaintiffs are now renewing their Motion for Default Judgment to comply with the procedural requirements and addressing deficiencies identified by the Court in the November 27, 2024 Order. This renewed motion includes a request for default judgment on Count II of the Second Amended Complaint, which alleges Defendant's unlawful conduct, specifically the willful false designation of origin and misrepresentation of facts under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), as well as Counts VII and VIII alleging violations of the Violation of New York State Consumer Protection from Deceptive Acts and Practices, NY Gen Bus L §§ 349 and 350, and Count X for tortious interference with prospective economic advantage. Pursuant to the Court's direction, Plaintiffs' motion also includes a voluntary dismissal of Counts IV, V, VI, and IX, contingent upon the granting of default judgment.

## FACTUAL ALLEGATIONS

In or about April 2008, Plaintiff Cardoso ("Cardoso") opened The Surf Lodge in Montauk, New York. (*See* SAC at ¶ 21; Declaration of Cardoso). The Surf Lodge is a hotel offering high-end amenities such as a restaurant, bar, boutique, and outdoor venue space. (*See* SAC at ¶ 22). At all pertinent times, Plaintiff JC Hospitality has owned, operated, and managed The Surf Lodge, which is a well-known upscale boutique hotel, restaurant, bar and outdoor music venue located in Montauk, New York. Plaintiff Cardoso owns one hundred percent of JC Hospitality. (*See* SAC at ¶¶ 7-8; Declaration of Cardoso.).

The branding associated with The Surf Lodge is so distinctive and well-known that in 2019, Cardoso and The Surf Lodge's team opened a year-round restaurant and lounge in Aspen, Colorado, under the trademarked name "The Snow Lodge." Since its opening, The Snow Lodge has become a similarly notable destination for clientele searching for

17

luxury experiences, and consequentially, The Snow Lodge is presently a permanent fixture at the St. Regis Aspen Resort. (*See* SAC at ¶¶ 27-28; Declaration of Cardoso).

In order to best protect the value of The Surf Lodge's brand, trademarks were obtained and filed with the United States Patent and Trademark Office for the names "The Surf Lodge," and "The Snow Lodge." (*See* SAC at ¶ 29; Declaration of Cardoso). These trademarks have been held since 2008, initially by Montauk Properties, LLC, and then subsequently held by TSL Management, Inc. ("TSLM"). (*See id.*). At all pertinent times, Plaintiff Cardoso has been, and remains to date, a co-owner in TSLM. (*See* SAC at ¶ 35; Declaration of Cardoso). For over the last twelve years, Plaintiffs JC Hospitality and Cardoso have been and continue to be the exclusive licensee of "The Surf Lodge" and "The Snow Lodge" trademarks. (*See* SAC at ¶ 31; Declaration of Cardoso).

Defendant Hochberg was an employee of The Surf Lodge for only a brief period of time, which formed the basis of her business relationship with Cardoso. (*See* SAC at ¶ 23; Declaration of Cardoso). By way of background, prior to the Covid-19 global pandemic, The Surf Lodge primarily hosted large gatherings, which were often attended by celebrities and other wealthy clientele. Prior to Covid-19, The Surf Lodge began to shift its focus to wellness and began offering classes and retreats intended to create holistic experiences, by which/through which The Surf Lodge's guests could relax and rejuvenate themselves. (*See* SAC at ¶¶ 24-25; Declaration of Cardoso). Throughout the course of its corporate existence, Cardoso positioned The Surf Lodge as not only a luxury destination, but also as a lifestyle brand.

In or about April 2019, Plaintiff Cardoso and Defendant Hochberg, who had a friendship and business relationship through Hochberg's employment with The Surf

Lodge, conceived of a yoga studio named "The Sanctuary" which would operate in the town of Montauk, New York, more than one mile from The Surf Lodge's property. (*See* SAC at ¶¶ 37-38; Declaration of Cardoso). At all times pertinent thereto, The Sanctuary was a completely separate entity from The Surf Lodge, with no affiliation to the brand and likeness of The Surf Lodge, except for Cardoso's mutual ownership interest in both corporations. (*See id.*).

Around this time, Cardoso legally formed the company JM Sanctuary LLC d/b/a The Sanctuary ("JM Sanctuary LLC") and registered the company in New York State. (Ŝee Ex. B to SAC, attached to Zidziunas Declaration as Exhibit 2; SAC at ¶¶ 39-40; Declaration of Cardoso). Cardoso was the only listed Member of JM Sanctuary LLC at all times during which "The Sanctuary" was in existence. (*See id.*) At no point, ever, was Defendant Hochberg granted a license, legal right, contract, or agreement, to use The Surf Lodge's trademarks/intellectual property owned by TSLM. (*See* SAC at ¶ 41; Declaration of Cardoso). At no point, ever, was Defendant Hochberg assigned a license, or granted a sublicense, to use The Surf Lodge's trademarks/intellectual property by JC Hospitality or TSLM. (*See* SAC at ¶ 42; Declaration of Cardoso).

During the course of their brief business partnership in The Sanctuary, Hochberg controlled the social media Instagram handle for The Sanctuary, and its login and passwords, and would use and update The Sanctuary's social media accordingly for marketing efforts. (*See* SAC at ¶ 43; Declaration of Cardoso).

In or about March 2020, as COVID-19 was being declared a national and global emergency, The Surf Lodge and The Sanctuary were both forced to cease providing services to the public in accordance with federal, state, and local guidelines. In or about

mid-2020, Plaintiff Cardoso, with the understanding that businesses similar to hers would be forced to remain mostly inactive for the foreseeable future, closed all operations of The Sanctuary. (*See* SAC at ¶¶ 44-45; Declaration of Cardoso). On or around July 1, 2020, Hochberg was terminated as a Surf Lodge employee due to economic reasons and a drastic reduction in work force from the COVID-19 pandemic. (*See* Declaration of Cardoso).

Around this same time, in the summer of 2020, Defendant Hochberg became deeply embroiled in a legal scandal regarding her refusal to pay rent on a luxury property she had leased in Montauk for multiple months. (*See* Exs. C and D to SAC, attached to Zidziunas Declaration as Exhibit 2). Shockingly, when Hochberg's landlord for the rented Montauk property brought a legal complaint against her for non-payment of rent, Hochberg allegedly sought to invoke New York State's Tenant Safe Harbor Act as a legal defense for not paying her rent for the luxury summer home, all the while renting another home in New York City at the same time. Aside from her past due rents and refusal to vacate the rented Montauk property, the allegations against Hochberg focused on her flagrant abuse of the Safe Harbor Act, a law which was clearly enacted to help those desperately affected by the Covid-19 pandemic to avoid losing their homes during the global lockdown, and not to protect people seeking to abuse the legal system by illegally squatting at luxury properties. (*See* SAC at ¶¶ 46-49; Declaration of Cardoso).

Unfortunately for Defendant Hochberg, her legal scandal sparked a viral campaign of negative press about her and news stories that ran in the *New York Times*, *Page Six*, the *New York Post* and the *Wall Street Journal*. (*See* Exs. C and D to SAC, attached to Zidziunas Declaration as Exhibit 2). As a consequence of Hochberg's behavior and the

situation as a whole, negative rumors about Hochberg's former employment with The Sanctuary and The Surf Lodge, also began to circulate, which in turn caused reputational harm to Cardoso and her business interests. (*See* SAC at ¶¶ 50-51; Declaration of Cardoso). During this time, numerous Montauk residents and guests of The Surf Lodge began approaching Cardoso in both her personal and professional capacities to discuss Hochberg's actions as they related to Hochberg's prior affiliation with The Surf Lodge, which caused reputational harm to Plaintiff Cardoso and The Surf Lodge. (*See id.*).

After attempting to intervene on Hochberg's behalf and resolve the situation to shift negative focus away from The Surf Lodge, Cardoso was rebuffed by Hochberg and left with no recourse for the reputational damage caused, and continuing to be caused, to The Surf Lodge by Hochberg's conduct and subsequent legal scandal. (*See* SAC at ¶¶ 52-54; Declaration of Cardoso). Plaintiff Cardoso reasonably concluded that, based on numerous factors including Hochberg's legal scandal, she could no longer conduct business of any kind with Hochberg without suffering further damage. (*See id.*) As such, Plaintiff Cardoso sought to dissolve the JM Sanctuary LLC entity and cut off all communications with Hochberg. (*See id.*).

Plaintiff Cardoso notified Hochberg of her intentions to permanently cease business relations with Hochberg and to close JM Sanctuary LLC as a courtesy before doing so. (*See* SAC at ¶ 55; Declaration of Cardoso). However, shortly after Cardoso notified Hochberg of her decision to sever all remaining business ties with her, in or around January 2021, Hochberg began using the name "The Sanctuary," and also using Cardoso's name individually, as a means of luring one of The Surf Lodge's major clients, AMEX (American Express) to do business with Hochberg in Bridgehampton, New York.

(*See* SAC at ¶ 56; Declaration of Cardoso).

Without Plaintiff Cardoso's knowledge or approval, Hochberg had apparently been in talks with AMEX for more than three (3) months—from January 2021 to April 2021—pitching AMEX a partnership activation deal between The Sanctuary and Saks Fifth Avenue to create the "American Express Sanctuary Wellness House" in Bridgehampton. (*See* SAC at ¶ 57; Declaration of Cardoso). Defendant Hochberg's unauthorized actions included sending to Saks Fifth Avenue/AMEX brand decks, detailed financial proposals, and conducting extensive communications with both companies to pitch Hochberg's project. (*See* Ex. E to SAC, attached to Zidziunas Declaration as Exhibit 2; SAC at ¶ 58; Declaration of Cardoso).).

Notably, Plaintiff Cardoso learned of Hochberg's unauthorized, secretive dealings from a representative of the production company Black Flower Agency, which was involved on the production side of the project. The Black Flower Agency informed Cardoso *via* email that they were surprised that Cardoso had missed numerous phone calls, Zoom meetings, and other communications related to the project, and how Cardoso appeared to be irresponsible due to her lack of participation in the process. (*See* SAC at ¶¶ 59-60; Declaration of Cardoso). It became clear to Plaintiff Cardoso the devastating effects that Hochberg's unauthorized actions were having on Cardoso's personal reputation, The Surf Lodge's reputation, and various business relationships related to The Surf Lodge. Cardoso was stunned when she learned of Hochberg's actions and reassured the Black Flower Agency that she had cut ties with Hochberg, and that Hochberg had no authority or permission to do business under the name "The Sanctuary" and was inappropriately using Cardoso's name and The Surf Lodge's name and affiliation for

unauthorized purposes to benefit Hochberg. (*See* SAC at ¶¶ 61-62; Declaration of Cardoso).

Around the same time, Plaintiff Cardoso made it clear to Hochberg that Hochberg was committing fraud by illegally trying to operate and conduct business as The Sanctuary without Cardoso's permission or consent, and that Hochberg's deceptive misuse of Cardoso's name and The Surf Lodge's names as vehicle to gain business for herself was also illegal, infringing on Plaintiff JC Hospitality's intellectual property, and creating a false association that was and continues to be damaging to both Cardoso and The Surf Lodge. (*See* SAC at ¶ 63; Declaration of Cardoso).

Accordingly, Plaintiff Cardoso communicated with Hochberg numerous times that Hochberg must cease and desist her wrongful use of The Surf Lodge's intellectual property. Despite Cardoso's demands and warnings, Cardoso learned that Hochberg was still soliciting business for The Sanctuary and falsely affiliating herself with The Surf Lodge as a means of gaining new business. (*See* SAC at ¶ 64; Declaration of Cardoso).

In fact, Cardoso's lawyers sent Hochberg three (3) cease and desist letters between October 2020 and January 2023, each letter advising of Hochberg's infringement on The Surf Lodge's intellectual property in all aspects, including her flagrant actions on Instagram that was causing damage to Plaintiffs. (*See* Exs. F and I to SAC, attached to Zidziunas Declaration as Exhibit 2; SAC at ¶ 66, 68-69, 84; Declaration of Cardoso). The first cease and desist letter was sent on October 28, 2020, by our office on behalf of Plaintiffs Cardoso and JC Hospitality. In the October 28, 2020 cease and desist letter, Hochberg was put on notice to "immediately cease, desist and remove from her LinkedIn profile and social media profiles any reference, job title or affiliation that

implies you are currently employed by the Surf Lodge." (*See id.*). Hochberg was further noticed to immediately cease use of the Surf Lodge email address. (*See id.*). Hochberg did not respond to the letter and continued holding herself out as affiliated with The Surf Lodge and Cardoso.

A second cease and desist letter was sent on behalf of Cardoso and JC Hospitality on December 20, 2021, by Daryl B. Cramer, Esq., whose office is located in Aspen, CO, demanding that Hochberg refrain from making and publishing false, defamatory statements against Cardoso, The Surf Lodge, The Snow Lodge, and affiliated entities. (*See id.*). The cease-and-desist letter warned Hochberg that litigation would be imminent if she continued defaming Plaintiff Cardoso and her business to third parties, and reserved all rights to take legal action as necessary. (*See id.)*.

However, just days after she received the letter, Defendant Hochberg appeared at The Snow Lodge's property inside the St. Regis in Aspen, CO.  Fearing for her safety and that Hochberg would persist with further malicious actions, Plaintiff Cardoso filed a police report with the Aspen Police Department in order to document the incident and seek restraints against Hochberg. (*See* SAC at ¶¶ 70-71; Declaration of Cardoso).

Despite these legal notices which were received by Hochberg and her then-counsel, Hochberg continues to this date to knowingly, deceitfully, and willfully use the intellectual property belonging to The Surf Lodge without issuing any disclaimer disassociating her personal business ventures with The Surf Lodge or Cardoso. (*See* SAC at ¶¶ 72-73; Declaration of Cardoso). Cardoso has had numerous communications with patrons, business associates, personal friends, and vendors of The Surf Lodge who were and continue to be under the impression that The Surf Lodge and Hochberg's

business ventures were and are associated with one another and, further, that Hochberg's business originates with Cardoso and The Surf Lodge. (*See id.*).

Most significantly, in the months leading up to the filing of the present lawsuit, and while The Surf Lodge was communicating through its attorneys to cease and desist wrongful and illegal use of The Surf Lodge's intellectual property, Hochberg willfully/deceptively/deliberately changed the username of The Sanctuary from @thesanctuarywellness to @thesurflodgesanctuary on the social media platform Instagram, in order to create a clear false association and likelihood of confusion that The Sanctuary is affiliated with Cardoso and The Surf Lodge. (*See* Exhibit B attached to the Declaration of Cardoso; *see* SAC at ¶¶ 75). The "@thesurflodgesanctuary" handle presently has approximately 1,161 active followers on Instagram.[6] Additionally, the "@thesurflodgesanctuary" Instagram page also lists "716 Montauk Highway, Suite #3, Montauk, New York" as its business address – which is further evidence that Hochberg is still actively falsely portraying that The Sanctuary is open and conducting business. (*See* SAC at ¶ 78; Declaration of Cardoso).

Notably, there is no language on the "@thesurflodgesanctuary" Instagram account page reflecting that the business is clearly closed, and/or that it is not affiliated with The Surf Lodge, located roughly one (1) mile from the actual Surf Lodge. (*See id.*). When searching for The Surf Lodge on Instagram using the search bar, the "@thesurflodgesanctuary" account comes up as the first search option ahead of the official The Surf Lodge Instagram account, "@thesurflodge". (*See* Exhibit C attached to

---

[6] @thesurflodgesanctuary, INSTAGRAM,
https://www.instagram.com/thesurflodgesanctuary/?igsh=eGQzdXVzc25hc3F3# (last visited Aug. 5, 2025)

Declaration of Cardoso). Defendant Hochberg clearly made the account this way in order to actively deceive the public and falsely associate itself with The Surf Lodge in order to gain business attention and opportunities with brands for partnership. (*See* SAC at ¶ 75; Declaration of Cardoso). The ongoing use of the "@thesurflodgesanctuary" Instagram account is creating confusion among consumers that "The Sanctuary" is falsely affiliated with The Surf Lodge.

When Cardoso discovered that Hochberg's latest violation of her intellectual property rights involved Hochberg's defiant use of "@thesurflodgesanctuary" on Instagram, it became clear Hochberg has no intention of ceasing her violations, and further that the damage Hochberg was causing to Cardoso and The Surf Lodge would only continue and increase. Again, Plaintiff Cardoso has written to Hochberg numerous times through her attorneys demanding that Hochberg cease and desist. (*See* Exs. F and I to SAC, attached to Zidziunas Declaration as Exhibit 2; *see* SAC at ¶ 80-81; Declaration of Cardoso).

In fact, on December 05, 2022, Hochberg's then-attorneys sent a letter to the Plaintiffs indicating their client's intentions to not comply with the cease and desist and instead, would stall the process. (*See* Ex. H to SAC, attached to Zidziunas Declaration as Exhibit 2; *see* SAC at ¶ 83; Declaration of Cardoso). In response, our office sent a third and final cease and desist letter to Hochberg through her then-attorneys and demanded that Hochberg cease and desist, threatening legal action against her. (*See* Ex. I to SAC, attached to Zidziunas Declaration as Exhibit 2; *see* SAC at ¶ 84; Declaration of Cardoso). Plaintiffs made it clear that if Hochberg did not immediately change the "@thesurflodgesanctuary" Instagram name and cease and desist from further infringement of The Surf Lodge's name/brand/likeness, as well as desist from further

actions relating to falsely generating business via The Sanctuary, then Cardoso and The Surf Lodge would be left with no choice but to file suit and/or injunctive relief against Hochberg to stop further harm. (*See id.*). Even after a third letter advising her of her illegal actions and the pendency of a lawsuit, Hochberg took no corrective actions to change the Instagram handle from "@thesurflodgesanctuary". (*See id.*). Defendant Hochberg performed these illegal acts, and continues to perform these acts, with full knowledge and awareness that she does not possess a license, legal right, contract, or agreement, to use The Surf Lodge's trademarks/intellectual property.

Defendant Hochberg's use of Plaintiffs' intellectual property to falsely associate herself with Plaintiff Cardoso and The Surf Lodge and deceive consumers was willful, intentional, and conducted with full knowledge of wrongdoing, and continues today. As a proximate cause of Defendant Hochberg's actions, Plaintiffs Cardoso and JC Hospitality have suffered economic damages and losses by way of multiple brands and partnerships declining to do business with Plaintiffs because of Hochberg's conduct and false ongoing association with Plaintiffs. Furthermore, Plaintiff Cardoso has experienced substantial reputational damage and losses due to Defendant Hochberg's defamatory, misleading statements and fraudulent misrepresentation of her relationship with Plaintiff Cardoso and The Surf Lodge.

## LEGAL ARGUMENT

## POINT I:

## LEGAL STANDARD FOR ENTRY OF DEFAULT JUDGMENT

Under Fed. R. Civ. P. 55(a), a party may seek an entry of default against the opposing party if he/she has "failed to plead or otherwise defend" the lawsuit. Following

an entry of default by the clerk of the court, the district court has the discretion to grant an entry of default judgment based on the non-defaulting party's motion. *See Bricklayers & Allied Craftworkers Local 2 v. Moulton Masonry & Constr., LLC*, 779 F.3d 182, 186 (2d Cir. 2015). The Second Circuit has established that default judgment is appropriate where: (1) the defendant's default has been willful; (2) the plaintiff has adequately pleaded facts that establish liability as a matter of law when the factual allegations in the complaint are taken as true; and (3) the relief sought is supported by evidence. *Ibid.* Once default is entered, the well-pleaded allegations of the Complaint, except those relating to damages, are deemed admitted. *See Greyhound Exhibit Group, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992).

<u>**POINT II:**</u>

**<u>DEFENDANT HOCHBERG'S CONDUCT DEMONSTRATES A CLEAR AND ONGOING PATTERN OF WILLFUL DEFAULT THAT WARRANTS AN ENTRY OF DEFAULT JUDGMENT TO AVOID FURTHER PREJUDICE TO PLANTIFFS</u>**

In determining whether to grant a motion for default judgment, district courts look to the following factors: (1) the willfulness of default, (2) the existence of any meritorious defenses, and (3) prejudice to the non-defaulting party." *Grp. One Ltd. v. GTE GmbH*, 625 F. Supp. 3d 28, 54 (E.D.N.Y. 2022) (citing *Bricklayers*, 779 F.3d at 186). "Other relevant equitable factors may also be considered, for instance, whether the failure to follow a rule of procedure was a mistake made in good faith and whether the entry of default would bring about a harsh or unfair result." *Id.* (quoting *Keebler v. Rath*, 405 F. App'x 517, 519 (2d Cir. 2010)).

"A default is willful if it is '"more than merely negligent or careless," but is instead "egregious and ... not satisfactorily explained."'" *Grp. One Ltd*, 625 F. Supp. at 55 (quoting

*Bricklayers*, 779 F.3d at 186). "Where a defendant provides no justification for the failure to respond or 'deliberately fail[s]' to respond to the complaint, the defendant's default may be considered egregious and not satisfactorily explained." *Id.* Defendant Hochberg's conduct demonstrates a clear pattern of willful default, as evidenced by her repeated failures to participate in litigation despite proper service, as well as a deliberate refusal to comply with explicit Court orders on multiple occasions. Over the course of two years of litigation, Defendant Hochberg has not provided any discovery responses to Plaintiffs or served discovery propounds upon Plaintiffs, failed to respond to correspondence from Plaintiffs' counsel and the Court, and deliberately failed to appear for five hearings and a mandatory Settlement Conference in which her appearance was directly ordered by Judge Liman and Judge Parker.

Notably, the Court has already acknowledged that Defendant Hochberg's conduct is not merely negligent or careless, but intentional. Specifically, Judge Liman addressed "Defendant's dilatory conduct" and stated that "***the progress of this case has been frustrated by what the Court can only interpret as Hochberg's repeated efforts to avoid answering the claims against her.***" (*See* copy of Judge Liman's Order dated February 29, 2024, attached to Zidziunas Declaration as "Exhibit 5") (emphasis added). Judge Liman further stated that the "election of counsel to represent Defendant is not something that Hochberg can turn on and turn off, whenever she chooses not to meet a Court deadline." (*Id.*) (emphasis added). Defendant's egregious conduct is further evidenced by the fact that two separate defense attorneys filed a total of four motions to withdraw as counsel citing Defendant's non-cooperative and problematic behavior, which ultimately led to the withdrawal of not one, but two attorneys for Defendant Hochberg.

Defendant Hochberg's defiance has been on display for over two years prior to the initiation of this litigation. As previously mentioned, Cardoso's lawyers sent Hochberg three cease and desist letters, dated October 28, 2020, December 20, 2021, and January 9, 2023, each letter advising of Hochberg's infringement on The Surf Lodge's intellectual property in all aspects, including her flagrant actions on Instagram that was causing damage to Plaintiffs, and noticing her of imminent litigation if she continued to perform these acts, with full knowledge and awareness that she does not possess a license, legal right, contract, or agreement, to use The Surf Lodge's trademarks/intellectual property. (*See* Exs. F and I to SAC, attached to Zidziunas Declaration as Exhibit 2). Despite the three legal notices received by Hochberg and her then-counsel, Hochberg continued to knowingly, deceitfully, and willfully use the intellectual property belonging to The Surf Lodge without issuing any disclaimer disassociating her personal business ventures with The Surf Lodge or Cardoso.

"In determining whether to enter or vacate an entry of default, a court must consider 'whether and to what extent, [entering or] vacating the default judgment will prejudice the non-defaulting party.'" *Grp. One Ltd,* 625 F. Supp. at 59 (quoting *New York v. Green*, 420 F.3d 99, 110 (2d Cir. 2005)). To determine if a "plaintiff has suffered prejudice, courts consider 'the effect of the delay caused by the defendant's default, such as thwarting plaintiff's recovery or remedy resulting in the loss of evidence, creating increased difficulties of discovery, or providing greater opportunity for fraud and collusion.'" *Ibid*. (quoting *Swarna v. Al-Awadi*, 622 F.3d 123, 142 (2d Cir. 2010)). A plaintiff must show "that any prejudice resulting from the defendant's default cannot be rectified in the [c]ourt in another manner were the default to be [not entered or] vacated." *Id*. at 59-60.

Defendant Hochberg has undoubtedly exhibited a pattern of clear and ongoing willful default which has greatly prejudiced and delayed the Plaintiffs in engaging in any discovery or make any meaningful headway in this case. Plaintiffs have been forced to expend significant time and resources in opposing the four motions to withdraw as counsel, attending numerous Court hearings and telephone conferences related to same, and filing motions and letters to the Court to address Hochberg's problematic behavior. Default judgment should be entered against Defendant Hochberg to prevent her from further intentionally delaying this case, continuing to act in bad faith, prolonging her illegal use of the "@thesurflodgesanctuary" Instagram handle and The Surf Lodge intellectual property, and intentionally misusing the Court's time and resources, as well as Plaintiffs' time and resources. Plaintiffs will have no other recourse to prevent continued delay and harm without the entry of default judgment.

Lastly, Defendant Hochberg has already been presented with the opportunity to put forth a meritorious defense against the entry of default judgment when Plaintiffs filed their initial Motion for Default Judgment in May 2024. Defendant failed to file any opposition to Plaintiffs' Motion for Default by the September 11, 2024, deadline. "'The existence of a meritorious defense is a key factor' in the default judgment analysis." *Id.* at 56 (quoting *Green*, 420 F.3d at 109). "A defaulting defendant bears the 'burden of offering evidence sufficient to establish a complete defense.'" *Id.* at 56 (quoting *Bricklayers*, 779 F.3d at 187). Defendant Hochberg's refusal to engage in the exchange of written discovery, conduct any depositions, or respond to motions has prevented any sort of meritorious defense from being part of the record and therefore, leads to the conclusion that no such meritorious defense exists. As such, Defendant Hochberg cannot establish

the existence of a meritorious defense that would serve as a complete defense against the entry of default judgment.

## POINT III:

**PLAINTIFFS HAVE ADEQUATELY PLED A VIOLATION OF 15 U.S.C. § 1125(A) UNDER THE LANHAM ACT AND ESTABLISHED LIABILITY AGAINST DEFENDANT HOCHBERG, WHO HAS WILLFULLY FAILED TO DEFEND SUCH CLAIMS, AND THUS DEFAULT JUDGMENT IS WARRANTED AS TO COUNT TWO UNDER FED. R. CIV. P. 55.**

To state a claim under 15 U.S.C. § 1125(a) of the Lanham Act, the plaintiff must allege that (1) goods or services are involved, (2) interstate commerce is affected, and (3) there is a false designation of origin or a false description or representation with respect to those goods or services in commerce. *CBS Inc. v. Springboard Int'l Records*, 429 F. Supp. 563, 566 (S.D.N.Y. 1976). Count II of the Complaint adequately pleads a violation of Section 43(a) of the Lanham Act, for false designation of origin and misrepresentation pursuant to 15 U.S.C. § 1125(a). Section 1125(a) of the Lanham Act authorizes a civil action against:

> (1) Any person who, on or in connection with any goods or services, or any container for goods, use[] in commerce of any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which –
>
> (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or
>
> (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,
>
> shall be liable in a civil action by any person who believes that he

or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a).

Section 1125(a) of the Lanham Act provides for two avenues of recovery for a plaintiff: false association under § 1125(a)(1)(A) and false advertising/misrepresentation under § 1125(a)(1)(B). *Lexmark Int'l., Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 122 (2014). Under 15 U.S.C. § 1125(a)(1)(A), "the plaintiff must demonstrate that the challenged advertisement is literally false, i.e., false on its face." *Time Warner Cable, Inc. v. DIRECTV, Inc.*, 497 F.3d 144, 153 (2d Cir. 2007) (citing *Johnson & Johnson v. GAC Int'l, Inc.*, 862 F.2d 975, 977 (2d Cir. 1988)). "When an advertisement is shown to be literally or facially false, consumer deception is presumed, and "the court may grant relief without reference to the advertisement's [actual] impact on the buying public." *Id.* (quoting *Coca–Cola Co. v. Tropicana Products, Inc.*, 690 F.2d 312, 317 (2d Cir. 1982)). The second avenue under 15 U.S.C. § 1125(a)(1)(B), is where the plaintiff "show[s] that the advertisement, while not literally false, is nevertheless likely to mislead or confuse consumers." *Time Warner*, 497 F.3d at 153 (citing to *Coca–Cola Co.*, 690 F.2d at 317). "'[P]laintiffs alleging an implied falsehood are claiming that a statement, whatever its literal truth, has left an impression on the listener [or viewer] that conflicts with reality'—a claim that 'invites a comparison of the impression, rather than the statement, with the truth.'" *Id.* (quoting *Schering Corp. v. Pfizer Inc.*, 189 F.3d 218, 229 (2d Cir. 1999)). Either avenue "requires that the plaintiff show 'that the false or misleading representation involved an inherent or material quality of the product.'" *CJ Prods. LLC v. Snuggly Plushez LLC*, 809 F. Supp. 2d 127, 146 (E.D.N.Y. 2011) (quoting *Time Warner Cable, Inc.*, 497 F.3d at 153 n. 3).

Whether the statements are literally false or impliedly false, the plaintiff must show that the false statements appear in commercial advertising or promotion. The Second Circuit determined that "[a]lthough advertising is generally understood to consist of widespread communication through print or broadcast media, "promotion" may take other forms of publicity used in the relevant industry, such as displays at trade shows and sales presentations to buyers." *Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc.*, 314 F.3d 48, 57 (2d Cir. 2002).

### A. Defendant Hochberg Intentionally Misrepresented Her Services and Disseminated False Statements Regarding Her Affiliation with Plaintiffs in Order to Create Consumer Confusion in the Marketplace for Defendant's Benefit and to Harm the Business and Professional Reputation of Plaintiffs.

Count II of the Complaint adequately pleads a violation of 15 U.S.C. § 1125(a) of the Lanham Act for both false designation of origin and misrepresentation. In or around January 2021, after the severance of Plaintiff Cardoso's and Defendant Hochberg's business relationship and the dissolution of JM Sanctuary, LLC and The Sanctuary—a business in which Defendant Hochberg had no legal ownership to— Defendant Hochberg began falsely advertising The Sanctuary as an open and active business wherein she falsely held herself out to have legal and/or financial authorization to act on behalf of The Sanctuary and Plaintiff Cardoso in business dealings to some of Plaintiff Cardoso's and The Surf Lodge's biggest clients. (*See* SAC at ¶ 56; Declaration of Cardoso). Defendant Hochberg initiated these unauthorized business dealings through the deliberate use of Plaintiff Cardoso's name and The Surf Lodge name, as a means of soliciting The Surf Lodge's major clients, including American Express ("AMEX") and Saks Fifth Avenue to do business with Defendant Hochberg in Bridgehampton, New York. (*See id.*). Without Plaintiff Cardoso's knowledge or approval, Defendant Hochberg had been in engaging in

unauthorized discussions with AMEX for more than three (3) months—from January 2021 to April 2021—pitching AMEX a partnership activation deal between The Sanctuary and Saks Fifth Avenue to create the "American Express x Saks Sanctuary Hamptons House" in Bridgehampton. (*See* SAC at ¶ 57; Declaration of Cardoso).

Defendant Hochberg attempted to legitimize her unauthorized business dealings by sending Saks Fifth Avenue and AMEX brand decks and detailed financial proposals that included Plaintiff Cardoso and The Surf Lodge—none of which had been authorized by Plaintiff Cardoso—and extensively communicating with both companies under the material misrepresentation that Plaintiff Cardoso was not only involved, but a key partner in Defendant Hochberg's projects . (*See* SAC at ¶ 58, Ex. E to SAC, attached to Zidziunas Declaration as Exhibit 2; *see also* Declaration of Cardoso). By way of example, Defendant Hochberg misrepresented in the brand decks that "The Sanctuary" was "[b]orn out of the wellness programming at The Surf Lodge, Founder Jayma Cardoso and Marisa Hochberg". (*See* Ex. E to SAC, attached to Zidziunas Declaration as Exhibit 2). Defendant Hochberg also included the names of numerous brands and celebrities who were clients or business associates of Cardoso and The Surf Lodge and identified them as "potential partners" for the American Express x Saks Sanctuary Hamptons House. (*See id.)*. At no point was Plaintiff Cardoso aware of this business proposal or authorized Defendant Hochberg to include any of the information set forth on the brand decks, specifically the names of Cardoso's clients and business associates.

Plaintiff Cardoso discovered Hochberg's secretive and unauthorized business dealings from a representative of the production company Black Flower Agency, which was involved in production of the AMEX/Saks Fifth Avenue project with Defendant

Hochberg. The Black Flower Agency informed Plaintiff Cardoso via email that they were surprised that Cardoso had missed numerous phone calls, Zoom meetings, and other communications related to the project, and how Cardoso appeared to be irresponsible due to her lack of participation in the project. (*See* SAC at ¶¶ 59-60; Declaration of Cardoso).

Plaintiff Cardoso was shocked when she learned of Defendant Hochberg's unauthorized actions as she had already informed Defendant Hochberg of the severance of their business relationship and the dissolution of The Sanctuary. Plaintiff Cardoso reassured the Black Flower Agency that she had cut ties with Hochberg, and that Hochberg had no authority or permission to do business under the name The Sanctuary and was inappropriately using Cardoso's name and The Surf Lodge's name and affiliation for unauthorized purposes to benefit Hochberg. (*See* SAC at ¶¶ 61-62; Declaration of Cardoso). Despite Plaintiff Cardoso's efforts to rectify the situation, the damage to her business reputation had already been done and she lost on out business opportunities with the Black Flower Agency, AMEX, and Saks Fifth Avenue as a result of Defendant Hochberg's conduct. (*See id.*).

At this time, Plaintiff Cardoso communicated with Defendant Hochberg that she was committing fraud by illegally trying to operate and conduct business as The Sanctuary without Cardoso's permission or consent, and that Defendant Hochberg's deceptive misuse of Cardoso's name and The Surf Lodge name as a vehicle to gain business for herself was illegally creating a false association with Plaintiff Cardoso and The Surf Lodge. (*See* SAC at ¶ 63; Declaration of Cardoso).

In a further act of false association and misrepresentation in violation of 15 U.S.C.

§ 1125(a), Defendant Hochberg willfully and deceptively changed the username of The Sanctuary from "@thesanctuarywellness" to "@thesurflodgesanctuary" on Instagram, in order to create a clear false association and likelihood of confusion that The Sanctuary is affiliated with Plaintiff Cardoso and The Surf Lodge. (*See* SAC at ¶ 75; Exhibit B attached to the Declaration of Cardoso). The "@thesurflodgesanctuary" handle presently has approximately 1,161 active followers on Instagram.[7]  (*See* Exhibit B attached to the Declaration of Cardoso). The "@thesurflodgesanctuary" Instagram page also lists "716 Montauk Highway, Suite #3, Montauk, New York" as its business address – which is further evidence that Hochberg is still actively falsely portraying that The Sanctuary is open and conducting business. (See *id.*)

Notably, there is no language on the "@thesurflodgesanctuary" Instagram account page reflecting that the business is clearly closed, and/or that it is not affiliated with The Surf Lodge, located roughly one (1) mile from the actual Surf Lodge. (*See id.*).  When searching for The Surf Lodge on Instagram using the search bar, the "@thesurflodgesanctuary" account comes up as the first search option ahead of the official The Surf Lodge Instagram account, "@thesurflodge". (*See* Exhibit C attached to Declaration of Cardoso). Defendant Hochberg clearly made the account this way in order to actively deceive the public and falsely associate itself with The Surf Lodge in order to gain business attention and opportunities with brands for partnership. The ongoing use of the "@thesurflodgesanctuary" Instagram account is creating confusion among consumers that "The Sanctuary" is falsely affiliated with The Surf Lodge.

---

[7] @thesurflodgesanctuary, INSTAGRAM,
https://www.instagram.com/thesurflodgesanctuary/?igsh=eGQzdXVzc25hc3F3# (last visited Aug. 5, 2025)

The following facts cannot be disputed. The Sanctuary was a completely separate entity from The Surf Lodge, with no affiliation to the brand and likeness of The Surf Lodge, except for Plaintiff Cardoso's ownership interest in both corporations. (*See* SAC at ¶¶ 37-38; Declaration of Cardoso). Plaintiff Cardoso legally formed the company JM Sanctuary LLC d/b/a The Sanctuary ("JM Sanctuary LLC") and registered the company in New York State. (*See* Ex. B to SAC, attached to Zidziunas Declaration as Exhibit 2; SAC at ¶¶ 39-40; Declaration of Cardoso).  Plaintiff Cardoso was the only listed Member of JM Sanctuary LLC at all times during which "The Sanctuary" was in existence. (*See id.*). Moreover, Defendant Hochberg is neither an owner in TSLM or JC Hospitality, nor has she ever been assigned a license, or granted a sublicense, to use The Surf Lodge's trademarks/intellectual property by JC Hospitality or TSLM in any capacity. (*See id.*).

Plaintiff Cardoso has had numerous communications with patrons, business associates, personal friends, and vendors of The Surf Lodge and The Snow Lodge who were and continue to be under the impression that Defendant Hochberg is professionally involved with Plaintiff and that The Sanctuary is directly associated with The Surf Lodge. (*See id.*). Defendant Hochberg continues to willfully and illegally infringe on The Surf Lodge's protected trademarks in commerce and on social media *via* "@thesurflodgesanctuary" Instagram handle in order to cause a deliberate likelihood of confusion with Hochberg's ongoing use of "The Sanctuary" wellness business.

Plaintiff Cardoso's attorneys put Defendant Hochberg on notice via three separate cease and desist letters between October 2020 and January 2023, each letter advising of Hochberg's infringement on The Surf Lodge's intellectual property in all aspects, including her flagrant actions on Instagram that was causing damage to Plaintiffs. (*See*

Ex. F to SAC, attached to Zidziunas Declaration as Exhibit 2; SAC at ¶ 66, 68-69, 84; Declaration of Cardoso).  Despite these legal notices which were undoubtedly received by Defendant Hochberg and her counsel, Defendant Hochberg was still soliciting business for The Sanctuary and falsely affiliating herself with The Surf Lodge on social media and in business meetings as a means of gaining new business. Defendant Hochberg refused to cease use and take remedial action to protect consumers from further confusion.

**B. Defendant Hochberg's False Statements and Misrepresentation to Brands in the Industry and to the Public at Large via Instagram Constitutes Use in Commerce as Required Under the Lanham Act.**

To state a claim under 15 U.S.C. § 1125(a) of the Lanham Act, the plaintiff must allege that (1) goods or services are involved, (2) interstate commerce is affected, and (3) there is a false designation of origin or a false description or representation with respect to those goods or services in commerce. *CBS Inc.*, 429 F. Supp. at 566. "Use of marks in advertising may constitute 'use in commerce.'" *N. Star IP Holdings, LLC v. Icon Trade Servs., LLC*, 710 F. Supp. 3d 183, 207 (S.D.N.Y. 2024) (citing the following parentheticals: *see C=Holdings B.V. v. Asiarim Corp.*, 992 F. Supp. 2d 223, 240 (S.D.N.Y. 2013) ("use in commerce" requirement met where defendant promoted branded products on its website even though there was no evidence that any sales occurred) . . .; *Trane Int'l Inc. v. Calentadores de Am., S.A. de C.V.*, No. 21-CV-4497 (DLC), 2022 WL 1523527, at *2, 4 (S.D.N.Y. May 13, 2022) (display of mark on defendant's website among a list of brands in defendant's portfolio "constitutes use in commerce, in connection with the advertising of goods")).

In today's digital marketplace, social media platforms are fundamental to brand

identity and consumer engagement in advertising. It cannot be disputed that Plaintiff Cardoso's and The Surf Lodge employ extensive commercial branding *via* its Instagram presence for business development and partnership negotiations. Through social media, The Surf Lodge has established itself as a premier upscale boutique hotel, offering high-end amenities including a restaurant, bar, boutique, and outdoor venue. Plaintiff Cardoso's and The Surf Lodge's commercial success is substantially driven by its social media presence, particularly through its verified Instagram account "@thesurflodge." This platform serves as the primary channel for business development, facilitating partnerships with major brands such as Land Rover Defender, Revolve, Alo, Lincoln, Volvo, Marc Jacobs, Gucci, Bumble, and Google. (*See* Declaration of Cardoso).

In most cases, these brands approach The Surf Lodge through its legitimate and verified Instagram account, "@thesurflodge", and inquire through direct messages on its social media page whether there is an opportunity to conduct business with one another. The "@thesurflodge" Instagram account currently has over 159,000 active followers. (*See* Exhibit A attached to Declaration of Cardoso).[8] Some of the influencers Plaintiff Cardoso and The Surf Lodge work with have over several million followers on their respective social media accounts, thereby putting "@thesurflodge" within visibility of several million people and brands at various times. (*See id.*) Through The Surf Lodge's legitimate social media account, these large-scale brands analyze its social media and determine how many followers The Surf Lodge has, the level of engagement, the influencers The Surf Lodge works with, and whether the style and aesthetic brand values align together. (*See id.*) Plaintiff Cardoso then elevate these discussions to enter into formal contracts together.

---

[8] @thesurflodge, Instagram, https://www.instagram.com/thesurflodge/?igsh=YWowZDJzZ3kzejY2# (last visited Aug. 5, 2025)

(*See id.*) Over the last five (5) years, The Surf Lodge has generated revenue in excess of several millions of dollars through these brand partnerships stemming through our social media engagement. (*See id.*)

The "use in commerce" requirement under the Lanham Act is satisfied through Defendant Hochberg's misrepresentation and false association with The Surf Lodge's brand identity on Instagram *via* the "@thesurflodgesanctuary" Instagram handle because it impacts Plaintiffs' commercial interests by misleading consumers and harming their reputation, regardless of whether Hochberg's infringing account itself conducts transactions. Defendant's unauthorized alteration of the Instagram handle from "@thesanctuarywellness" to "@thesurflodgesanctuary" constitutes a false designation of origin under the Lanham Act. This deliberate act creates a misleading association between The Sanctuary and The Surf Lodge, violating the Act's protections against false affiliations. The Lanham Act's scope encompasses such digital misconduct because it recognizes that harm to goodwill, reputation, and consumer trust extends beyond direct commercial transactions.

It cannot be disputed that Plaintiffs and Defendant Hochberg are operating in the same geographic location in New York and with a similar customer and business associate/collaborator base. As such, Defendant Hochberg's promotion, marketing, offering of, and sale of Defendant's services through the use of Plaintiff Cardoso's name and The Surf Lodge name has created and is creating a likelihood of confusion, mistake, and deception among the general public as to the affiliation, connection, or association with Plaintiffs or the origin, sponsorship, or approval of Defendant's services by Plaintiffs, in violation of 15 U.S.C. § 1125(a). To date, Defendant Hochberg's false association and

intentional use of Plaintiffs' name and brands in order to create commercial success for herself has caused and continues to cause substantial harm to Plaintiffs' business relationships, business opportunities, and professional reputation. Notably, Defendant Hochberg's refusal to engage in discovery has precluded Plaintiffs from conducting discovery to fully quantify the extent of damages resulting from Defendant's violations. These allegations, deemed admitted through Defendant Hochberg's willful default, establish Defendant Hochberg's liability under 15 U.S.C. § 1125(a) of the Lanham Act and thus, default judgment against Defendant Hochberg as to Count II is warranted.

## POINT IV:

**PLAINTIFFS HAVE ADEQUATELY PLED VIOLATIONS OF NEW YORK STATE CONSUMER PROTECTION FROM DECEPTIVE ACTS AND PRACTICES, NY GEN. BUS. L. §§ 349 AND 350, AND ESTABLISHED LIABILITY AGAINST DEFENDANT HOCHBERG, WHO HAS WILLFULLY FAILED TO DEFEND, AND THUS DEFAULT JUDGMENT IS WARRANTED AS TO COUNTS SEVEN AND EIGHT UNDER FED. R. CIV. P. 55.**

Section 349 of the New York State Consumer Protection from Deceptive Acts and Practices prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state." N.Y. Gen. Bus. Law § 349. Section 350 of the New York State Consumer Protection from Deceptive Acts and Practices prohibits "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state." N.Y. Gen. Bus. Law § 350. It is well established that in order to successfully assert a claim under either Section 349 or 350, "a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice." *Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d Cir. 2015) (quoting *Koch v. Acker, Merrall & Condit Co.,* 18 N.Y.3d 940, 944 (2012)).

Plaintiffs have adequately pled violations of both Sections 349 and 350 against Defendant Hochberg. As to the first prong, it is clear that Defendant Hochberg's deceptive conduct was consumer oriented as she is intentionally misleading consumers into believing that The Sanctuary is affiliated with The Surf Lodge in order to gain social media traction and to use The Surf Lodge's well-known branding and reputation to influence consumers. The New York Court of Appeals has stated that the consumer-oriented element "focus[es] on the seller's deception and its subsequent impact on consumer decision-making, not on the consumer's ultimate use of the product." *Himmelstein, McConnell, Gribben, Donoghue & Joseph, LLP v. Matthew Bender & Co., Inc.*, 37 N.Y.3d 169, 177 (2021).

As to the second prong, the New York Court of Appeals and Second Circuit have defined the "materially misleading" element as when the defendant's actions "are 'likely to mislead a reasonable consumer acting reasonably under the circumstances.'" *Himmelston*, 37 N.Y.3d at 178; *see also Orlander*, 802 F.3d at 300. Plaintiffs have pled in great detail Defendant Hochberg's actions in unlawfully promoting The Sanctuary as an open business to deceive consumers via the "@thesurflodgesanctuary" Instagram that The Sanctuary is affiliated with The Surf Lodge. The "@thesurflodgesanctuary" handle presently has approximately 1,161 active followers on Instagram and lists "716 Montauk Highway, Suite #3, Montauk, New York" as its business address, which is further evidence that Hochberg is still actively falsely portraying that The Sanctuary is open and conducting business.[9] (See Exhibit B attached to the Declaration of Cardoso).

---

[9] @thesurflodgesanctuary, INSTAGRAM,
https://www.instagram.com/thesurflodgesanctuary/?igsh=eGQzdXVzc25hc3F3# (last visited Aug. 5, 2025)

The Surf Lodge has established itself as a premier upscale boutique hotel, offering high-end amenities including a restaurant, bar, boutique, and outdoor venue. Plaintiff Cardoso's and The Surf Lodge's commercial success is substantially driven by its social media presence, particularly through its verified Instagram account "@thesurflodge", which currently has over 159,000 active followers. (*See* Exhibit A attached to Declaration of Cardoso).[10] This platform serves as the primary channel for business development, facilitating partnerships with major brands such as Land Rover Defender, Revolve, Alo, Lincoln, Volvo, Marc Jacobs, Gucci, Bumble, and Google. These brand collaborations, typically initiated through Instagram direct messages, have generated several million dollars in revenue.

Despite this awareness and knowing full well Hochberg herself possesses no ownership in The Sanctuary, The Surf Lodge business or its registered trademarks, Defendant Hochberg knowingly and intentionally changed The Sanctuary's social media to "@thesurflodgesanctuary", in order to deceive consumers and falsely advertise to the public that The Sanctuary and The Surf Lodge are affiliated. Because Plaintiffs and Defendant Hochberg are operating in the same geographic location and with a similar customer and business associate/collaborator base, it is reasonable to conclude that the reasonable consumer would be misled by Defendant Hochberg's deceptive conduct.

Furthermore, Defendant Hochberg engaged in deceptive conduct wherein she misrepresented her services and falsely associated herself with Plaintiff Cardoso and The Surf Lodge to take advantage of Plaintiff Cardoso and The Surf Lodge's brand and reputation in the marketplace in order to initiate business deals with The Surf Lodge's

---

[10] @thesurflodge, INSTAGRAM, https://www.instagram.com/thesurflodge/?igsh=YWowZDJzZ3kzejY2# (last visited Aug. 5, 2025)

biggest clients. (*See* SAC at ¶ 56-57; Declaration of Cardoso). Specifically, between January 2021 and April 2021, Defendant Hochberg impermissibly contacted representatives of American Express and Saks Fifth Avenue using Plaintiff Cardoso's name and The Surf Lodge name and provided brand decks and financial proposals containing materially misleading information in order to initiate business dealings on behalf of the "The Sanctuary"—a company no longer in business—without the knowledge or consent of Plaintiff Cardoso. (*See id.*). As a proximate result of Defendant Hochberg's actions, Plaintiff Cardoso has lost on out business opportunities with the Black Flower Agency, AMEX, and Saks Fifth Avenue (*See id.*)

To date, Defendant Hochberg's false association and intentional use of Plaintiffs' name and brands in order to deceive the public and create commercial success for herself has caused and continues to cause substantial harm to Plaintiffs' business relationships, business opportunities, and professional reputation. Defendant Hochberg's refusal to engage in discovery has precluded Plaintiffs from conducting discovery to fully quantify the extent of damages resulting from Defendant's violations. These allegations, deemed admitted through Defendant Hochberg's willful default, establish Defendant Hochberg's liability under N.Y. Gen. Bus. Law §§ 349 and 350 and thus, default judgment against Defendant Hochberg as to Counts VII and VIII is warranted.

## **POINT V:**

**PLAINTIFFS HAVE ADEQUATELY PLED AND ESTABLISHED LIABILITY AGAINST DEFENDANT HOCHBERG FOR TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE, WHICH DEFENDANT HOCHBERG HAS WILLFULLY FAILED TO DEFEND, AND THUS DEFAULT JUDGMENT IS WARRANTED AS TO COUNT TEN UNDER FED. R. CIV. P. 55.**

To prevail on a tortious interference with prospective economic advantage claim, a "plaintiff must prove that '(1) it had a business relationship with a third party; (2) the

defendant knew of that relationship and intentionally interfered with it; (3) the defendant acted solely out of malice, or used dishonest, unfair, or improper means; and (4) the defendant's interference caused injury to the relationship.'" *PKG Grp., LLC v. Gamma Croma, S.p.A.*, 446 F. Supp. 2d 249, 251 (S.D.N.Y. 2006) (quoting *Carvel Corp. v. Noonan*, 350 F.3d 6, 17 (2d Cir.2003)).

Defendant Hochberg intentionally and maliciously interfered with Plaintiff Cardoso's and The Surf Lodge business relationships with third parties when she  initiated unauthorized business dealings through the deliberate use of Plaintiff Cardoso's name and The Surf Lodge name, as a means of soliciting The Surf Lodge's major clients, including American Express ("AMEX") and Saks Fifth Avenue to do business with Defendant Hochberg herself in Bridgehampton, New York. (*See* SAC at ¶ 56-57; Declaration of Cardoso). Without Plaintiff Cardoso's knowledge or approval, Defendant Hochberg had been in engaging in unauthorized discussions with AMEX for more than three (3) months—from January 2021 to April 2021—pitching AMEX a partnership activation deal between The Sanctuary and Saks Fifth Avenue to create the "American Express x Saks Sanctuary Hamptons House" in Bridgehampton. (*See id*).

Defendant Hochberg attempted to legitimize her unauthorized business dealings by sending Saks Fifth Avenue and AMEX brand decks and detailed financial proposals that included Plaintiff Cardoso and The Surf Lodge—none of which had been authorized by Plaintiff Cardoso—and extensively communicating with both companies under the material misrepresentation that Plaintiff Cardoso was not only involved, but a key partner in Defendant Hochberg's projects . (*See* Ex. E to SAC, attached to Zidziunas Declaration as Exhibit 2; *see also* Declaration of Cardoso). In fact, Defendant Hochberg was

intentionally soliciting Plaintiff Cardoso's and The Surf Lodge's biggest clients for her own self-servient business dealings.

When Plaintiff Cardoso discovered Hochberg's secretive and unauthorized business dealings from a representative of the production company Black Flower Agency, which was involved in production of the AMEX/Saks Fifth Avenue project with Defendant Hochberg, she attempted to repair the relationship by informing the brands that she cut ties with Hochberg, and that Hochberg had no authority or permission to do business under the name The Sanctuary and had no affiliation with The Surf Lodge. Despite Plaintiff Cardoso's explanation, the Black Flower Agency, AMEX, and Saks Fifth Avenue were unhappy with Plaintiff Cardoso and did not want to proceed with future partnerships at that time as a result of the deceitful actions of Defendant Hochberg.

To date, Defendant Hochberg continues to intentionally and maliciously cause substantial harm to Plaintiffs' business relationships, business opportunities, and professional reputation. (*See* Declaration of Cardoso at ¶¶ 49-53, 66-70). Defendant Hochberg's refusal to engage in discovery has precluded Plaintiffs from conducting discovery to fully quantify the extent of damages resulting from Defendant Hochberg's conduct. Notwithstanding, these allegations, deemed admitted through Defendant Hochberg's willful default, establish Defendant Hochberg's liability under the common law claim of tortious interference with prospective economic advantage and thus, default judgment against Defendant Hochberg as to Count X is warranted.

<u>**POINT VI:**</u>

**PLAINTIFFS' REQUEST FOR INJUNCTIVE RELIEF AND EQUITABLE RELIEF IS SUPPORTED BY EVIDENCE OF IRREPARABLE HARM TO PLAINTIFFS' BRAND AND BUSINESS REPUTATION**

Plaintiffs' respectfully request that this Court grant injunctive relief against Defendant Hochberg in the form of (a) the immediate removal of the "@thesurflodgesanctuary" Instagram account from Instagram and any other social media platforms or websites, (b) prohibiting and enjoining Defendant Hochberg from future use any name, trademark, or other intellectual property associated with Plaintiffs and The Surf Lodge trademarks, and (c) prior to the removal of "@thesurflodgesanctuary" Instagram account, that Defendant Hochberg be ordered to provide the current password for the account and provide the history all direct messages and correspondence received via the "@thesurflodgesanctuary".

To obtain injunctive relief, a plaintiff must satisfy the following four-pronged test, as established by the Supreme Court, which requires the requires the plaintiff to demonstrate "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006)

The four *eBay* factors strongly favor injunctive relief in this case. Plaintiffs have demonstrated irreparable harm through ongoing damage to their business reputation and business relationships. Irreparable harm refers to harm that cannot be adequately remedied by monetary damages or other legal remedies. Defendant Hochberg's

unauthorized use of The Surf Lodge's brand identity in business dealings and social media continues to create confusion in the marketplace and threatens Plaintiffs' carefully cultivated relationships with luxury brand partners. (*See* Declaration of Cardoso). This confusion has already disrupted business operations and threatens future partnerships for Plaintiff Cardoso and The Surf Lodge. (*See id.*). Injunctive relief is appropriate here to prevent future misuse of Plaintiffs' brand identity and to restore control over their digital presence. Without injunctive relief, Plaintiffs face continued unauthorized use of their brand and ongoing market confusion from the actions of Defendant Hochberg.

The balance of hardships decisively favors Plaintiffs. Granting an injunction would mandate Defendant Hochberg to cease her unauthorized and unlawful conduct, while denying relief would force Plaintiffs to endure continued damage to their brand identity, business relationships, and reputation. Defendant Hochberg has no legitimate interest in maintaining the misappropriated Instagram handle or continuing to create false associations with Plaintiff Cardoso and The Surf Lodge.

Finally, the public interest strongly supports injunctive relief. An injunction would protect consumers from confusion in the digital marketplace and maintain the integrity of brand identities on social media platforms. This protection is particularly crucial given the increasing importance of social media in modern commerce and brand engagement.

Additionally, Plaintiffs respectfully request that this Court grant further equitable relief by ordering that Defendant Hochberg shall refrain from making threats or defamatory statements about Plaintiff Cardoso and The Surf Lodge towards Plaintiff Jayma Cardoso and/or any persons known to be associated with Plaintiff Cardoso and The Surf Lodge, including employees, independent contractors, and clients of same. As

Your Honor may recall, the Court previously prohibited Defendant Hochberg from this conduct in the June 24, 2024 Order, prohibiting Defendant Hochberg from making threats, disparaging remarks, or engaging in disrespectful conduct towards Plaintiff Cardoso, Plaintiffs' counsel, Plaintiffs' attorneys and staff, or any persons known to be associated with Plaintiffs or their counsel. (*See* Exhibit 13, attached to Zidziunas Declaration). Since Plaintiffs' initial Motion for Default Judgment in May 2024, Defendant Hochberg has continued to infringe on Plaintiffs' intellectual property and continued to misrepresent herself to consumers and business associates of Plaintiff Cardoso by falsely associating her business services with The Surf Lodge brand. Furthermore, Defendant Hochberg has continued to engage in ongoing defamatory acts against Plaintiff Cardoso in direct violation of Judge Liman's June 24, 2024 Order, in order to harm Plaintiff Cardoso's personal and professional reputation. (*See* Declaration of Cardoso at ¶¶ 49-53, 66-70).

As to monetary damages, under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and its remedial provision in Section 35(a), 15 U.S.C. § 1117(a), a successful plaintiff may recover: (1) defendant's profits; (2) any damages sustained by the plaintiff; and (3) the costs of the action. 15 U.S.C. § 1117(a); *see also Merck Eprova AG v. Gnosis S.p.A.*, 760 F.3d 247, 261 (2d Cir. 2014). Courts have broad discretion to adjust these awards "according to the circumstances of the case," and may treble actual damages in cases of willful infringement. 15 U.S.C. § 1117(a); *see George Basch Co. v. Blue Coral, Inc.*, 968 F.2d 1532, 1537 (2d Cir. 1992)). In assessing damages, courts have broad discretion to award monetary relief "subject to the principles of equity" to compensate the plaintiff and deter future infringement. (*See ibid*.) As a proximate cause of Defendant Hochberg's actions, Plaintiffs Cardoso and JC Hospitality have suffered economic

damages and losses by way of multiple brands and partnerships declining to do business with Plaintiffs because of Hochberg's conduct and false ongoing association with Plaintiffs. The harm to Plaintiffs is ongoing due to Defendant Hochberg's continued use of and her publicly disgraced reputation, which further exacerbates the damage to Plaintiffs' business interests. Plaintiffs estimate their lost profits to exceed $200,000, a figure that continues to grow as the harm persists, however, Defendant's failure to respond and defend this litigation has precluded Plaintiffs from conducting discovery to fully quantify the extent of damages resulting from Defendant's violations.

## POINT VII:

## DEFENDANT HOCHBERG'S CONDUCT THROUGHOUT THIS LITIGATION WARRANTS AN AWARD OF ATTORNEYS FEES AND COSTS TO PLAINTIFFS PURSUANT TO RULE 54(D) AND THE LANHAM ACT

Federal Rule of Civil Procedure 54(d)(1) provides that "[u]nless a federal statute, these rules, or a court order provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party." Fed. R. Civ. P. 54(d)(1). Additionally, the Lanham Act authorizes an award of attorney's fees to prevailing parties in "exceptional cases." *See* 15 U.S.C. § 1117(a). An "exceptional case" has been defined by the Second Circuit as a case that "stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and facts of the case) or the unreasonable manner in which the case was litigated." *Sleepy's LLC v. Select Comfort Wholesale Corp.*, 909 F.3d 519, 530 (2d Cir. 2018) (quoting *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014)).

"District courts determine whether a case is exceptional in a 'case-by-case exercise of their discretion, considering the totality of the circumstances.'" *Venus By Maria Tash, Inc. v. Prinatriam Ltd.*, 21-CV-2098 (LGS) (RWL), 12 (S.D.N.Y. Aug. 24, 2022)

(quoting *4 Pillar Dynasty LLC v. New York & Co., Inc.*, 933 F.3d 202, 215 (2d Cir. 2019)). The Court may look at factors including "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Id.* (quoting *Octane Fitness, LLC*, 572 U.S. at 554 n.6). This Court has found cases to be exceptional when the defendant has failed to respond to discovery requests, has "'frustrat[ed] the litigation process at every turn' and displayed an 'utter lack of respect for the judicial process.'" *E. Mishan & Sons v. Novel Brands LLC*, 18-CV-02932 (VSB)(SN), 14 (S.D.N.Y. Feb. 13, 2020); *see also Venus By Maria Tash, Inc.*, 21-CV-2098, at *12.

Defendant Hochberg has continuously frustrated the litigation process by failing to appear for at least six court-ordered appearances, including a mandatory settlement conference, failing to respond to Plaintiffs' discovery propounds, failing to serve Plaintiffs with discovery requests, failing to oppose or respond to Plaintiffs' Motion for Default Judgment and Plaintiffs' Request for Order to Show Cause, failing to obey a Court Order directing her to provide the Court and counsel with her updated home address to effect service of process upon her as a pro se defendant, and by sending threatening emails to Plaintiffs' counsel when contacted via email for service of Plaintiffs' motions. To date, the Parties have been unable to engage in discovery or make any meaningful progress in this case due to the Defendant Hochberg's abusive motion practices, deliberate delays, intentional misuse of Plaintiffs' and the Court's time and resources, and overall flagrant disrespect for our judicial system.

This case qualifies as "exceptional" under the Lanham Act due to Defendant's willful infringement and pattern of litigation misconduct. Defendant's willful and egregious conduct, including her failure to appear, respond to discovery, or comply with court orders, renders this case "exceptional" under the Lanham Act. Plaintiffs are seeking attorneys fees and costs associated with the significant time and resources spent in commencing this legal action against Defendant Hochberg after she willfully ignored two Cease and Desist letters, opposing a motion to dismiss, opposing four motions to withdraw as counsel from not one, but two defense attorneys, attending numerous Court hearings and conferences related to these motions, and engaging in additional motion practice and correspondence with the Court related to Defendant Hochberg's dilatory conduct. Defendant's actions have caused significant delays and increased litigation costs, warranting an award of attorney's fees and costs. (*See* Declaration of John J. Zidziunas, Esq. in Support of Application for Attorneys Fees' and Expenses). [11]

## <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs JC Hospitality and Cardoso respectfully requests that the Court grant their Motion for Default Judgment as to Counts II, VII, VIII, and X of the Second Amended Complaint, and award the requested permanent injunctive relief, equitable relief, and attorneys' fees and costs.

---

[11] Pursuant to FRCP 54(d)(2), should the Court grant Plaintiffs' motion for default judgment, Plaintiffs will file a separate motion for attorneys' fees and provide detailed time sheets of all time expended by the Firm from January 9, 2023, through and including August 5, 2025,

Respectfully submitted,

**JOHN J. ZIDZIUNAS & ASSOCIATES, LLC**
By:    _/s/ John J. Zidziunas_
John J. Zidziunas, Esq.

*Attorneys for Plaintiffs,*
*JC Hospitality, LLC and Jayma Cardoso*

**Dated: August 6, 2025**