Docusign Envelope ID: D7E1F5E3-AE29-4280-83FD-89D5G684762D

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

―――――――――――――――――――――――――

JC HOSPITALITY, LLC and
JAYMA CARDOSO,                             Case No:1:23-CV-02051-LJL

        Plaintiffs,

-against-

MARISA HOCHBERG (In Her Individual
and Professional Capacities),

        Defendant.

―――――――――――――――――――――――――

## DECLARATION OF MARISA HOCHBERG IN SUPPORT OF MOTION FOR EXTENSION OF TIME TO RESPOND TO PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT

I, Marisa Hochberg, declare under penalty of perjury pursuant to 28 U.S.C. § 1746 as follows:

1. I am the Defendant in this case and make this Declaration in support of my Motion for Extension of Time to respond to Plaintiffs' August 6, 2025, Motion for Default Judgment.

2. I have been unrepresented in this litigation since February 2024 when my prior attorney withdrew from the litigation.

3. When this initial frivolous litigation against me was started, my elderly father (93 years old) at the time was alive and was so upset about Ms. Cardoso's pure evil ways to try and destroy my life, that he thought he was retaining me the best counsel after consulting with another attorney at the prominent Park East Synagogue at which Rabbi Arthur Schneier is the senior Rabbi who was one of your father's best friends and was one of my father's best friends. In fact, my father was the President of this prominent congregation and truly embarrassed by what Ms. Cardoso did to me by filing this frivolous suit and trying to dirty my name and his in the press.

4. My father, who was a very smart, successful, and honest man, would never have retained a top attorney for me had he not felt this case was frivolous. He told me numerous times how upset he was over this and that he knew if I stuck it out, I would win, come out on top, and have my reputation restored, career back, and be able to move on with my life.

5. I was skeptical about my prior counsel, Steven Storch, from the start. As my father's health declined, I saw Mr. Storch continue to take advantage of my father, running up over $175,000 in legal fees for things Mr. Storch did not even do.

6. My father was the guarantor for the case and received the bills, but they seemed exorbitant to me when I asked to see them. I asked to review them multiple times and told my father that Steven was not being ethical in his billing and was taking advantage of him.

7. Furthermore, what I did not know until after my father passed away and I got possession of his cell phone, was that Steven Storch was involved in communications with people tied to my father's estate whom he also previously had represented.

8. My elderly father, just five months before he passed away and was dying, was forced to support me entirely because of what Ms. Cardoso decided to do as a "fun joke" just to scare me and as she told someone "would continue until Marisa ends her life."

9. At age 93, my father was forced to go into his hard-earned money and pay hundreds of thousands of dollars to an attorney to defend me against this lawsuit as well as fully support me because contrary to the side you have seen, Ms. Cardoso destroyed my ability to make a penny and has continued to.

10. When Ms. Cardoso and her "attorney" saw that my father was irate and had hired me a top attorney, Ms. Cardoso herself, via text message, reached out directly to my father on his last Father's Day weekend alive in June of 2023 and begged him to get me to settle — while both myself and Ms. Cardoso were represented by counsel. Clearly, she was scared of the discovery my attorney was seeking (which was asked to be for the attorney's eyes only and redacted).

11. Since before I was born, and long before The Surf Lodge was established, my parents owned a place in Montauk, New York. I spent every summer weekend there growing up, and my father still went out as best he could at his age.

12. In summer 2023, my father was barely able to make it out to Montauk except for once in August. He planned to come for Labor Day weekend, knowing how upset and isolated I was all summer from the lawsuit and defamation. He never arrived. When I called him, he was crying and told me he had totaled his car driving into Montauk because he was so upset over the lawsuit and what it was doing to me. That was his last attempted trip to Montauk. He died one month later. The Surf Lodge was packed and made a million dollars or more that weekend.

13. When I found out my father went into sudden cardiac arrest and was revived, Steven Storch rushed with me to Mount Sinai Hospital. My father pulled Mr. Storch over in the ICU and begged him: "Get that witch [meaning Ms. Cardoso] and get Marisa her life and career back." My father died seeing me unhappy, forced to support me fully as an adult, tied up in obscene legal fees after once even helping Ms. Cardoso with her own attorney when her business was on the line, only to have her repay him and me with this cruelty.

14. Tragically, I had already lost my brilliant mother, a famous cancer research scientist, to cancer eight years ago. I am an only child. My father's death left me completely alone.

15. After his death, I realized two lawyers from the Synagogue had gotten ahold of him just months before he passed away and altered his will, inserting themselves as both the executors and trustees and one of their sons as successor executor and trustee. The only person who knew of this was Steven Storch.

16. After obtaining my father's phone, I heard voicemails from one executor discussing The Surf Lodge case and coercing my father to retain Mr. Storch. This manipulation mirrored their undue influence over his estate planning.

17. I never knew that one of these lawyers was the very same person who gave my father Mr. Storch's name at the Synagogue the day after this lawsuit was filed.

18. Worse, I did not know Mr. Storch had previously represented one of these executors in another elder exploitation case. My father never knew this either. This strongly suggests fraud and undue influence in my father's new will, signed months before his death.

19. My father was my sole source of support because of what Ms. Cardoso had done and continues to do to me. Upon his death, I was left battling both this lawsuit and my inheritance with no funds for either and no funds to survive on.

20. From the moment my father passed, the executors began blackmailing me into signing waivers and consents to probate so they could collect commissions.

21. Mr. Storch told them I would need funds, housing, and essentials since I could not work due to the lawsuit and continued defamation by Cardoso.

22. The executors told Storch to "scramble," knowing that if they supported me I would not sign the waivers. They acted unethically and exploited me.

23. Mr. Storch, who once called me daily and even invited me to Thanksgiving, went silent. When the motion to dismiss came down largely in my favor, the plan had been to assert my counterclaims and expose the numerous lies told to this Court. Storch told me to hold everything until after the motion.

24. Knowing heated estate litigation was imminent — and his own ties to the executors — Storch withdrew. His motion to withdraw was false. Billing records show he even consulted with an executor about the ethics of representing me.

25. In January 2024, after Storch withdrew, I was left with no attorney to represent me in this case, no guarantor, no estate counsel, no money, and no housing. The executors refused to support me, hoping to coerce me into signing the waiver and consent to probate so that they would be able to get their hefty commissions.

26. A Synagogue member arranged to pay attorney Alexander Dudelson to represent me in both this case and the estate case. When I questioned Mr. Dudelson's estate work, which is my entire future, I ended the arrangement, he grew angry and withdrew too.

27. Since then, I have lived in over 25 Airbnbs, homeless, without a guarantor, and with no family left to help me. This is why I have no stable address to provide the Court — not out of disrespect, but because I truly do not have one. Ms. Cardoso lives in a multimillion dollar Tribeca townhouse provided to her by her sister and brother-in-law.

30. I am currently without financial resources. While I had income and good economic prospects while I was The VP of Brand Partnerships and Marketing at The Surf Lodge, that work evaporated after the Plaintiff chose not to pay me and then filed suit against me while also

defaming me in the press and to my contacts, friends and anyone I try and do any business with. Due to this, my elderly father at the time, became my sole source of income. But following his death, shortly after this lawsuit was filed. trustees have refused to provide financial support of any kind for me, including support for housing, healthcare, or legal fees due to the coercion described above.

31. Without financial support from my father's estate, and because I do not currently have means to be self-supporting, I lack stable housing and many other essential needs. Since my father's death I have lived in over 25 Air BNB's and other temporary housing. I have sold my possessions to generate cash for groceries. **(This is why I have no stable address to provide the Court — not out of disrespect, but because I truly do not have one.)** This litigation and the continued behavior by The Plaintiff and her attorney have left me in this terrible position.

32. In addition, not long after this lawsuit began, I felt a lump in my breast. These lumps have multiplied and spread to my neck. I have a biopsy scheduled. I have also been struggling with deep depression and anxiety as a result of my parents' deaths, this litigation and isolation it has caused me, and my lack of income. Because I have no financial resources, I lack access to healthcare because I do not have health insurance or the means with which to pay for healthcare treatment.

33. I have recently obtained a loan with which I will be able to employ counsel in the matter of my father's estate, which will in turn release adequate funds for me to employ a top attorney to represent me in this case as it was my father who was the guarantor for this case and his continued wishes once he died for the case to continue to be funded so that I could have my career back, my life taken off hold and a happy future.

34. I believe that an attorney will be able to respond adequately to the Plaintiff's motion for default judgment not only because it contains all false statements but also because it consists almost entirely of unsupported allegations. Other than the Plaintiff's unsupported statements, there is no proof of the allegations she makes. Therefore, this motion should be rejected for failure to prove their right to judgment, just as this court did previously. I believe that an attorney can further make that point.

35. I am grieving, isolated, and ill. One more abusive email from Plaintiffs' counsel could push me to a breaking point.

36. I raise this not for sympathy, but to show urgency: I am alone, traumatized, and at risk. I need this extension to secure counsel and defend myself and my right to due process.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on August 8/24/2025, 2025, New York, New York.

*Marisa Hochberg*

Marisa Hochberg
Defendant, Pro Se