UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JC HOSPITALITY d/b/a THE SURF          Case No. 1:23-cv-02051- (LJL)
LODGE and JAYMA CARDOSO

Plaintiffs,

v.

MARISA HOCHBERG (IN HER INDIVIDUAL
AND PROFESSIONAL CAPACITIES)

Defendants.

**DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION
TO PLAINTIFF'S MOTION FOR ATTORNEY'S FEES.**

RECEIVED
SDNY PRO SE OFFICE
2026 APR 24   PM 12: 23

Marisa Hochberg
Marisjh@gmail.com
(917)-858-5063
Pro Se

i

# TABLE OF CONTENTS

Preliminary Statement…………………………………………….1

Relevant Factual and Procedural Background…………………1

Argument………………………………………………………..2

I.    THE COURT SHOULD DENY THE FEE MOTION, OR, AT MINIMUM, DEFER DECISION UNTIL AFTER DEFENDANT'S FORTHCOMING MOTION TO VACATE UNDER FEDERAL RULES OF CIVIL PROCEDURE, RULES 55(c) AND 60(b)..........................................................................2

II.   PLAINTIFFS' FEE NARRATIVE IS MATERIALLY UNRELIABLE FROM THE OUTSET BECAUSE THE JANUARY 9, 2023 INVOICE #14 ENTRY REVERSES THE TRUE PRE-SUIT CHRONOLOGY………………4

III.  PLAINTIFFS' BILLING SUBMISSION REMAINS OVERINCLUSIVE, NON-SEGREGATED, FACIALLY INCLUDES FEE-ON-FEE WORK, AND LACKS CORE ENGAGEMENT/RETAINER PROOF………………5

IV.   DEFENDANT'S PRIOR FAILURES WERE NOT WILLFUL, AND THE FULLER RECORD SHOULD BE PRESENTED IN DEFENDANT'S FORTHCOMING MOTION UNDER FEDERAL RULES OF CIVIL PROCEDURE 55(c) AND 60(b), WHICH WILL PRESENT SIGNIFICANT MERITORIOUS DEFENSES THAT UNDERMINE PLAINTIFFS' CASE AND SHOW THAT PLAINTIFFS' FACTUAL NARRATIVE WAS FALSE OR MATERIALLY MISLEADING…………7

Conclusion……………………………………………………..8

# TABLE OF AUTHORITIES

## Cases

1. *JC Hospitality, et al. v. Hochberg*, No. 23-cv-02051 (S.D.N.Y. Sept. 22, 2025)
2. *JC Hospitality, et al. v. Hochberg*, No. 23-cv-02051 (S.D.N.Y. Nov. 7, 2025)
3. *JC Hospitality, et al. v. Hochberg*, No. 23-cv-02051 (S.D.N.Y. Nov. 27, 2023)
4. *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545 (2014)
5. *JC Hospitality, et al. v. Hochberg*, No. 23-cv-02051 (S.D.N.Y. July 7, 2023)
6. *Milea v. Metro-North R.R. Co.*, 658 F.3d 154, 166 (2011)
7. *New York State Ass'n for Retarded Child v. Carey*, 711 F.2d 1136, 1147–48 (1983)
8. *Wolinsky v. Scholastic, Inc.*, 900 F. Supp. 2d 332, 335–36 (S.D.N.Y. 2012)
9. *Quaratino v. Tiffany & Co.*, 166 F.3d 422, 425 (1999)
10. *Gary Friedman, P.C. v. O'Neill*, 982 N.Y.S.2d 359, 359–60 (2014)
11. *Sidoti v. Hall*, 998 N.Y.S.2d 662 (2015)
12. *Albunio v. City of N.Y.*, 989 N.Y.S.2d 1, 10–11 (2014)
13. *Lawrence v. Miller (In re Lawrence)*, 23 N.E.3d 965, 976–77 (2014)
14. *Loughlin v. Meghji*, 2025 NY Slip Op 04467 (N.Y. App. Div. July 30, 2025)

## Preliminary Statement

Defendant Marisa Hochberg respectfully submits this memorandum of law in opposition to Plaintiffs' renewed motion for attorneys' fees.

This Court should not award discretionary attorneys' fees on a default record that remains untested and that will be challenged by a forthcoming motion under Federal Rules of Civil Procedure 55(c) and 60(b) presenting substantial meritorious defenses. Awarding fees now would be premature and inequitable.

## Relevant Factual and Procedural Background

On September 22, 2025, Judge Liman denied Plaintiffs' earlier fee motion as moot and held that, on renewal, Plaintiffs had to establish the propriety of attorneys' fees. *JC Hospitality, et al. v. Hochberg*, No. 23-cv-02051 (S.D.N.Y. Sept. 22, 2025).

On November 7, 2025, Judge Liman held only that fees could be available in principle and refused to fix any amount because Plaintiffs had supplied only aggregate hours rather than sufficiently detailed, activity-specific records. *JC Hospitality, et al. v. Hochberg*, No. 23-cv-02051 (S.D.N.Y. Nov. 7, 2025).

On November 27, 2023, Judge Liman also issued an ownership-related ruling that was narrower than Plaintiffs' broader present ownership-and-authorization narrative suggests. *JC Hospitality, et al. v. Hochberg*, No. 23-cv-02051 (S.D.N.Y. Nov. 27, 2023).

The same November 7, 2025 decision found exceptional circumstances based on a default record and on findings of substantial indicia of willful infringement and vexatious litigation conduct, including alleged continued conduct after cease-and-desist letters, failures to appear, discovery failures, and counsel withdrawals. *JC Hospitality, et al. v. Hochberg*, No. 23-cv-02051 (S.D.N.Y. Nov. 7, 2025).

Defendant's forthcoming motion goes directly to those predicates. It will present significant meritorious defenses and documentary proof disputing the cease-and-desist chronology, the Instagram-handle theory, the alleged separation between The Sanctuary and The Surf Lodge, and the broader ownership-and-authorization narrative.

Plaintiffs' renewed fee submission consists of Invoice #14, Invoice #118, Invoice #232, and Invoice #400. Invoice #14 begins with a January 9, 2023 entry stating "DRAFT LETTER TO DEFENSE COUNSEL (JORDAN & LEVERRIER, PC) RE: CEASE AND DESIST." Invoice #118 includes motion-to-dismiss work and related correspondence. Invoice #232 includes discovery work, settlement-conference work, and sanctions-related work. Invoice #400 includes

1

renewed-default work and entries expressly directed to the attorney's fees application itself, including research on fee-motion requirements, drafting declarations in support of attorneys' fees, and organizing billing invoices and exhibits.

At minimum, equity and judicial economy require deferral of any fee determination until the Court evaluates the fuller adversarial record presented in Defendant's forthcoming motion under Rules 55(c) and 60(b).

## Argument

### I. THE COURT SHOULD NOT DEEM THIS CASE EXCEPTIONAL OR FIX ANY FEE AWARD ON THE PRESENT DEFAULT RECORD

Plaintiffs seek attorneys' fees on a record that was accepted on default and not after adversarial factual development. Under the Lanham Act, attorneys' fees may be awarded only in "exceptional cases," meaning those that stand out with respect to the strength of a party's litigating position or the manner in which the case was litigated, as articulated in *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545 (2014). On September 22, 2025, Judge Liman held that, on renewal, Plaintiffs had to establish the propriety of attorneys' fees. *JC Hospitality, et al. v. Hochberg*, No. 23-cv-02051 (S.D.N.Y. Sept. 22, 2025). On November 7, 2025, Judge Liman held only that fees could be available in principle and refused to fix any amount because Plaintiffs had supplied only aggregate hours rather than sufficiently detailed, activity-specific records. *JC Hospitality, et al. v. Hochberg*, No. 23-cv-02051 (S.D.N.Y. Nov. 7, 2025).

Judge Liman found exceptional circumstances on the default record based on substantial indicia of willful infringement and vexatious litigation conduct, including alleged continued conduct after cease-and-desist letters, failures to appear, discovery failures, and repeated counsel withdrawals. *JC Hospitality, et al. v. Hochberg*, No. 23-cv-02051 (S.D.N.Y. Nov. 7, 2025). But the forthcoming Rule 55(c)/60(b) motion goes directly to those predicates. It will present substantial meritorious defenses and documentary proof disputing the cease-and-desist chronology, the Instagram-handle narrative, the alleged separation between The Sanctuary and The Surf Lodge, and the broader ownership-and-authorization narrative.

That is why fees are premature. A case involving substantial factual disputes and viable defenses cannot stand out as exceptional under the Lanham Act. Because Plaintiffs' entitlement to fees depends on this case "standing out" under the Lanham Act, the existence of substantial, evidence-supported defenses independently precludes a finding of exceptionality. The issue is not merely the amount. It is whether this is an "exceptional" case at all on a fuller record.

Defendant identifies only a few non-exhaustive examples here. Defendant disputes Plaintiffs' allegation that Defendant solicited *Business Insider* to publish a negative article about The Surf

2

Lodge. Defendant disputes Cardoso's sworn assertion that The Sanctuary was completely separate from The Surf Lodge. Defendant disputes the Instagram-handle theory that Defendant changed @TheSanctuaryWellness to @TheSurfLodgeSanctuary. If credited, these facts directly undermine Plaintiffs' theory of unauthorized use and likelihood of confusion, which formed a central basis for the default judgment. Defendant also contends that Plaintiffs' ownership-and-authorization narrative was broader than Judge Liman's November 27, 2023 ownership ruling supported. *JC Hospitality, et al. v. Hochberg*, No. 23-cv-02051 (S.D.N.Y. Nov. 27, 2023).

This is not a collateral social-media dispute. Plaintiffs' liability theory depended in material part on the claim that Defendant falsely changed or appropriated the Instagram handle to create a false association with The Surf Lodge. If Defendant's forthcoming evidence shows that @TheSurfLodgeSanctuary already existed in 2019, that Cardoso herself used or tagged that handle, and that @TheSanctuaryWellness belonged to third parties since 2014, then Plaintiffs' handle-conversion theory collapses. That, in turn, materially undermines Plaintiffs' theories of unauthorized use, likely confusion, willfulness, and any claim that this case "stands out" as exceptional under the Lanham Act.

Two additional issues independently reinforce why the Court should not award fees now. First, Defendant contends that Cardoso directly contacted Defendant's 93-year-old elderly father in June '23 while Defendant was represented in an effort to pressure settlement. Defendant also will present evidence concerning the August 1, 2023 settlement communication sent from "Julien.Bizalion@thesurflodge.com." Defendant contends that the communication was suspicious on its face because it did not match Julien Bizalion's known post-Surf-Lodge email usage, did not match the ordinary Surf Lodge email format, and purported to invoke Jayma Cardoso's authority while simultaneously stating that Surf Lodge's lawyers could not communicate directly with Defendant because she was represented. Additionally, when Defendant copied her lawyer, Steven Storch, on her reply, "Julien" took Mr. Storch off of the email in his reply. Defendant further contends that the follow-up communication appeared to reflect counsel's wording or direction rather than any genuinely independent outreach from Julien Bizalion. If credited, that communication raises serious credibility and equitable concerns bearing directly on whether the Court should award discretionary attorneys' fees on the present record. Defendant does not ask the Court to make any disciplinary or criminal finding on this motion. The narrower point is that the Court should not award discretionary fees while that sender-identity issue, and the fuller Rule 55(c)/60(b) record to which it relates, remain to be presented.

Defendant identifies an additional credibility and equity issue bearing directly on whether discretionary attorneys' fees should be awarded on the present record. In Plaintiffs' July 7, 2023 letter motion to seal, Plaintiffs represented to the Court that this case had already received "excessive and unwarranted media attention" and that they sought to avoid "any further media

3

attention" through public disclosure of the license materials. *JC Hospitality, et al. v. Hochberg*, No. 23-cv-02051 (S.D.N.Y. July 7, 2023). Defendant will submit accompanying declaration and exhibits showing that Plaintiffs' counsel later publicized press concerning this case on his own law firm website for promotional purposes. If counsel invoked visibility, harm, and the need to avoid further publicity as grounds to restrict public access, but later used the same publicity for his own professional benefit, Defendant contends that the Court was deceived as to the true purpose of the sealing request. At minimum, that inconsistency raises serious questions regarding credibility, candor, and the equity of awarding discretionary fees on the present record.

This is therefore not the proper record on which to deem the case exceptional or to fix any fee amount. At minimum, equity and judicial economy require deferral until the Court reviews Defendant's forthcoming Rules 55(c) and 60(b) motion.

## II. PLAINTIFFS HAVE NOT CARRIED THEIR BURDEN TO PROVE ANY REASONABLE FEE AMOUNT

Even assuming fees may be available in principle, Plaintiffs still bear the burden to prove the amount sought through competent, sufficiently detailed fee proof. In *Milea v. Metro-North R.R. Co.*, 658 F.3d 154, 166 (2011), the Second Circuit described the lodestar as the starting point for fee analysis. In *New York State Ass'n for Retarded Child v. Carey*, 711 F.2d 1136, 1147–48 (1983), the Second Circuit required contemporaneous time records. In *Wolinsky v. Scholastic, Inc.*, 900 F. Supp. 2d 332, 335–36 (S.D.N.Y. 2012), the court explained that such records ordinarily identify, for each attorney, the date, hours expended, and nature of the work done. In *Quaratino v. Tiffany & Co.*, 166 F.3d 422, 425 (1999), the Second Circuit held that excessive, redundant, or otherwise unnecessary hours must be excluded.

Judge Liman already held that Plaintiffs had not met that burden because they supplied only aggregate hours rather than detailed, activity-specific records. *JC Hospitality, et al. v. Hochberg*, No. 23-cv-02051 (S.D.N.Y. Nov. 7, 2025). Plaintiffs still have not cured that problem.

The current submission remains unreliable from the outset. Invoice #14 begins with the January 9, 2023 entry "DRAFT LETTER TO DEFENSE COUNSEL (JORDAN & LEVERRIER, PC) RE: CEASE AND DESIST." Defendant contends that entry was not the beginning of the dispute, but a response to Defendant's earlier November and December 2022 demands. If credited, Plaintiffs' fee narrative begins with a materially misleading premise.

The same submission also lacks the core proof ordinarily used to establish actual fee incurrence and billing regularity. Plaintiffs submitted invoices only. Under 22 N.Y. Comp. Codes R. & Regs. tit. 22 § 1215.1, an attorney undertaking representation for a fee must provide a written letter of engagement or signed retainer addressing the scope of services, attorney's fees, expenses, and billing practices. In *Gary Friedman, P.C. v. O'Neill*, 982 N.Y.S.2d 359, 359–60 (2014), the court held that noncompliance placed on the attorney the burden to prove the retainer terms and the

fairness and mutual understanding of the arrangement. In *Sidoti v. Hall*, 998 N.Y.S.2d 662 (2015), the court further held, in substance, that absent a written retainer agreement, legal fees could not be recovered on a contract theory. In *Albunio v. City of N.Y.*, 989 N.Y.S.2d 1, 10–11 (2014), and *Lawrence v. Miller (In re Lawrence)*, 23 N.E.3d 965, 976–77 (2014), New York courts emphasized the special scrutiny applied to attorney-client fee arrangements and the attorney's burden to show fairness and client understanding. Defendant invokes those authorities here as proof-and-reliability authorities, not as an automatic categorical bar. Defendant recognizes that *Gary Friedman, P.C. v. O'Neill*, 982 N.Y.S.2d 359, 359–60 (2014), is not an S.D.N.Y. decision; however, because Plaintiffs themselves frame this matter as beginning with pre-S.D.N.Y. cease-and-desist work, the absence of any written retainer or engagement letter remains a relevant defect in the reliability of Plaintiffs' fee submission

Plaintiffs' request for attorneys' fees is further undermined by the absence of any clear fee agreement governing the claimed charges. Plaintiffs' counsel has publicly represented on its website (www.employmentdiscrimination.com) that it operates on a **"no fees unless we win"** **and "financial backing guaranteed"** basis, yet now seeks recovery of substantial hourly fees without demonstrating that such fees were agreed to, incurred pursuant to a valid retainer, or are otherwise enforceable. The billing records themselves reflect that counsel issued invoices demanding payment within thirty days—conduct consistent with a traditional hourly arrangement and inconsistent with the purported "no fees unless we win" representation. This inconsistency raises serious questions as to the reliability, reasonableness, and equity of the requested fees, and independently warrants denial or, at minimum, deferral of any fee award pending full adversarial development of the record. The lack of a clear and consistent billing framework is further reflected in the invoices themselves, which impose inconsistent payment terms—some requiring payment within thirty days, while Invoice #118 requiring payment within 59 days. This further underscores the absence of any reliably established agreement governing the claimed  fees. At a minimum, counsel cannot rely on the absence of a written agreement despite the clear expectation that billing terms be set forth in writing to support recovery of substantial hourly fees after the fact.

On this record, Plaintiffs have not established a reliable basis for any fee amount.

### III. THE INVOICES ARE OVERINCLUSIVE, NON-SEGREGATED, AND FACIALLY INCLUDE FEE-ON-FEE AND OTHER NON-RECOVERABLE WORK

The invoices remain facially overbroad. Invoice #14 includes disputed pre-suit and complaint work and begins with the January 9, 2023 cease-and-desist entry. Invoice #118 includes motion-to-dismiss and related  work. Invoice #232 includes discovery work, settlement-conference work, and sanctions-related work. Invoice #400 includes renewed-default work and facial fee-on-fee work.

Invoice #400 is especially problematic. On its face, it bills for research on the requirements for filing a motion for attorneys' fees, drafting declarations in support of attorneys' fees, organizing billing invoices and exhibits, and preparing the fee papers themselves. It also reflects paired internal conference entries and layered review by multiple timekeepers. Invoice #232 likewise reflects multi-lawyer drafting, review, conferencing, and sanctions-related work.

More specifically, the overbreadth here is concrete.

**A. Invoice #400: Fee-Application Work and Overlapping Internal Conferences**

Invoice #400 expressly bills for fee-application work. On September 6, 2024, it bills 0.80 hours for research on case law, SDNY rules, and Judge Liman's individual rules regarding the requirements for filing a motion for attorneys' fees. On September 9, 2024, it bills 1.20 hours to draft a declaration of counsel in support of a motion for attorneys' fees. On September 10, 2024, it bills 2.20 hours to draft that declaration and research Lanham Act attorneys' fees and the definition of an exceptional case. On September 11, 2024, it bills 3.90 hours to edit the declaration, compute and organize billing invoices as exhibits, and draft the notice of motion and proposed order.

Invoice #400 also contains facially overlapping internal conference entries. On September 6, 2024, CM billed 0.20 hours for a telephone conference with JZ, while JZ billed 0.20 hours for a telephone conference with CM. On November 6, 2024, NC billed 0.10 hours for a telephone conference with JZ, while JZ billed 0.10 hours for a telephone conference with NC. On March 26, 2025, CM billed 0.40 hours for a telephone conference with JZ, while JZ billed 0.60 hours for a telephone conference with CM and a client call. On May 20, 2025, CM billed 0.20 hours for a telephone conference with JZ, while JZ billed 0.20 hours for a telephone conference with CM.

The same invoice also reflects repeated editing of the renewed-default papers across numerous separate entries without segregation between recoverable and non-recoverable work. Those entries appear on March 14, 2025, May 20, 2025, May 21, 2025, May 22, 2025, May 23, 2025, May 27, 2025, June 10, 2025, June 11, 2025, June 12, 2025, June 13, 2025, and June 16, 2025. Invoice #400 also includes a June 16, 2025 entry for "EDIT DECLARATIONS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT; COMPILE EXHIBITS IN SUPPORT OF SAME," even though the submission is otherwise framed around renewed-default work.

**B. Invoice #232: Sanctions-Related Work and Layered Multi-Lawyer Review**

Invoice #232 includes sanctions-related work that is not segregated out. On February 28, 2024, NC billed 3.30 hours for research concerning disciplinary actions to be taken against Defendant. On March 12, 2024, NC billed 5.40 hours for research on Rule 11 sanctions, review of prior motions and correspondence, and drafting a motion for sanctions. On March 15, 2024, NC billed 2.20 hours to edit the motion for sanctions.

6

Invoice #232 also contains overlapping multi-lawyer work on the same tasks. On February 28, 2024, CM billed 1.80 hours to draft Plaintiffs' opposition to Alexander Dudelson's motion to withdraw and stay proceedings, while JZ billed 2.80 hours the same day to analyze that motion, edit the opposition, and confer with the client. On April 22, 2024, CM billed 0.90 hours for a conference with JZ and editing requests for admissions, while JZ billed 0.60 hours for a conference with CM, review of revised requests for admissions, and a client conference. On May 2, 2024, CM billed 3.70 hours to draft the settlement conference statement, case summary form, and supporting exhibits, while JZ billed 1.10 hours to review, edit, and approve that same submission.

### C. Invoice #118: Duplicative Drafting and Review on the Same Motion Practice

Invoice #118 shows the same pattern. On June 9, 2023, CM billed 4.00 hours to draft the motion to file the second amended complaint, certification of counsel, proposed order, and proposed pleading, while JZ billed 3.80 hours the same day to edit and review those same motion documents and approve them for filing. On July 7, 2023, CM billed 4.20 hours to edit, review, and e-file Plaintiffs' opposition to the motion to dismiss, the certification of counsel, and the letter motion, while JZ billed 4.10 hours to review and edit the revised draft of that same opposition and confer with both CM and the client.

### D. Invoice #14: Overlapping Conference/Review Time and the Reversed Chronology Problem

Invoice #14 likewise contains facially overlapping review and conference time. On April 26, 2023, CM billed 0.70 hours for multiple telephone conferences with JZ and drafting a letter to Judge Liman, while JZ billed 0.30 hours for multiple telephone conferences with CM. On May 8, 2023, CM billed 3.50 hours to edit and review Plaintiffs' first amended complaint and supporting exhibits and confer with JZ, while JZ billed 1.80 hours to confer with CM and review that same amended complaint and supporting exhibits. These entries should also be read together with the January 9, 2023 cease-and-desist entry, which Defendant contends reverses the true pre-suit chronology.

In *Quaratino v. Tiffany & Co.*, 166 F.3d 422, 425 (1999), the Second Circuit held that excessive, redundant, or otherwise unnecessary hours must be excluded. More generally, in *Loughlin v. Meghji*, 2025 NY Slip Op 04467 (N.Y. App. Div. July 30, 2025), the Appellate Division reiterated that the attorney bears the burden of establishing the reasonable value of the services rendered, based on hours reasonably expended and prevailing rates, and reduced a fee award substantially in the exercise of discretion.

Plaintiffs have also not meaningfully segregated allegedly recoverable work from non-recoverable work. They instead ask the Court to do their allocation work for them. Judge Liman already rejected that kind of aggregate showing in *JC Hospitality, et al. v. Hochberg*, No. 23-cv-02051 (S.D.N.Y. Nov. 7, 2025).

7

IV. DEFENDANT'S PRIOR FAILURES WERE NOT WILLFUL, AND THE FULLER RECORD SHOULD BE PRESENTED IN DEFENDANT'S FORTHCOMING MOTION UNDER FEDERAL RULES OF CIVIL PROCEDURE 55(c) AND 60(b), WHICH WILL PRESENT SIGNIFICANT MERITORIOUS DEFENSES THAT MATERIALLY UNDERMINE PLAINTIFFS' CASE AND SHOW THAT PLAINTIFFS' FACTUAL NARRATIVE IS MATERIALLY DISPUTED AND NOT SUPPORTED BY THE FULLER EVIDENTIARY RECORD.

Defendant respectfully apologizes to the Court for prior nonappearance and noncompliance. Defendant's prior noncompliance should not be treated as strategic or calculated disregard of this litigation. In *JC Hospitality, et al. v. Hochberg*, No. 23-cv-02051 (S.D.N.Y. Nov. 7, 2025), the Court recounted that then-counsel sought an extension after Defendant indicated that she would be at a medical provider, and the Court found good cause for a one-week extension based on medical circumstances. The same record also reflects that Defendant's father died on October 19, 2023, and that he had agreed to pay counsel's bills and had paid the initial retainer. Defendant's forthcoming motion under Federal Rules of Civil Procedure 55(c) and 60(b) will present the fuller documented record concerning bereavement, extreme mental-health impairment, funding collapse, and housing instability bearing directly on willfulness. Because Plaintiffs rely on the same nonappearance, delay, and counsel-withdrawal history to support fees, the Court should not award discretionary fees before reviewing that fuller non-willfulness record.

Defendant also possesses numerous meritorious defenses, as referenced throughout this memorandum, that go directly to the core liability findings underlying the default judgment. These include, among others, evidence concerning the Instagram handles at issue, prior use, authorization, and the broader ownership-and-relationship narrative between The Sanctuary and The Surf Lodge. If credited, such evidence would materially undermine Plaintiffs' theories of unauthorized use, likelihood of confusion, and willfulness. Because Plaintiffs rely on the same underlying factual narrative to support both liability and their request for attorneys' fees, the existence of these substantial, evidence-supported defenses further confirms that this case cannot be deemed "exceptional" on the present, untested record and that any fee determination would be premature.

The same is true of the two deceptive settlement / impersonation issues. Defendant contends that Cardoso's outreach to Defendant's elderly father while Defendant was represented, and the August 1, 2023 Julien.Bizalion@thesurflodge.com sender-identity issue, are additional reasons why the present record is not an equitable basis for discretionary fee shifting. If credited, those incidents independently bear on credibility, candor, and the equity of awarding fees now.

At minimum, equity and judicial economy compel deferral of any fee determination until the Court evaluates the fuller adversarial record presented in Defendant's forthcoming motion under Rules 55(c) and 60(b).

## Conclusion

8

For all of the foregoing reasons, **including the untested default record, the existence of substantial meritorious defenses, and Plaintiffs' failure to establish a reliable basis for any fee award**, Defendant respectfully requests that the Court:

1. Deny Plaintiffs' renewed motion for attorneys' fees;
2. In the alternative, defer decision on the motion until after Defendant's forthcoming motion to vacate the default judgment under Federal Rules of Civil Procedure 55(c) and 60(b) is filed and resolved; and
3. If necessary in connection with that forthcoming motion only, grant Defendant leave to submit limited sensitive non-willfulness materials for in camera review.

Dated: New York, NY

April 20th, 2026                                                By: Marisa Hochberg (*Pro-Se*)

_____
04/20/2026

9