UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------X

JC HOSPITALITY, LLC, et al.,

                       Plaintiffs,

      -v-

MARISA HOCHBERG,

                     Defendant.

------------------------------------------------------------------------X

23-cv-2051 (LJL)

MEMORANDUM AND
ORDER

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 05/21/2026
```

LEWIS J. LIMAN, United States District Judge:

Plaintiffs JC Hospitality, LLC ("JC Hospitality") and Jayma Cardoso ("Cardoso" and with JC Hospitality, "Plaintiffs") have submitted a declaration in further support of their request for attorneys' fees and costs.  Dkt. No. 127.  For the following reasons, the Court approves the request as modified.

## BACKGROUND

As more fully set out in the Court's Opinion and Order granting in part Plaintiffs' motion for default judgment, this case arises out of a conflict between Cardoso and Defendant Marisa Hochberg ("Hochberg" or "Defendant") related to Cardoso's business, "The Surf Lodge," a well-known boutique hotel, restaurant, bar, and music venue located in Montauk, New York. *See* Dkt. No. 126; *JC Hosp. v. Hochberg*, 2025 WL 3124313, at \*1 (S.D.N.Y. Nov. 7, 2025). Cardoso owns 100% of JC Hospitality, which owns and operates The Surf Lodge.  *JC Hosp.*, 2025 WL 3124313, at \*1.  Hochberg was an employee of The Surf Lodge and, in April 2019, entered into a business relationship with Cardoso to launch a yoga studio named "The Sanctuary" nearby The Surf Lodge in Montauk.  *Id.*  Cardoso incorporated JM Sanctuary LLC and was its only listed member.  *Id.*  For her part, Hochberg controlled the social media accounts

for The Sanctuary and used those social media accounts for marketing efforts. *Id.* During the summer of 2020, Hochberg and Cardoso had a falling out, and Cardoso informed Hochberg of her plans to dissolve JM Sanctuary LLC. *Id.* at *2. Hochberg continued to use the name The Sanctuary in promotions and changed the name of The Sanctuary's social media account from @TheSanctuaryWellness to @TheSurfLodgeSanctuary. *Id.*; Dkt. No. 33-6 at 13. Cardoso informed Hochberg that she was not authorized to conduct business as The Sanctuary and sent two cease and desist letters in 2021, prior to filing the complaint initiating this case on March 10, 2023. *JC Hosp.*, 2025 WL 3124313, at *2–3.

Defendant appeared in the case on April 19, 2023 and filed a motion to dismiss on April 20, 2023. Dkt. Nos. 6, 8. Plaintiffs filed a First Amended Complaint on May 16, 2023, and the Court denied Defendant's motion to dismiss as moot in light of that filing. Dkt. Nos. 17, 19. Plaintiffs filed a motion to file a Second Amended Complaint ("SAC") on June 12, 2023 and Defendant opposed the motion and filed a cross-motion to dismiss the First Amended Complaint. Dkt. Nos. 33, 39. On November 27, 2023, the Court granted Defendant's motion to dismiss in part and denied it in part, and granted Plaintiffs' motion to file the SAC. Dkt. No. 56.

Both prior to and following the Court's decision on the motion to dismiss, Defendant's counsel sought to withdraw as her attorney due to a breakdown in communication. *J.C. Hosp.*, 2025 WL 3124313, at *8. The Court granted Defendant's counsel's motion to withdraw on January 4, 2024 after Defendant violated the Court's order by failing to appear for the conference scheduled that same day. *Id.* Defendant retained a new attorney, who later also moved to withdraw following a breakdown in communication. *Id.* On May 22, 2024, the Clerk of Court issued a certificate of default with respect to Defendant. Dkt. No. 93. On May 28, 2024, Plaintiffs filed a motion for a default judgment for failure to defend the lawsuit. Dkt. No. 94.

2

The Court *sua sponte* denied the first motion for default judgment for failure to comply with the Local Rules.  Dkt. No. 114.  Plaintiffs filed a renewed motion for default judgment on Counts II, VII, VIII, and X of the SAC on August 6, 2025.  Dkt. No. 115.

On November 7, 2025, the Court granted default judgment to Plaintiffs on Counts II, VII, and VIII of the SAC alleging claims respectively for violation of Section 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A), and the New York Consumer Protection Act, N.Y. Gen. Bus. L. §§ 349 and 350.  *J.C. Hosp.*, 2025 WL 3124313, at *21.  The Court denied default judgment on Count X.  *Id.*  The Court found "that exceptional circumstances exist such that an award of attorneys' fees is merited," noting "substantial indicia of the willfulness of Defendant's violations [of the Lanham Act], coupled with vexatious conduct throughout this litigation."  *Id.*  Plaintiffs' counsel included an affidavit in support of their application for attorneys' fees in their motion for default judgment.  Dkt. No. 115-7.  The affidavit stated that three attorneys, John Zidziunas ("Zidziunas"), Caroline McCallan ("McCallan"), and Nicorie Clarke ("Clarke"), billed a total of 285.7 hours to the case: 115.7 by Zidziunas for a total value of $86,150, 153.5 by McCallan for a total value of $66,135, and 16.5 by Clarke for a total value of $4,950.  *Id.*  The effective rate for each attorney was $744.60, $434.76, and $300 per hour, respectively.  *J.C. Hosp.*, 2025 WL 3124313, at *22.  The Court found that the hourly rate for each attorney was reasonable.  *Id.*  However, the Court could not conclude that the amount of time spent or tasks on which the hours were spent was reasonable, because Plaintiffs' counsel did not provide contemporaneous time records indicating, "for each attorney, the date, the hours expended, and the nature of the work done."  *Id.* (quoting *Wolinsky v. Scholastic, Inc.*, 900 F. Supp. 2d 332, 335–336 (S.D.N.Y. 2012)).  The Court therefore ordered Plaintiffs' counsel to submit detailed entries in support of their motion for attorneys' fees.  *Id.*

Following the Opinion and Order, Plaintiffs' counsel submitted a declaration in support of the award of attorneys' fees and expenses, with billing invoices as supporting exhibits. Dkt. No. 127. Plaintiffs voluntarily dismissed the remaining counts of the SAC. Dkt. No. 127 ¶ 3. Plaintiffs served the declaration in support of the award of attorneys' fees and expenses on Hochberg on March 6, 2026. Dkt. No. 130. The Court granted Hochberg's request for an extension of time to respond to the request, Dkt. No. 132, and Hochberg filed a memorandum of law in opposition to the declaration, along with the declarations of Hochberg and Micah Salb, on April 24, 2026. Dkt. Nos. 142–144. Plaintiffs filed a memorandum of law in reply on May 1, 2026. Dkt. No. 147. Hochberg filed a corrected exhibit and two factual points, with leave of the Court, on May 7, 2026. Dkt. No. 150.

## DISCUSSION

Defendant requests the Court defer decision on Plaintiffs' application for attorneys' fees pending decision on Defendant's forthcoming motion pursuant to Federal Rules of Civil Procedure 55 and 60 to vacate the default judgment. Dkt. No. 142 at 1, 4. Defendant also argues that her prior failures to participate in this litigation were not willful. *Id.* at 8. As outlined in the Court's opinion and order granting in part and denying in part Plaintiffs' motion for default judgment, Defendant has engaged in conduct that has "frustrated the litigation process at every turn" and contributed to significant delays in the progress of this case. *JC Hosp.*, 2025 WL 3124313, at *21 (internal quotation marks and citation omitted). It has been one month since Hochberg said that a motion to vacate the judgment would be forthcoming. Dkt. No. 142 at 1. Based on history, there is no reason to believe that the motion will be forthcoming soon, that it will present grounds to vacate the default judgment, or that Hochberg's arguments now are anything other than a stalling technique. The Court will consider Defendant's motion should she

4

file it; it will not further delay Plaintiffs' request for attorneys' fees in anticipation of the promised motion.

The "starting point" and "lodestar" in analyzing whether claimed attorneys' fees are appropriate is "the product of a reasonable hourly rate and the reasonable number of hours required by the case." *Milea v. Metro-North R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011); *see also Lilly v. City of New York*, 934 F.3d 222, 227–34 (2d Cir. 2019) (discussing calculation of reasonable hourly rates and reasonable number of hours expended). The party seeking fees bears the burden of demonstrating that its requested hours and hourly rates are reasonable and must provide a court with sufficient information to assess the fee application. *See Allende v. Unitech Design, Inc.*, 783 F. Supp. 2d 509, 512–13 (S.D.N.Y. 2011).

Plaintiffs' counsel requests hourly rates of $700 and $350 for Zidziunas and McCallan, respectively, for the period from January 9, 2023 up to January 1, 2024, based on the initial retainer between Plaintiffs and counsel. Dkt. No. 127 ¶¶ 7, 11–13. Plaintiffs agreed to a revised retainer fee agreement in January 2024. Dkt. No. 127 ¶ 7. In accordance with that revision, Plaintiffs' counsel requests hourly rates of $800 and $450 for Zidziunas and McCallan, respectively, for the period following January 1, 2024, and an hourly rate of $850 for Zidziunas for the period following January 1, 2025. Dkt. No. 127 ¶¶ 13–17. Plaintiffs' counsel requests an hourly rate of $300 for Clarke for all hours worked. Dkt. No. 127 ¶¶ 15–17. Counsel's requested rates for McCallan and Clarke align with the rates that the Court found reasonable in its prior opinion. *J.C. Hosp.*, 2025 WL 3124313, at *22. The Court previously found a rate of $744.60 reasonable for Zidziunas and noted that courts have recently found rates as high as $895 for partners to be reasonable. *Id.* Defendant challenges the structure of counsel's fees, noting that the firm's website advertises a contingency system, but does not challenge the individual

rates.  Dkt. No. 142 at 4–5.  The Court finds the requested rates to be reasonable.  *See Top Jet Enters., Ltd. v. Kulowiec*, 2022 WL 1184245, at *3 (S.D.N.Y. Apr. 21, 2022) (finding $825 hourly rate for experienced counsel and $300 to $500 hourly rates for associates to be appropriate).

The next step is to determine the reasonableness of the hours expended by counsel.  In determining the number of hours reasonably expended, a court must consider both the "contemporaneous time records . . . [that] specify, for each attorney, the date, hours expended, and nature of the work done," *N.Y. State Ass'n for Retarded Child. v. Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983), as well as "its own familiarity with the case and its experience with the case and its experience generally as well as . . . the evidentiary submissions and arguments of the parties," *Clarke v. Frank*, 960 F.2d 1146, 1153 (2d Cir. 1992) (quotation marks omitted). Plaintiffs' counsel has submitted billing invoices that include the date, a description of the work completed, the attorney's hourly rate, and the number of hours worked.  Dkt. Nos. 127-1–127-4.

To determine the reasonableness of hours spent on a matter, "[t]he district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award" by a reasonable percentage.  *Hensley*, 461 U.S. at 436–37; *see also McDonald*, 450 F.3d at 96 ("A district court may exercise its discretion and use a percentage deduction as a practical means of trimming fat from a fee application." (internal quotation marks omitted)).  "[T]rial courts need not, and indeed should not, become green-eyeshade accountants.  The essential goal in shifting fees . . . is to do rough justice, not to achieve auditing perfection."  *Fox v. Vice*, 563 U.S. 826, 838 (2011).  "In awarding attorney's fees, the Court is guided by the fact that default actions are relatively simple legal matters."  *Trs. of Loc. 138, 138a & 138b Int'l Union of Operating Eng'rs Welfare Fund v. Intercounty Paving Assocs. LLC*, 2022 WL 20612859, at *4 (E.D.N.Y. June 2,

2022); *see id.* at *6 (awarding $5,798 in attorneys' fees); *Argila v. Mach Grp. Inc.*, 724 F. Supp. 3d 107, 110 (E.D.N.Y. 2024) (fee award of $41,665.20 for 180.56 hours of work "far beyond what courts generally award in ERISA default judgment cases").  Where, as here, a default judgment case involved significant motion practice, the lengthy procedural history "warrants a greater fee award than is rendered in connection with a typical default motion." *Dacas v. Duhaney*, 2020 WL 4587343, at *5 (E.D.N.Y. June 18, 2020), *report and recommendation adopted*, 2020 WL 4586371 (E.D.N.Y. Aug. 10, 2020).

Though this case involved extended motion practice, the number of hours billed by Plaintiffs' counsel is unreasonable.  The billing invoices indicate that Zidziunas worked a total of 118.4 hours on this case, Dkt. No. 127 ¶¶ 11–17, McCallan worked a total of 162.8 hours, *id.*, and Clarke worked a total of 16.5 hours, *id.* ¶¶ 15–17.  Plaintiffs' counsel billed a total of 297.7 attorney hours on this matter.  This number of hours is disproportionate to the work required by this case.  As illustrative examples, Plaintiffs' counsel billed 15.6 hours on the original motion for default judgment, which consisted of a ten-page attorney declaration that offered no legal analysis, and 5.4 hours on the supplemental affidavit by Plaintiff Cardoso.  Dkt. No. 127-3 at 5–6, 10–11.  Twenty-one hours billed for a motion that contained "[a]lmost no legal reasoning" and a single case citation is unreasonable.  *See* Dkt. No. 114 (order denying motion, without prejudice, for failure to comply with the local rules or the Court's individual practices).  Plaintiffs additionally billed 69.1 hours for their renewed motion for default judgment, bringing the total hours expended in moving for default judgment to 91.1 hours.  *See* Dkt. No. 127-4 at 2–5.  "[T]he number of hours is disproportionate to the work performed," so the Court shall "reduce the stated hours accordingly." *Varghese v. Plecosystems, Inc.*, 2026 WL 475949, at *3 (S.D.N.Y. Jan. 22, 2026), *report and recommendation adopted*, 2026 WL 475008 (S.D.N.Y.

Feb. 19, 2026) (quoting *Themis Cap. v. Dem. Rep. of Congo*, 2016 WL 817440, at *3 (S.D.N.Y. Feb. 22, 2016)); *see id.* ("no reasonable paying client would accept" a bill of seventy hours on a simple default motion).

Moreover, certain of Plaintiffs' counsel's billing records demonstrate unnecessarily duplicative billing. For instance, in December 2023, Zidziunas and McCallan collectively spent 3.8 hours on a letter response to Defendant's former counsel's motion to withdraw. Dkt. No. 127-2 at 4. Two months later, both attorneys again worked on a letter in opposition to Defendant's later counsel's motion to withdraw, for a total of 4.6 hours. Dkt. No. 127-3 at 1–2. While significant time spent editing and reviewing a letter to the Court may be appropriate where a senior attorney supervises a junior attorney's work, McCallan has been an admitted attorney since 2019, and her billing rate aligns with that of an experienced attorney. *See Dimopoulou v. First Unum Life Ins. Co.*, 2021 WL 406741, at *3 (S.D.N.Y. Feb. 5, 2021) (approving rate of $450 per hour for senior associate). Billing for two experienced attorneys to draft and review the same letter to the Court is unreasonably duplicative. *See In re Schiff*, 2010 WL 3219535, at *4 (S.D.N.Y. Bankr. Aug. 10, 2010) (finding duplicative work where counsel billed "for more than one attorney working on the same matter, supervising another colleague's work, and attending internal conferences").

Additionally, the billing records include numerous entries where an attorney billed for clerical work. "Courts [] 'regularly reduce the rate billed by attorneys for work done on administrative or clerical tasks[,]' and '[a]ttorneys engaged in clerical tasks should be compensated at the rate for clerical employees, or, if the task at issue is the type included in overhead, they should not be compensated at all.'" *Kane v. Nat'l Farm Wholesale Fruit & Vegetable Corp.*, 2022 WL 20805006, at *4 (S.D.N.Y. Aug. 5, 2022), *report and*

*recommendation adopted*, 2023 WL 6795421 (S.D.N.Y. Oct. 13, 2023) (quoting *Shabazz v. City of New York*, 2015 WL 7779267, at *4 (S.D.N.Y. Dec. 2, 2015)).  Counsel's invoices include time billed for e-filing, organizing exhibits, and coordinating service.  *See generally* Dkt. Nos. 127-1–127-3 (McCallan billing at her $350, and later $400, rate for e-filing documents and coordinating service); Dkt. No. 127-1 at 4 (Zidziunas billing at his $700 rate on May 22, 2023 for e-filing document).  Such tasks are generally compensated at a lower rate.  *See, e.g.*, *Kane*, 2022 WL 20805006, at *4 (compensating time billed for serving and filing papers at $100 per hour clerical rate); *Garcia-Severino v. TDL Restoration, Inc.*, 2020 WL 7239678, at *4 (S.D.N.Y. Dec. 9, 2020) (compensating time billed for filing at clerical rate of $100 per hour "because filing a complaint is a clerical task"); *DeMarco v. Ben Krupinski Gen. Contractor, Inc.*, 2014 WL 3696020, at *9 (E.D.N.Y. July 22, 2014) (reducing hours by 30% in part due to time billed for clerical tasks such as filing documents); *G.B. ex rel. N.B. v. Tuxedo Union Free Sch. Distr.*, 894 F. Supp. 2d 415, 439 (S.D.N.Y. 2012) (attorney "should be compensated at a reduced rate for the time she spent preparing exhibits, as this is a task that normally would have been performed by a paralegal"); *Pascuiti v. N.Y. Yankees*, 108 F. Supp. 2d 258, 267 (S.D.N.Y. 2000) (compensating tasks such as "faxing, filing, photocopying, and drafting affidavits of service" at $50 per hour); *Reiter v. Metro. Transp. Auth. of N.Y.*, 2004 WL 2072369, at *8 (S.D.N.Y. Sept. 10, 2004) (reimbursing time spent filing federal complaint at clerical rate of $50 per hour); *cf. Sulkowska v. City of New York*, 170 F. Supp. 2d 359, 369 (S.D.N.Y. 2001) (excluding filing, photocopying, mailing, faxing and service of papers from the fee application as non-compensable overhead).

Counsel's time spent on clerical tasks should be compensated at a clerical rate of $100 per hour.  However, Plaintiff's counsel provided block-billed entries that make it difficult to

9

determine the exact amount of time spent on each task.  For instance, on July 7, 2023, McCallan

billed 4.2 hours for time spent "edit[ing], review[ing], and e-fil[ing] plaintiffs' memorandum of

law in opposition to defendants motion to dismiss for lack of standing; draft[ing] and efil[ing]

certification of counsel in support of opposition; draft[ing] and e fil[ing] letter motion; tel conf.

with JZ (multiple)."  Dkt. No. 127-2 at 2 (capitalization altered).  Some portion of those 4.2

hours was spent filing three documents with the Court.  In these circumstances, courts may issue

a percentage reduction in the fee award to account for time spent on clerical and secretarial tasks.

*See, e.g.*, *Ramey v. Dist. 141, Int'l Ass'n of Machinists & Aerospace Workers*, 2005 8157425, at

*5 (E.D.N.Y. May 24, 2005) (recommending "an additional five (5) percent overall reduction in

fees to account for the secretarial and paralegal work that Mr. Nelson appears to have billed at an

attorney rate"); *McDonald v. Pension Plan of NYSA-ILA Pension Tr. Fund*, 2002 WL 1974054,

at *3 (S.D.N.Y. Aug. 27, 2002) (reducing fee award by 5 percent for time spent on clerical and

secretarial tasks).

Due to excessive and duplicative billing, as well as billing for clerical tasks,  the Court

finds that a 40% reduction in Plaintiffs' counsel's requested attorneys' fees is warranted.[1]

Accordingly, Plaintiffs' attorneys' fees are reduced from $163,750 to $98,250.

Plaintiffs' counsel also seeks $990.10 in expenses associated with this litigation,

including filing fees and service of process fees.  "[A]n attorney can recover 'those reasonable

out-of-pocket expenses incurred . . . and ordinarily charged to their clients.'" *Paulino v. S & P

Mini Market Corp.*, 790 F. Supp. 3d 319, 333 (S.D.N.Y. 2025) (quoting *Leblanc-Sternberg v.*

---

[1] Defendant's challenge to Plaintiffs' counsel's billing for time spent preparing the motion for attorneys' fees is unavailing.  "[A]n attorney's time spent preparing an application for attorney's fees is compensable." *Tran v. Tran*, 166 F. Supp. 2d 793, 804 (S.D.N.Y. 2001); *accord Greathouse v. JHS Sec. Inc.*, 2017 WL 606507, at *3 (S.D.N.Y. Feb. 15, 2017).

*Fletcher*, 143 F.3d 748, 763 (2d Cir. 1998)).  Counsel's request for expenses is supported by invoices billed to Plaintiffs, which include specific entries for the fee from filing the complaint and the service of process fees from attempted service on multiple occasions.  Dkt. Nos. 124-4, 127-1, 127-3.  Accordingly, the expenses sought by counsel are reasonable.

In sum, Plaintiffs are awarded attorneys' fees of $98,250.  With reasonable expenses, Plaintiffs' total attorneys' fees and costs are $99,240.10.

## CONCLUSION

Plaintiffs' motion for an award of attorneys' fees and costs is GRANTED as modified. The Court awards Plaintiffs $98,250 in attorneys' fees and $990.10 in expenses, for a total award of $99,240.10.

The Clerk of Court is respectfully directed to enter judgment in favor of Plaintiffs on Counts II, VII, and VIII of the Second Amended Complaint and in the amount of $99,240.10 in attorneys' fees and costs.  The remaining claims of the Second Amended Complaint are dismissed.

The Clerk of Court is respectfully directed to close this case.

SO ORDERED.

Dated: May 21, 2026
New York, New York

_____
LEWIS J. LIMAN
United States District Judge