**JOHN J. ZIDZUNAS & ASSOCIATES, LLC**
**John J. Zidziunas, Esq. (ATTY ID 5544044)**
**225 Broadway, Suite 3800**
**New York, New York 10007**
**T: (212) 516-1868**
*Attorneys for Plaintiffs, JC Hospitality, LLC and Jayma Cardoso*

### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JC HOSPITALITY, LLC and<br>JAYMA CARDOSO,<br><br>          **Plaintiffs,**<br><br>     **-against-**<br><br>MARISA HOCHBERG (In Her<br>Individual and Professional Capacities),<br><br>          **Defendant.** | **CASE NO.: 1:23-CV-02051-LJL** |

---

### PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO
### DEFENDANT HOCHBERG'S MOTION TO VACATE DEFAULT JUDGMENT

---

John J. Zidziunas, Esq.
Of Counsel and On the Brief

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT…………………………………………………………………..1

PROCEDURAL HISTORY AND RELEVANT BACKGROUND………………………………2

FACTUAL ALLEGATIONS AND BACKGROUND……………………………………………9

LEGAL ARGUMENT…………………………………………………………………………...16

POINT I:    DEFENDANT HOCHBERG'S DEFAULT WAS WILLFUL AND NOT EXCUSABLE NEGLECT AND THEREFORE, DEFENDANT'S REQUEST TO VACATE THE COURT'S ENTRY OF DEFAULT JUDGMENT PURSUANT TO FED R. CIV. P. 60(b)(1) MUST BE DENIED………………………………...16

POINT II:    DEFENDANT HOCHBERG CANNOT ESTABLISH A MERITORIOUS DEFENSE AFTER WILLFULLY REFUSING TO ENGAGE IN DISCOVERY DURING THE COURSE OF THIS LITIGATION………………………………21

     A. Defendant Hochberg's Account-Conversion Theory of Defense Lacks Merit and Does Not Provide for a Complete Defense Against the Court's Liability Findings……………………………………………………………………24

     B. Defendant Hochberg Does Not Possess Any Legal Ownership in JM Sanctuary, LLC, Nor Any Licensing Rights to The Sanctuary or the Surf Lodge Brand and Trademarks……………………………………………………………………28

POINT III:    DEFENDANT HOCHBERG'S REQUEST FOR VACATUR FOR "FRAUD ON THE COURT" IS WITHOUT MERIT AND MUST BE DENIED BY THE COURT………………………………………………………………………..31

POINT IV:    PLAINTIFFS WILL BE UNDULY PREJUDICED BY A VACATUR OF THE DEFAULT JUDGMENT………………………………………………………...32

POINT V:    NO EXTRAORDINARY CIRCUMSTANCES EXIST THAT WOULD WARRANT RELIEF FROM DEFAULT JUDGMENT UNDER FED. R. CIV. P. 60(b)(6)………………………………………………………………………..33

CONCLUSION…………………………………………………………………………………..34

## TABLE OF AUTHORITIES

**Statutes and Rules**

15 U.S.C. § 1125(a)…………………………………………………………………………………24

NY Gen. Bus. L § 349………………………………....................................24

NY Gen. Bus. L § 350………………………………....................................24

Fed. R. Civ. P. 60(b)(1)…………………………………………………………………16, 17

Fed. R. Civ. P. 60(b)(3)………………………………………………………...16, 31, 32

Fed. R. Civ. P. 60(b)(6)………………………………………………………...16, 33, 34

Fed. R. Civ. P. 60(d)(3)…………………………………………………………….31, 32

**Cases**

*American Alliance Insurance Co. v. Eagle Insurance Co*., 92 F.3d 57 (2d Cir.1996)…………..16

*Arista Records, Inc. v. Musemeci,* No. 03 CV 4465, 2007 WL 3124545, at *4, 2007 U.S. Dist. LEXIS 81630, at *12 (E.D.N.Y. Sept. 18, 2007)…………………………………………………16

*Castillo v. Zishan, Inc.*, No. 16-CV-6166, 2017 WL 3242322, at *2 (S.D.N.Y. July 28, 2017)….18

*Circuito Cerrado, Inc. v. Velasquez*, 296 F.R.D. 122 (E.D.N.Y. 2013)…………………16, 33, 34

*Enron Oil Corp. v. Diakuhara,* 10 F.3d 90, 98 (2d Cir. 1993)………………………………………21

*ILGWU Nat. Ret. Fund v. Empire State Mills Corp.*, 696 F. Supp. 885 (S.D.N.Y. 1988)……19, 20

*In re Chalasani*, 92 F.3d 1300, 1307–08 (2d Cir. 1996)……………………………………………22

*JLM Couture, Inc. v. Gutman, 91 F.4th 91* (2d Cir. 2024)………………………………………..26

*King v. Galluzzo Equip. & Excavating Inc.*, 223 F.R.D. 94 (E.D.N.Y. 2004)………..20, 21, 22, 32

*Long v. Carberry*, 151 F.R.D. 240, 244–45 (S.D.N.Y. 1993)………………………………………34

*Matrix Polymers, Inc. v. A-E Packaging, Inc.,* No. 15-CV-6040 (LDW)(SIL), 2017 WL 9485652, at *10 (E.D.N.Y. Jan. 5, 2017), *report and recommendation adopted*, No. CV 15-6040, 2017 WL 2189546 (E.D.N.Y. May 18, 2017)……………………………………………………………22

*Mazzei v. The Money Store*, 62 F.4th 88, 93–94 (2d Cir. 2023)…………………………………...32

*Melo v. Milagro Grocery Corp.*, 750 F. Supp. 3d 38 (E.D.N.Y. 2024)………………………17, 19

*New York v. Green*, 420 F.3d 99, 108 (2d Cir. 2005)………………………………………….16

*Original Appalachian Artworks, Inc. v. Yuil Int'l Trading Corp.*, 105 F.R.D. 113, 116 (S.D.N.Y. 1985)…………………………………………………………………………………………..20

*Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380 (1993)………………….34

*Sasso v. M. Fine Lumber Co., Inc.*, 144 F.R.D. 185, 190 (E.D.N.Y.1992)…………………...22, 33

*S.E.C. v. McNulty,* 137 F.3d 732, 738 (2d Cir. 1998)………………………………………..16, 17, 21

*Solomon v. 318 Fashion, Inc.,* 1994 WL 702008, at *2 (S.D.N.Y. Dec. 14, 1994)…………..22, 23

*Sony Corp. v. S.W.I. Trading, Inc.,* 104 F.R.D. 535, 541 (S.D.N.Y.1985)………………………..33

*State Street Bank & Trust Co. v. Inversiones Errazuriz Limitada*, 374 F.3d 158 (2d Cir. 2004)….16

*Stevens v. Miller,* 676 F.3d 62, 67 (2d Cir. 2012)………………………………………………..34

*Stow Mfg. Co. v. F & K Supply Inc.*, 232 A.D.2d 958, 959 (1996)…………………………...21, 23

*Traguth v. Zuck,* 710 F.2d 90 (1983)…………………………………………………………...20

*Trustees of Tapers' Ins., Annuity & Pension Funds v. Albee Drywall Partitions Corp.,* 1996 WL 294306, at *5 (S.D.N.Y. June 3, 1996)………………………………………………………...32

*Victoriano Gonzalez v. Victoria G's Pizzeria LLC*, No. 19-CV-6996, 2021 WL 6065744, at *3 (E.D.N.Y. Dec. 22, 2021)………………………………………………………………...17

## PRELIMINARY STATEMENT

Plaintiffs JC Hospitality and Jayma Cardoso submit this memorandum of law in opposition to Defendant Hochberg's Motion to Vacate Default Judgment pursuant to Fed. R. Civ. P. 60(b)(1), (b)(3) and (b)(6), and in the alternative Fed. R. Civ. P. 60(d)(3), which was filed on June 16, 2026. For the reasons explained below, Plaintiffs respectfully request that the Court deny Defendant Hochberg's motion to vacate and uphold the Court's November 7, 2025 Order granting default judgment against Defendant Hochberg and awarding attorneys' fees and costs to Plaintiffs.

As explained below, this is not a case of excusable neglect. This is a case riddled with feign excuses, defiant behavior, and a blatant disregard for Court orders and procedural deadlines that has resulted in a warranted entry of default judgment after three years of impeded litigation. Defendant Hochberg's conduct throughout the entirety of this litigation has been obstructive, defiant, and offensive to the Court and to Plaintiffs. As explained in detail below, Defendant Hochberg has deliberately ignored Court orders requiring her appearance on multiple occasions, refused to engage in discovery or otherwise defend against this action, failed to oppose two motion for default judgment despite being duly served and being granted an extension to do so, all while continuing the infringing use of the Surf Lodge brand and engaging in an ongoing tirade of defamatory statements against Plaintiff Cardoso.

Defendant Hochberg's proffered reasons for her willful default fail to meet the standard of "excusable neglect" or any other relief as required to vacate default. Furthermore, Defendant Hochberg seeks to create her own record on a motion to vacate default in order to assert defenses two years after the close of discovery where Defendant Hochberg refused to participate in. Because Defendant Hochberg's default was willful, her asserted defenses lack merit, and a vacatur would prejudice the Plaintiffs. the entry of default judgment should not be vacated and the motion denied.

1

## PROCEDURAL HISTORY AND RELEVANT BACKGROUND

While we are aware that the Court is deeply familiar with the extensive procedural history in this case, we feel it is necessary to reiterate the critical procedural history in opposition to Defendant Hochberg's motion to vacate the default judgment to clearly demonstrate not one isolated mistake by Defendant Hochberg, but a pattern of inexcusable neglect, defiance, and willful acts committed by Defendant Hochberg over the last three years that directly led to the Court to grant Plaintiffs' motion for default judgment against her.

This litigation began over three years ago with Plaintiffs' filing their Complaint on March 10, 2023, and personally serving Defendant Hochberg on March 29, 2023. On April 20, 2023, Defendant Hochberg's first attorney, Steven Storch, Esq. filed a motion to dismiss the Complaint, which the Court denied as moot after Plaintiffs filed a First Amended Complaint on May 11, 2023.

On May 18, 2023, less than two months into the litigation, Defendant Hochberg's first attorney, Steven Storch, filed his first Motion to Withdraw as counsel asserting that he could not effectively communicate with Defendant and the relationship irreparably deteriorated making representation untenable. On May 25, 2025, an Initial Conference was held before Judge Liman where Mr. Storch advised that he had resolved his problems with his client and would be withdrawing his motion.

On June 12, 2023, Plaintiffs filed a Motion to Amend the First Amended Complaint and to File a Second Amended Complaint. On June 23, 2023, Storch filed an opposition to Plaintiffs' Motion to Amend and Cross-Motion to Dismiss for Lack of Jurisdiction. On July 28, 2023, before the Court had even ruled on Defendant's Cross-Motion to Dismiss, Storch filed his second motion within two months to withdraw as counsel for Defendant Hochberg, citing unreasonable difficulties that Hochberg refused to cooperate with the Firm. During a conference call with the

2

Court on August 7, 2023, Storch once again advised that he resolved his problems with his client and would be withdrawing his second motion.

On November 27, 2023, Judge Liman issued a 26-page order Opinion and Order, Judge Liman granted Defendant's motion to dismiss in part. Judge Liman dismissed Plaintiffs' claims for trademark infringement under 15 U.S.C. § 1114-1117, trademark dilution under 15 U.S.C. §1125(c), and cybersquatting under 15 U.S.C. § 1125(d), for lack of standing. However, the Court declined to dismiss Plaintiff's claims for false designation of origin and misrepresentation of facts under 15 U.S.C. § 1125(a), along with Counts 4-10 under New York statutory and common law.

On December 14, 2023, less than five months after his second motion, Storch filed his third motion to withdraw as counsel for Hochberg. Storch asserted that he was unable to work with Defendant Hochberg "who has, at various times during [his] representation in this matter, fired [his Firm] and subsequently begged [his Firm] to represent her, threatened [his Firm], refused to communicate with [his Firm], and has refused to authorize [his Firm] to take actions required by the Court's scheduling orders and applicable rules." (See Declaration of Steven G. Storch, dated December 14, 2023, attached hereto as "**Exhibit A**").

On December 20, 2023, Judge Liman ordered an in-person hearing for January 4, 2024, to address the third Motion to Withdraw, specifically ordering Defendant Hochberg's appearance. On January 4, 2024, Counsel appeared for the hearing, but Hochberg failed to appear despite being ordered by the Court to do so. That same day, Judge Liman granted Storch's motion to withdraw as counsel. Judge Liman further ordered that another in-person hearing would be held on February 8, 2024 to establish a renewed case management plan. Judge Liman directly ordered that if Hochberg failed to appear personally or through counsel for the February 8th in-person hearing, "she risks default". (See Order dated January 4, 2024, attached hereto as "**Exhibit B**").

3

On February 7, 2024, Hochberg's new attorney, Alexander Dudelson, entered his appearance as defense counsel. The next day, on February 8, 2024, Defendant Hochberg again failed to appear to a mandatory in-person hearing. Judge Liman ordered an Answer to be filed no later than February 22, 2024, and set forth a discovery schedule with a fact discovery deadline of June 7, 2024, with the completion of all discovery by August 9, 2024.

On February 27, 2024, just two days before the extended deadline to file her Answer and just 20 days after his appearance in the case, Hochberg's second attorney, Mr. Dudelson, filed a Motion to Withdraw as Counsel. Mr. Dudelson asserted that Hochberg failed to pay his retainer fee, made baseless claims regarding counsel's conduct, threatened counsel with charges of harassment and malpractice, and has refused to cooperate with counsel to draft her responsive pleading. Dudelson sought immediate withdrawal as counsel of record for Defendant Hochberg, as well as a stay of all proceedings and deadlines for thirty days to afford Defendant the opportunity to retain counsel or appear *pro se*. (See Declaration of Alexander M. Dudelson, dated February 27, 2024, attached hereto as "**Exhibit C**").

Plaintiffs opposed Dudelson's motion to withdraw and request to stay the proceedings, arguing once again that Hochberg's ongoing abusive practices, deliberate delays, and flagrant disrespect for the judicial system that have caused not one, but two defense attorneys to withdraw, has significantly prejudiced the Plaintiffs by causing undue delay and disruption to the case. On February 29, 2024, Judge Liman issued an Order denying Mr. Dudelson's request for a 30-day stay of the proceedings and held his motion to withdraw *sub judice*. In denying this request, Judge Liman stated that "the progress of this case has been frustrated by what the Court can only interpret as Hochberg's repeated efforts to avoid answering the claims against her." (See Order dated

4

February 29, 2024, attached hereto as **"Exhibit D"**). That same day, Dudelson filed an Answer to the Second Amended Complaint.

On March 7, 2024, Mr. Dudelson requested that the Court schedule a hearing for his Motion to be relieved as counsel. The Court scheduled a hearing for March 27, 2024 and ordered Defendant Hochberg's appearance. The in-person hearing was held March 27, 2024, which Defendant Hochberg did <u>not</u> attend despite being ordered to do so. This was the third in-person hearing that Defendant Hochberg was ordered to appear at and deliberately failed to do so without notice or explanation to the Court for her direct disobedience. As a result, Judge Liman granted Mr. Dudelson's motion to be relieved as counsel for Defendant Hochberg.

Thereafter, no other attorney entered an appearance on behalf of Defendant Hochberg. On May 1, 2024, Plaintiffs served their Requests for Interrogatories, Production of Documents, and Requests for Admissions to Defendant Hochberg via ECF and email copy.

The Court scheduled a mandatory Settlement Conference before Magistrate Judge Parker for May 9, 2024, directing all Parties to attend in-person with their counsel. On May 6, 2024, Judge Parker issued an Order requiring appearance of Hochberg at the mandatory in-person Settlement Conference scheduled for May 9, 2024. Plaintiffs served a copy of the Order to Hochberg via email on May 7, 2024. Defendant Hochberg was notified of the mandatory settlement conference by both counsel and the Court. Nonetheless, Hochberg defied another Court Order and failed to appear for the in-person mandatory Settlement Conference before Judge Parker on May 9, 2024.

After Defendant Hochberg failed to appear for the May 9 Settlement Conference—making that the fourth court-ordered appearance she failed to appear for—Plaintiffs filed a Proposed Clerk's Certificate of Default and a Declaration of Counsel in Support of Clerk's Certificate of Default on May 22, 2024. The Clerk of the Court signed the Certificate of Default that day.

On May 28, 2024, Plaintiffs filed for their initial Motion for Default Judgment against Defendant Hochberg. That day, one of the Firm's associates, Caroline McCallan, Esq, emailed a copy of the motion to Defendant Hochberg and requested her mailing address so that Plaintiffs could also serve her via hand delivery. At 9:07 PM on May 28, 2024, Defendant Hochberg replied to Ms. McCallan email, stating: "I have someone from law enforcement (on this email) who specializes in financial crimes and will be following up with you very soon." Hochberg concluded the email by telling Ms. McCallan, "[p]lease don't contact me any further." (See copy of Ms. Hochberg's email dated May 28, 2024, attached hereto as "**Exhibit E**"). Plaintiffs promptly notified the Court of this threatening email to counsel from Defendant Hochberg.

On June 13, 2024, with permission from the Court, Plaintiffs filed a Request for Order to Show Cause Seeking sanctions and restraining Defendant from making threats or engaging in inappropriate conduct toward opposing counsel or any persons associated with opposing counsel. The Court scheduled a hearing for June 24, 2024.

On June 24, 2024, Plaintiffs' counsel appeared for the hearing on Plaintiffs' Request for an Order to Show Cause. Once again, Hochberg did not appear despite being ordered to do so by the Court. That same day, Judge Liman granted Plaintiffs' Request for Order to Show Cause and issued an Order prohibiting Defendant Hochberg from making threats, disparaging remarks, or engaging in disrespectful conduct towards Plaintiff Cardoso, Plaintiffs' counsel, Plaintiffs' attorneys and staff, or any persons known to be associated with Plaintiffs or their counsel. Judge Liman further ordered that Plaintiffs be permitted to continue contacting Defendant Hochberg, as a *pro se* litigant, via email for all litigation matters, without fear of threats or retaliation from Defendant. (See copy of Order dated June 24, 2024, attached hereto as "**Exhibit F**").

On July 11, 2024, upon Plaintiffs' request, Judge Liman canceled the previously scheduled discovery conference set for July 12, 2024, due to Defendant Hochberg's failure to respond to discovery demands that were served on her on May 1, 2024, and therefore, due by May 31, 2024. Hochberg had also failed to submit discovery propounds upon Plaintiffs.

On August 7, 2024, the Court scheduled an in-person hearing on Plaintiff's initial Motion for Default Judgment for August 21, 2024. The Court noted that the hearing would also serve as a post-discovery status conference. On August 21, 2024, Plaintiffs' counsel attended the post-discovery status conference and in-person hearing on Plaintiffs' initial Motion for Default. Plaintiffs' counsel appeared for the in-person hearing on the Motion for Default, which Defendant failed to attend and thus, failed to defend against.

On September 11, 2024, Plaintiffs filed Plaintiffs' Application for Attorneys' Fees and Expenses. Defendant failed to file any opposition to Plaintiffs' Motion for Default or request for attorneys' fees. On November 27, 2024, Judge Liman issued Order finding that while Plaintiffs had made an ample showing that they were entitled to an entry of default for Defendant's failure to defend, the Motion for Default Judgment was denied due to procedural filing errors.

On August 6, 2025, Plaintiffs filed a renewed Motion for Default Judgment along with an Application for Attorneys' Fees & Expenses. Plaintiffs served Defendant Hochberg with the motion *via* email on August 8, 2025 and attempted in-person despite Hochberg's refusal to provide a current mailing address.

On August 26, 2025, the day before her opposition was due, Defendant Hochberg filed request for extension of time to respond to motion. The Court granted Hochberg an extension to respond to the Motion for Default Judgment by September 27, 2025, explicitly stating that if Defendant did not respond by September 27, 2025, the Court would consider the motion to be

unopposed. Defendant Hochberg failed to file an opposition despite being afforded an extension by the Court to do so.

On November 7, 2025, Judge Liman issued an order granting Plaintiffs' Motion for Default Judgment as to Counts II, VII, and VIII of the Second Amended Complaint against Defendant Hochberg for violation of § 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A) and the NY Consumer Protection Act, NYGBL §§ 349 and 350. In the Order and Opinion, the Court analyzed the extensive procedural history described above, addressing Defendant Hochberg's numerous failures to appear for hearings, including a mandatory settlement conference, refusal to engage in discovery, lack of correspondence, and failure to respond to and defend against numerous motions, including both motions for Default Judgment, despite being granted extensions to respond. (See copy of the Order and Opinion, dated November 7, 2025, attached hereto as **"Exhibit G"**).

The Court stated that "[*t]he default is based on Defendant's persistent defiance of the rules and orders of this Court and failure to comply with the schedule of this Court, frustrating Plaintiffs' efforts to prosecute the case to judgment. The case has been plagued by Defendant's obstructive behavior, wasting the time of the Court and the parties.*" (Exhibit G at pp. 10-11) (emphasis added). The Court further stated that "Defendant has acted with 'cavalier disregard' toward court orders and has taken no action to defend against the allegations of the SAC despite having repeated opportunities." (Exhibit G at p. 21). In finding that this was an exceptional case warranting an award of attorneys' fees, the Court stated "[w]here such conduct 'frustrated the litigation process at every turn' and 'displayed an "utter lack of respect for the judicial process,"' an award of attorney's fees is merited." (Exhibit G at p. 43).

On November 14, 2025, Plaintiffs filed a supporting Declaration in support of Plaintiffs' application for attorneys' fees and expenses with detailed billing records supporting our request for $164,740.10 in fees and expenses. Additionally, as requested by the Court in its November 7th Order, Plaintiffs voluntarily dismissed Counts IV, V, VI, IX, and X from the SAC.

Following opposition and reply briefing from Defendant Hochberg and Plaintiffs, the Court issued an Order on May 21, 2026, granting Plaintiffs an award of attorneys' fees and expenses in the amount of $99,240.10. (See copy of Order dated May 21, 2026, attached hereto as "**Exhibit H**"). The corresponding Judgment was issued by the Court on May 22, 2026

Defendant Hochberg thereafter filed a Motion to Stay enforcement of the judgment, which has been opposed by Plaintiffs and remains pending before the Court. Thereafter, Defendant Hochberg filed the herein Motion to Vacate Default Judgment.

### FACTUAL ALLEGATIONS AND BACKGROUND

As with the procedural history in this matter, Plaintiffs submitted extensive briefing on the factual background and allegations in their August 6, 2025 Motion for Default Judgment. In conjunction with the restated summary below, Plaintiffs refer the Court to Plaintiffs' Memorandum of Law in Support of Motion for Default Judgment and the previously submitted Declaration of Cardoso (hereinafter referred to as "Aug. 6, 2025 Decl. of Cardoso") and exhibits submitted in support of the Motion for Default Judgment.

In or about April 2008, Plaintiff Cardoso opened The Surf Lodge in Montauk, New York. At all pertinent times, Plaintiff JC Hospitality has owned, operated, and managed The Surf Lodge, which is a well-known upscale boutique hotel, restaurant, bar and outdoor music venue located in Montauk, New York. Plaintiff Cardoso owns one hundred percent of JC Hospitality. (*See* Aug. 6, 2025 Decl. of Cardoso)

9

In order to best protect the value of The Surf Lodge's distinctive and well-known brand, trademarks were obtained and filed with the United States Patent and Trademark Office for the names "The Surf Lodge," and "The Snow Lodge." (*See* Aug. 6, 2025 Decl. of Cardoso). These trademarks have been held since 2008, initially by Montauk Properties, LLC, and then subsequently held by TSL Management, Inc. ("TSLM").  (*See id.*). At all pertinent times, Plaintiff Cardoso has been, and remains to date, a co-owner in TSLM. (*See id.*). For over the last twelve years, Plaintiffs JC Hospitality and Cardoso have been and continue to be the exclusive licensee of "The Surf Lodge" and "The Snow Lodge" trademarks. (*See id.*).

Defendant Hochberg was an employee of The Surf Lodge for only a brief period of time, which formed the basis of her business relationship with Cardoso. (*See id.*) In or about April 2019, prior to the COVID-19 pandemic, Plaintiff Cardoso and Defendant Hochberg, who had a friendship and business relationship through Hochberg's employment with The Surf Lodge, conceived of a yoga studio named "The Sanctuary" which would operate in the town of Montauk, New York, more than one mile from The Surf Lodge's property. (*See id.*). At all times pertinent thereto, The Sanctuary was a legally separate entity from The Surf Lodge. (*See id.*).

Around this time, Cardoso legally formed the company JM Sanctuary LLC d/b/a The Sanctuary ("JM Sanctuary LLC") and registered the company in New York State. (See LLC Formation documents, attached hereto as **"Exhibit I"**; *see also* Aug. 6, 2025 Decl. of Cardoso). Cardoso was the only listed Member of JM Sanctuary LLC at all times during which "The Sanctuary" was in existence. (*See id.*) At no point, ever, was Defendant Hochberg granted or assigned a license, sublicense, legal right, contract, or agreement, to use The Surf Lodge's trademarks/intellectual property by JC Hospitality or TSLM. (*See* Aug. 6, 2025 Decl. of Cardoso).

During the course of their brief business partnership in The Sanctuary, Hochberg controlled the

10

social media Instagram handle for The Sanctuary, and its login and passwords, and would use and update The Sanctuary's social media accordingly for marketing efforts. (*See id.*).

In or about March 2020, as COVID-19 was being declared a national and global emergency, The Surf Lodge and The Sanctuary were both forced to cease providing services to the public in accordance with federal, state, and local guidelines. In or about mid-2020, Plaintiff Cardoso, with the understanding that businesses similar to hers would be forced to remain mostly inactive for the foreseeable future, closed all operations of The Sanctuary. (*See id.*). On or around July 1, 2020, Hochberg was terminated as a Surf Lodge employee due to economic reasons and a drastic reduction in work force from the COVID-19 pandemic. (*See id.*).

Around this same time, in the summer of 2020, Defendant Hochberg became deeply embroiled in a legal scandal regarding her refusal to pay rent on a luxury property she had leased in Montauk for multiple months, which sparked a viral campaign of negative press about her actions. Aside from her past due rents and refusal to vacate the rented Montauk property, the allegations against Hochberg focused on her flagrant abuse of the Safe Harbor Act, a law which was clearly enacted to help those desperately affected by the Covid-19 pandemic to avoid losing their homes during the global lockdown, and not to protect people seeking to abuse the legal system by illegally squatting at luxury properties. (*See* Aug. 6, 2025 Decl. of Cardoso). During this time, numerous Montauk residents and guests of The Surf Lodge began approaching Cardoso in both her personal and professional capacities to discuss Hochberg's actions as they related to Hochberg's prior affiliation with The Surf Lodge, which caused reputational harm to Plaintiff Cardoso and The Surf Lodge. (*See id.*).

Plaintiff Cardoso reasonably concluded that, based on numerous factors including Hochberg's legal scandal, she could no longer conduct business of any kind with Hochberg without

11

suffering further damage. (*See id.*) Cardoso notified Hochberg of her intentions to permanently cease business relations with Hochberg and to close JM Sanctuary LLC as a courtesy before doing so. (*See id.*)

However, shortly after Cardoso notified Hochberg of her decision to sever all remaining business ties with her, in or around January 2021, Hochberg continued doing business on behalf of "The Sanctuary," – despite it being closed—and using Cardoso's name individually, as a means of luring one of The Surf Lodge's major clients, AMEX (American Express) to do business with Hochberg. (*See id.*). Without Plaintiff Cardoso's knowledge or approval, Hochberg had apparently been in talks with AMEX for more than three (3) months—from January 2021 to April 2021— pitching AMEX a partnership activation deal between The Sanctuary and Saks Fifth Avenue to create the "American Express Sanctuary Wellness House" in Bridgehampton. (*See* Aug. 6, 2025 Decl. of Cardoso).

Notably, Plaintiff Cardoso learned of Hochberg's unauthorized, secretive dealings from a representative of the production company Black Flower Agency, which was involved on the production side of the project. The Black Flower Agency informed Cardoso that they were surprised that Cardoso had missed numerous phone calls, Zoom meetings, and other communications related to the project, and how Cardoso appeared to be irresponsible due to her lack of participation in the process. (*See id.*). It became clear to Plaintiff Cardoso the devastating effects that Hochberg's unauthorized actions were having on Cardoso's personal reputation, The Surf Lodge's reputation, and various business relationships related to The Surf Lodge. Hochberg had no authority or permission to do business under the name "The Sanctuary" and was inappropriately using Cardoso's name and The Surf Lodge's name as a vehicle to gain business for herself was also illegal, infringing on Plaintiff JC Hospitality's intellectual property, and creating a false

association that was and continues to be damaging to both Cardoso and The Surf Lodge. (*See id*).

Accordingly, Cardoso's lawyers sent Hochberg three (3) cease and desist letters between October 2020 and January 2023, each letter advising of Hochberg's infringement on The Surf Lodge's intellectual property in all aspects, including her flagrant actions on Instagram that was causing damage to Plaintiffs. (*See* copies of cease and desist letters, attached hereto as Exhibit J,). The first cease and desist letter was sent on October 28, 2020, by our office on behalf of Plaintiffs Cardoso and JC Hospitality. In the October 28, 2020 cease and desist letter, Hochberg was put on notice to "immediately cease, desist and remove from her LinkedIn profile and social media profiles any reference, job title or affiliation that implies you are currently employed by the Surf Lodge." (*See id.*). Hochberg was further noticed to immediately cease use of the Surf Lodge email address. (*See id.*). Hochberg did not respond to the letter and continued holding herself out as affiliated with The Surf Lodge and Cardoso.

A second cease and desist letter was sent on behalf of Cardoso and JC Hospitality on December 20, 2021, by Daryl B. Cramer, Esq., whose office is located in Aspen, CO, demanding that Hochberg refrain from making and publishing false, defamatory statements against Cardoso, The Surf Lodge, The Snow Lodge, and affiliated entities. (*See id.*). The cease-and-desist letter warned Hochberg that litigation would be imminent if she continued defaming Plaintiff Cardoso and her business to third parties, and reserved all rights to take legal action as necessary. (*See id.*).

However, just days after she received the letter, Defendant Hochberg appeared at The Snow Lodge's property inside the St. Regis in Aspen, CO.  Fearing for her safety and that Hochberg would persist with further malicious actions, Plaintiff Cardoso filed a police report with the Aspen Police Department in order to document the incident and seek restraints against Hochberg. (*See* Aug 6., 2025 Declaration of Cardoso).

Despite these legal notices which were received by Hochberg and her then-counsel, Hochberg continues to this date to knowingly, deceitfully, and willfully use the intellectual property belonging to The Surf Lodge without issuing any disclaimer disassociating her personal business ventures with The Surf Lodge or Cardoso. (*See* Aug. 6, 2025 Declaration of Cardoso). Cardoso has had numerous communications with patrons, business associates, personal friends, and vendors of The Surf Lodge who were and continue to be under the impression that The Surf Lodge and Hochberg's business ventures were and are associated with one another and, further, that Hochberg's business originates with Cardoso and The Surf Lodge. (*See id.*).

Most significantly, in the months leading up to the filing of the present lawsuit, and while The Surf Lodge was communicating through its attorneys to cease and desist wrongful and illegal use of The Surf Lodge's intellectual property, Hochberg willfully/deceptively/deliberately changed the username of The Sanctuary from @thesanctuarywellness to @thesurflodgesanctuary on the social media platform Instagram, in order to create a clear false association and likelihood of confusion that The Sanctuary is currently affiliated with Cardoso and The Surf Lodge. (*See id.*). The "@thesurflodgesanctuary" handle presently has approximately 1,161 active followers on Instagram.[1] Additionally, the "@thesurflodgesanctuary" Instagram page also lists "716 Montauk Highway, Suite #3, Montauk, New York" as its business address – which is further evidence that Hochberg is still actively falsely portraying that The Sanctuary is open and conducting business. (*See id.*).

Notably, there is no language on the "@thesurflodgesanctuary" Instagram account page reflecting that the business is clearly closed, and/or that it is not affiliated with The Surf Lodge, located roughly one (1) mile from the actual Surf Lodge. (*See id.*).  When searching for The Surf

---

[1] @thesurflodgesanctuary, INSTAGRAM,
https://www.instagram.com/thesurflodgesanctuary/?igsh=eGQzdXVzc25hc3F3# (last visited Aug. 5, 2025)

Lodge on Instagram using the search bar, the "@thesurflodgesanctuary" account comes up as the first search option ahead of the official The Surf Lodge Instagram account, "@thesurflodge". (*See* Aug. 6., 2025 Decl. of Cardoso). The ongoing use of the "@thesurflodgesanctuary" Instagram account is creating confusion among consumers that "The Sanctuary" is falsely affiliated with The Surf Lodge.

Notably, on December 05, 2022, Hochberg's then-attorneys sent a letter to the Plaintiffs indicating their client's intentions to not comply with the cease and desist and instead, would stall the process. (*See* Aug 6, 2025 Decl. of Cardoso). In response, our office sent a third and final cease and desist letter to Hochberg through her then-attorneys and demanded that Hochberg cease and desist, threatening legal action against her. (*See* Exhibit J). Plaintiffs made it clear that if Hochberg did not immediately change the "@thesurflodgesanctuary" Instagram name and cease and desist from further infringement of The Surf Lodge's name/brand/likeness, as well as desist from further actions relating to falsely generating business via The Sanctuary, then Cardoso and The Surf Lodge would be left with no choice but to file suit and/or injunctive relief against Hochberg to stop further harm. (*See id.*). Even after a third letter advising her of her illegal actions and the pendency of a lawsuit, Hochberg took no corrective actions to change the Instagram handle from "@thesurflodgesanctuary". (*See id.*). Defendant Hochberg performed these illegal acts, and continues to perform these acts, with full knowledge and awareness that she does not possess a license, legal right, contract, or agreement, to use The Surf Lodge's trademarks/intellectual property.

15

## LEGAL ARGUMENT

### POINT I:

**DEFENDANT HOCHBERG'S DEFAULT WAS WILLFUL AND NOT EXCUSABLE NEGLECT AND THEREFORE, DEFENDANT'S REQUEST TO VACATE THE COURT'S ENTRY OF DEFAULT JUDGMENT PURSUANT TO FED. R. CIV. P. 60(b)(1) MUST BE DENIED**

Defendant Hochberg requests that, pursuant to Fed. R. Civ. P. 60(b)(1), (b)(3) and (b)(6) the Court vacate the Court's November 7, 2025 Opinion and Order granting default judgment on Counts II, VII, and VIII, the Court's May 21, 2026 Memorandum and Order, as well as the Court's award of attorneys' fees and costs to Plaintiffs.

When reviewing a motion to vacate default pursuant to Fed. R. Civ. P. 60(b)(1), "the court's determination must be guided by three principal factors: '(1) whether the default was willful, (2) whether the defendant demonstrates the existence of a meritorious defense, and (3) whether, and to what extent, vacating the default will cause the nondefaulting party prejudice.'" *New York v. Green*, 420 F.3d 99, 108 (2d Cir. 2005) (quoting *State Street Bank & Trust Co. v. Inversiones Errazuriz Limitada*, 374 F.3d 158, 166 (2d Cir. 2004)). "'Of these three criteria, "willfulness is preeminent, and a willful default will not normally be set aside."'" *Circuito Cerrado, Inc. v. Velasquez*, 296 F.R.D. 122, 125 (E.D.N.Y. 2013) (quoting *Arista Records, Inc. v. Musemeci,* No. 03 CV 4465, 2007 WL 3124545, at *4, 2007 U.S. Dist. LEXIS 81630, at *12 (E.D.N.Y. Sept. 18, 2007)). "'[C]ourts have an interest in expediting litigation, [and] abuses of process may be prevented by enforcing those defaults that arise from egregious or deliberate conduct,". *S.E.C. v. McNulty,* 137 F.3d 732, 738 (2d Cir. 1998) (quoting *American Alliance Insurance Co. v. Eagle Insurance Co*., 92 F.3d 57, 62 (2d Cir.1996)).

In examining the first element of whether the default was willful, the Second Circuit has stated that "willfulness in the context of a judgment by default requires 'something more than mere

16

negligence,' such as 'egregious or deliberate conduct'". *Ibid*. Under Fed. R. Civ. P. 60(b)(1), the movant has the burden of proving that the default was a result of "mistake, inadvertence, surprise, or excusable neglect". *See* Fed. R. Civ. P. 60(b)(1). Defendant Hochberg is arguing that her default was a result of excusable neglect and should therefore be vacated by the Court.

The Court is well aware of the pattern of willful conduct by Hochberg in this litigation as evidenced by the Court's comprehensive analysis of said conduct in the Court's November 7, 2025 Opinion and Order granting Plaintiffs' motion for default judgment. The November 7th Opinion and Order details the extensive procedural history in this case, including the numerous failures on Defendant Hochberg's part to appear for Court-ordered hearings, including a mandatory settlement conference, and to respond to Court ordered filing deadlines, including the motion for default judgment. This demonstrates a pattern of willful default – not excusable neglect – by Defendant Hochberg that is ongoing in this litigation.

Specifically, the Court stated that "default is based on Defendant's persistent defiance of the rules and orders of the Court and failure to comply with the schedule of this Court, frustrating Plaintiffs' efforts to prosecute the case to judgment. The case has been plagued by Defendant's obstructive behavior, wasting the time of the Court and the parties." (*See* Exhibit G at pp.10-11). It is because of these reasons that the Court deemed this an exceptional case warranting the award of attorneys' fees due to Hochberg's willful default. (*See* Nov. 7 Opinion at pp.42-43). The Court's decision to enter default judgment based on Hochberg's willful default is entirely consistent with well-established case law. *See Melo v. Milagro Grocery Corp.*, 750 F. Supp. 3d 38, 53 (E.D.N.Y. 2024) (finding willful default where defendant committed "acts of noncompliance" when he failed to obtain new counsel after its counsel withdrew, failed to notify the Court of their intention to defend, despite being ordered to do so); *Victoriano Gonzalez v. Victoria G's Pizzeria LLC*, No. 19-

17

CV-6996, 2021 WL 6065744, at *3 (E.D.N.Y. Dec. 22, 2021), (finding willful default based on defendants' failure to comply with court orders to obtain counsel or complete discovery), *report and recommendation adopted*, 2022 WL 842666, at *4 (Mar. 22, 2022); *Castillo v. Zishan, Inc.*, No. 16-CV-6166, 2017 WL 3242322, at *2 (S.D.N.Y. July 28, 2017) (finding willful default based on defendants' failure to appear *pro se* or obtain new counsel, and their failure to respond to motion for default judgment).

The extensive procedural history in this case undoubtedly shows a pattern of inexcusable neglect. The vacatur of default judgment is reserved for a movant who has acted in good faith and presented a valid and excusable reason for defaulting in the case, not for a movant who has been repeatedly told by the Court prior to the entry of default judgment that her behavior is defiant, obstructive, and who has acted with a "cavalier disregard" for court orders and rules. Not to mention that Defendant Hochberg had not one, but two attorneys who had to withdraw as defense counsel, citing to harassment and refusal to cooperate from Defendant Hochberg. Our office also received threatening correspondence from Defendant Hochberg imposing a threat of law enforcement on us and demanding we stop contacting her even though she was representing herself *pro se*. Defendant Hochberg's claim that this behavior should all be deemed "excusable neglect" is plainly offensive to the Court and to Plaintiffs, and is not supported by any legal authority.

In the November 7th Opinion and Order, the Court noted that Defendant Hochberg failed to file an opposition to the motion for default judgment despite being duly served on August 8, 2025 and receiving an extension of time to respond by September 27, 2025. (*See* Exhibit G at pp.7-8). Notably, the Court explicitly stated that the "Court warned that if Defendant did not respond by September 27, 2025, the Court would consider the motion to be unopposed." (*Id.*). Defendant Hochberg now claims that she never received notice that the Court granted her extension request

18

to oppose the motion, and had she received the Court's response, she would have responded. (Hochberg Decl. at 212-213). This is just another convenient excuse that cannot be accepted. Defendant Hochberg e-filed her urgent extension request on August 27, 2025. Plaintiffs' counsel immediately filed an opposition letter that same day. The next day, August 28, 2025, the Court granted Hochberg's extension request. The Court made clear on numerous occasions that Hochberg, as a *pro se* party, would be held to the same standard as attorneys and was presumed to be aware of docket entries. If did not receive the notice from the Clerk of the Court as she now claims, she is still under an obligation to check the docket especially as it relates to her own extension request that she filed. Defendant Hochberg cannot claim ignorance here.

Defendant Hochberg now wants to be involved in this litigation only after default was entered against her and she is faced with a judgment of attorneys' fees and costs against her. Defendant Hochberg argues that her "missed appearances, missed deadlines, and litigation failures occurred during a continuous period of bereavement, loss of legal funding, counsel disruption, psychiatric crisis, eviction, homelessness, and medical hardship." (Hochberg Brief at p. 27). Courts have routinely rejected financial hardship, inability to pay legal counsel, or the loss of counsel as excusable neglect under Fed. R. Civ. P. 60(b).  *See Melo,* 750 F. Supp. 3d at 50 (stating that while the court is "sympathetic to [defendant's] predicament of not being able to afford counsel for his defense, that circumstance, accepting it as true, does not excuse Defendants' failure to defend this action); *ILGWU Nat. Ret. Fund v. Empire State Mills Corp.*, 696 F. Supp. 885, 888 (S.D.N.Y. 1988) (finding that a "party's lack of funds, however, does not justify a party's complete disregard of the rules of the court or its failure to notify the court of its predicament").

The court in *King v. Galluzzo Equip. & Excavating Inc.* found that the defendants' default was willful based on their failure to obtain counsel after being advised of the risk of default, their

19

failure to appear at the default hearing, and "failure to respond to plaintiffs' pre- and post-judgment discovery requests." *King v. Galluzzo Equip. & Excavating Inc.*, 223 F.R.D. 94, 97 (E.D.N.Y. 2004). The court declined to vacate default because the defendants' actions "bespeak a deliberate decision to default, rather than excusable neglect." *Ibid.* The court further stated that "Defendants' inability to hire new counsel does not serve as an excuse for default." and it was "clear that defendants had more than adequate notice that a default was to be entered against them and nevertheless failed to appear or notify the court of any difficulty in retaining counsel." *Id.* at 98. The court further stated that defendants' inability to pay attorney's fees did "not justify their 'complete disregard of the rules of the court or [their] failure to notify the court of [their] predicament.'" *Id.* (quoting *ILGWU Nat'l Retirement Fund,* 696 F.Supp. at 888)

In instances where the court vacates a default, a court will look to the defaulting party's efforts in communicating with the Court to demonstrate good faith efforts to defend the lawsuit. For example, in *Traguth v. Zuck,* 710 F.2d 90 (1983), the Second Circuit vacated an entry of default against a *pro se* defendant for filing a late Answer on the basis that the *pro se* defendant promptly communicated with the Court after learning of responsive pleading window, documented her efforts to obtain counsel, and responded diligently. *Id.* at 95.  "[W]here a party is notified that [s]he is in default and [s]he apparently makes no effort to appear *pro se* or to explain h[er] situation to the opposing party and the court, such neglect is inexcusable." *Original Appalachian Artworks, Inc. v. Yuil Int'l Trading Corp.*, 105 F.R.D. 113, 116 (S.D.N.Y. 1985)

Contrary to Hochberg's assertions, her list of financial and emotional hardships do not amount to a valid excuse for her willful default in the eyes of the law, especially when Hochberg was presented with countless opportunities prior to Plaintiffs' August 2025 Motion for Default Judgment to communicate with opposing counsel, appear before the Court, and keep the Court

20

apprised of her apparent hardships to show a willingness to defend the lawsuit. Despite being undoubtedly aware of this litigation, Defendant Hochberg deliberately chose not to communicate with the Court or Plaintiffs' counsel and blatantly disregard numerous Court orders. In fact, the first time when Defendant Hochberg decided to respond and communicate with Plaintiffs' counsel was on May 28, 2024, when she threatened Plaintiffs' counsel with law enforcement investigation and told counsel not to contact her any further.

Defendant Hochberg's claim of hardship based on personal circumstances does not excuse the repeated failures to abide by the Court's rules and deadlines. As stated by the Court, "Defendant has acted with 'cavalier disregard' toward court orders and has taken no action to defend against the allegations of the SAC despite having repeated opportunities. She thus has defaulted." (*See* Exhibit G at p. 21). Furthermore, Hochberg's submission of a Declaration of an unknown attorney not involved in this litigation to attest that she has not willfully defaulted in this litigation does not negate the findings of this Court. This Declaration bears no weight when the Court here has witnessed firsthand the conduct of Ms. Hochberg and determined said conduct to be willful default worthy of an entry of default judgment and award of attorneys' fees.

## POINT II:

### DEFENDANT HOCHBERG CANNOT ESTABLISH A MERITORIOUS DEFENSE AFTER WILLFULLY REFUSING TO ENGAGE IN DISCOVERY DURING THE COURSE OF THIS LITIGATION

"It is well established that in order to vacate a default judgment, the moving party is required to demonstrate both a valid excuse for the default and a meritorious defense." *Stow Mfg. Co. v. F & K Supply Inc.*, 232 A.D.2d 958, 959 (1996). In order to make a sufficient showing of a meritorious defense in a motion to vacate a default judgment, the defendant "must present evidence of facts that, 'if proven at trial, would constitute a complete defense'". *S.E.C*, 137 F.3d at 740

(quoting *Enron Oil Corp. v. Diakuhara,* 10 F.3d 90, 98 (2d Cir. 1993)). Notably, courts have held that a party who deliberately refused to participate in discovery cannot credibly assert a meritorious defense based on facts she chose not to develop. *See King v. Galluzzo Equip. & Excavating Inc.*, 223 F.R.D. at 99; *see also Sasso v. M. Fine Lumber Co., Inc.*, 144 F.R.D. 185, 190 (E.D.N.Y.1992) (denying defendant's motion to vacate default judgment by rejecting defendant's defenses, explaining that defendant "sat on his hands" by failing to appear for deposition and produce documents in discovery); *Solomon v. 318 Fashion, Inc.,* 1994 WL 702008, at *2 (S.D.N.Y. Dec. 14, 1994) (although a meritorious defense was presented, court declined to vacate the judgment because defendant did not meet burden of showing that his behavior was excusable and not willful after he "deliberately failed to respond in any fashion).

In denying the defendants' motion to vacate default judgment, the court in *King v. Galluzzo Equip. & Excavating Inc.* rejected defendants presented defenses because "they consistently refused to respond to discovery requests and to plaintiffs' application for a default judgment." *King,* 223 F.R.D. at 99. The court stated that "such meritorious defenses as defendants now, nearly a year later, claim they have, they chose not to present when they could have, but chose, instead, to forego them by default." *Ibid.* The Second Circuit in *In re Chalasani*, affirmed the district court's refusal to vacate a default judgment and reopen discovery where the defendant's own failure to comply with discovery substantially contributed to the willful default. *In re Chalasani*, 92 F.3d 1300, 1307–08 (2d Cir. 1996). Likewise, the court in *Matrix Polymers, Inc. v. A-E Packaging, Inc.,* denied the motion to vacate default and rejected the defenses presented, stating that "[b]y willfully defaulting they denied themselves the opportunity to engage in discovery, and their present regret neither abrogates their willfulness nor converts feigned indignation into a meritorious defense." *Matrix Polymers, Inc. v. A-E Packaging, Inc.,* No. 15-CV-6040

22

(LDW)(SIL), 2017 WL 9485652, at *10 (E.D.N.Y. Jan. 5, 2017), *report and recommendation adopted,* No. CV 15-6040, 2017 WL 2189546 (E.D.N.Y. May 18, 2017)

Similarly, in *Solomon v. 318 Fashion, Inc.,* the court denied the defendant's motion to vacate default, finding that the defendant's failure to defend did not result from any such non-willful excusable neglect. *Solomon,* No. 93 CIV. 7699 (CSH), 1994 WL 702008, at *2. The court determined that the defendant "deliberately failed to respond in any fashion. He simply ignored the action until he suffered its consequences when plaintiffs froze his bank accounts in an attempt to execute the judgment." *Ibid.* The court emphasized that "while the authorities express a preference for promoting decisions on the merits of claims, [the court] cannot countenance the sort of behavior which resulted in the present judgment of default by authorizing its withdrawal. [Defendant] simply has no valid excuse for his failure to defend the action and there accordingly exists no basis upon which to allow the judgment to be set aside." *Ibid.* The court in *Stow Mfg. Co. v. F & K Supply In.* also denied defendant's motion to vacate default, stating that "while the law favors resolution of controversies on the merits, defendant's conduct throughout this lawsuit has served only to delay and to frustrate a determination of the case on its merits." *Stow Mfg. Co.*, 232 A.D.2d at 959 (internal citations omitted).

Defendant Hochberg asks this Court to reverse its own ruling on default judgment because the ruling of default was based on a "one-sided default record". The irony in this statement is that the conduct of Defendant Hochberg throughout this litigation, which has been witnessed and noted by the Court on numerous occasions, is the direct reason for her "one-sided default record". It has been well established that Defendant Hochberg has impeded the ability to engage in any meaningful discovery in this case. Plaintiffs sent discovery demands to Defendant on May 1, 2024, which two years later, have still not been answered by Defendant Hochberg. Hochberg has had

23

two years to serve her own discovery demands upon the Plaintiffs and has failed to do so. The Court set a fact discovery deadline of June 7, 2024, with the completion of all discovery by August 9, 2024. The July 12, 2024 discovery conference was canceled due to Defendant Hochberg's failure to respond to discovery demands that were served on her on May 1, 2024, and therefore, due by May 31, 2024. Hochberg had also failed to submit discovery propounds upon Plaintiffs. Defendant Hochberg also failed to appear for the August 21, 2024 post-discovery status conference and in-person hearing on Plaintiffs' initial Motion for Default despite being ordered to appear.

Defendant Hochberg already had the opportunity to litigate the issues of liability on the motion for default judgment when she was served with the motion, received a response extension that she requested, then blatantly ignored that deadline date set by the court and failed to submit any opposition. Now, Defendant Hochberg asserts that she is ready to engage in discovery over two years after she was served discovery demands and two years since the close of discovery. Defendant Hochberg should not be permitted to pick and choose when she wants to be involved in this litigation. Hochberg cannot now seek to create a factual record of her own through her Declaration in a motion to vacate default judgment when she actively chose not to engage in discovery.

### A. Defendant Hochberg's Account-Conversion Theory of Defense Lacks Merit and Does Not Provide for a Complete Defense Against the Court's Liability Findings

Even if she had engaged in discovery, Hochberg's submitted exhibits still fail to establish a meritorious defense on the Court's findings of liability on Section 1125(a) of the Lanham Act and Sections 349 and 350 of the New York General Business Law claims of false association in the November 7, 2025 Order and Opinion. Hochberg has submitted over 256 pages of various isolated exhibits in an effort to distract the reader from the central claims against her and fabricate genuine issues of material facts that simply do not exist.

24

In an attempt to dispute the Court's ruling on liability on Section 1125(a) of the Lanham Act and Sections 349 and 350 of the New York General Business Law claims of false association, Defendant Hochberg claims that there could be no false association because she never converted the Instagram handle for The Sanctuary Instagram page at any point in time from the "theSanctuaryWellness" to "TheSurfLodgeSanctuary" and never owned, controlled, administered or possessed login credentials for The Sanctuary Instagram page. In support of this narrative, she provides a screenshot of an unrelated Instagram page with the handle "thesanctuarywellness". (*See* Hochberg ex. M). She claims that because this Instagram page exists, there is no factual possibility that she could have changed The Sanctuary Instagram handle. This is a logical fallacy and a red herring intended to distract the Court from Hochberg's unauthorized retention of The Sanctuary Instagram page after the dissolution of the business. There are many potential explanations for the existence of a similarly named Instagram page. For example, the username for The Sanctuary page may very well have included a minor period (.) or an underscore (_) or any other minor punctuation mark in the "TheSanctuaryWellness" name, which then would have very well permitted its existence at the same time as this irrelevant third-party Instagram page Defendant Hochberg references as Exhibit M. Plaintiffs do not have access to the Instagram account because Hochberg changed the login credentials and refused to turn over same after the business relationship was severed and after Plaintiff Cardoso closed down The Sanctuary and dissolved the business.

Defendant Hochberg further alleges that The Sanctuary Instagram page only ever had one handle name—"TheSurfLodgeSanctuary"—starting in 2019 and was never changed by her. The evidence in the record demonstrates otherwise. In Plaintiffs' August 6, 2025 Motion for Default Judgment, Plaintiffs submitted evidence from The Sanctuary Instagram page, with the current handle as "thesurflodgesanctuary", showing that the account in fact had two former usernames,

thereby defeating Hochberg's claim that she never changed the handle. (*See* Exhibit K, attached hereto). Defendant Hochberg asserts that she was in charge of all branding and promotion for The Sanctuary, yet never owned, controlled, or possessed the login credentials for the brand's social media page. Defendant Hochberg did in fact control the social media Instagram handle for The Sanctuary, and its login and passwords, and would use and update The Sanctuary's social media accordingly for marketing efforts in accordance with her job responsibilities between 2019 and 2021. (*See* Aug. 6, 2025 Decl. of Cardoso). Plaintiffs' January 9, 2023, cease and desist letter stated that in or around December 2022, The Sanctuary Instagram page, which in the time after the dissolution of the business existed under the handle "TheSanctuaryWellness", had been changed a second time to "TheSurfLodgeSanctuary" despite The Sanctuary no longer being in business. (*See* Exhibit J).

Defendant Hochberg focuses her entire argument on this "conversion theory" which has absolutely no logical or legal merit. If Plaintiffs had access to the Instagram all along – why would they send cease and desist letters? Why would they not shut down the Instagram page on their own after taking the legal steps to dissolve The Sanctuary business and cease all ties with Hochberg? Defendant Hochberg's proffered defense is incomplete and defies logic when reviewing the procedural history in this case and Hochberg's role and responsibilities for The Sanctuary when it was in business.

Hochberg's reliance on *JLM Couture, Inc. v. Gutman, 91 F.4th 91* (2d Cir. 2024) to support her conversion theory is misplaced. *JLM Coutoure* involved a disputed non-compete provision in an employment agreement regarding the ownership and use of a designer's own name or variation of her own name in a social media account. No such disputed provision or agreement exists in this case. There is no dispute in this case that Defendant Hochberg has absolutely no right to continue

using The Sanctuary Instagram page after the dissolution of the business as she has no legal rights of ownership to the business. Furthermore, the continued retention of The Sanctuary Instagram page with the current handle "@TheSurfLodgeSanctuary" is a direct infringement on The Surf Lodge's trademarks/intellectual property. At no point, ever, was Defendant Hochberg granted or assigned a license, sublicense, legal right, contract, or agreement, to use The Surf Lodge's trademarks/intellectual property by JC Hospitality or TSLM.

In that same vein, Defendant Hochberg also argues that Plaintiff Cardoso publicly promoted the brand using the "@thesurflodgesanctuary" handle tag in 2019 based on a screenshot taken after the fact. (*See* Hochberg ex. 2). Instagram procedures show that when a handle name is changed, all posts with that tagged handle retroactively change to the new name.[2] (*See* Exhibit L, attached hereto) Notwithstanding the fact that these screenshots are unverifiable, the existence of same does not provide a complete defense that would hold up at trial because it absolutely does not prove that Hochberg did not retain control of the Instagram page *after* her business separation from Cardoso and the dissolution of the business. Hochberg's only support in that is her own word, which is insufficient as a meritorious defense here.

Moreover, Defendant Hochberg's exhibits reflecting branding and promotional materials prepared by her as the VP of branding and promotion where she or Cardoso informally referenced

---

[2] Exhibit L attached to the Declaration of John J. Zidziunas, Esq. shows an image export of search feature on Meta AI Support Assistant on Instagram that provides answers regarding Instagram/Meta rules, policies, and procedures. Pursuant to the Meta AI support assistant, retroactive updates to tags is a part of Instagram's algorithm, stating that "When you change your handle, the change is applied retroactively to all posts, photos, and videos where you are tagged. Because tags are linked to your unique account ID rather than the text of your username, they update automatically to reflect your new handle across the platform." (*See* Exhibit L). Plaintiffs respectfully request that the Court take judicial notice of this commonly known feature on Instagram that is publicly available *via* Meta's AI Support Assistant. *See* Castronuova v. Meta Platforms, Inc., No. 23-CV-7511(KAM)(AYS), 2024 WL 1623274, at *5 (E.D.N.Y. Apr. 15, 2024) ("the Court finds that the documentary evidence provided by Defendants Meta and X Corp., which it may appropriately consider either . . . by taking judicial notice of the contents of public documents on the X Corp. and Meta websites that are not in dispute").

the Sanctuary as the "Surf Lodge Sanctuary" prior to the dissolution of the business does not defeat Plaintiffs' claims or change the crucial fact that after Hochberg's and Cardoso's severance of the business relationship, Hochberg was not permitted to use the Surf Lodge brand or trademarks, or continue operating as if The Sanctuary was still in business.  What the record does show pursuant to the formation documents is that the Sanctuary was always a legally separate entity from The Surf Lodge and formally named "The Sanctuary" not "The Surf Lodge Sanctuary". It cannot be disputed that Plaintiff Cardoso remained at all times the sole member of JM Sanctuary, LLC, and therefore, was well within her rights to close the business. It is also well within Cardoso's rights to promote The Surf Lodge brand in any way she likes as the exclusive licensee of The Surf Lodge brand and trademarks. Hochberg has no such right.

**B. Defendant Hochberg Does Not Possess Any Legal Ownership in JM Sanctuary, LLC, <u>Nor any Licensing Rights to The Sanctuary or the Surf Lodge Brand and Trademarks</u>**

In support of her Motion to Vacate Default, Defendant Hochberg produced various exhibits between 2019 and 2021 showing that she was part of the branding and promotion of The Sanctuary and that Cardoso informally referred to her as her "partner" when handling communications with vendors, media outlets, and leasing offices. Hochberg further claims that because she handled correspondence related to the property lease, taxes, and formation documents, that legally makes her a 50% owner in JM Sanctuary, LLC. Plaintiffs' submission of the LLC formation documents directly refutes this assertion.

It is not disputed that Cardoso and Hochberg worked together as a team for The Sanctuary business before it was dissolved in the end of 2020/beginning of 2021. It is important for the Court to understand that while Cardoso may have informally referred to Hochberg as her "partner", Cardoso's and Hochberg's relationship when it came to The Sanctuary between 2019 and

28

2020/2021 arose directly from Hochberg's employment at The Surf Lodge by its owner, Plaintiff Cardoso. Contrary to Hochberg's assertion, her work efforts in branding and promotion of The Sanctuary prior to its dissolution does not magically entitle her to legal ownership rights in The Sanctuary.

It cannot be disputed that Defendant Hochberg never had any legal ownership to JM Sanctuary LLC d/b/a The Sanctuary, as Cardoso is the sole member, and therefore, Hochberg had no authority, authorization, or legal basis to continue acting on behalf of The Sanctuary after it had been dissolved by Cardoso or use The Surf Lodge name, trademark, goodwill and reputation to create business for herself. At no point, ever, was Defendant Hochberg granted or assigned a license, sublicense, legal right, contract, or agreement, to use The Surf Lodge's trademarks/intellectual property by JC Hospitality or TSLM. (*See* Aug. 6, 2025 Declaration of Cardoso). Cardoso, on the other hand, remains to date, a co-owner in TSLM, and Plaintiffs JC Hospitality and Cardoso have been and continue to be the exclusive licensee of "The Surf Lodge" and "The Snow Lodge" trademarks. (*See id.*).

Defendant Hochberg has no meritorious defense against Plaintiffs claims that she had been falsely associating herself with the Surf Lodge brand and engaging in unauthorized business dealings through the deliberate use of Plaintiff Cardoso's name and The Surf Lodge name, after the severance of the business relationship and the dissolution of The Sanctuary. Defendant's own exhibits produced in her motion demonstrate that she had unauthorized business dealings with one of The Surf Lodge's biggest clients, AMEX, from January 2021 to April 2021—after the severance of the business relationship and closure of The Sanctuary—by pitching AMEX a partnership activation deal between The Sanctuary and Saks Fifth Avenue to create the "American Express x Saks Sanctuary Hamptons House" in Bridgehampton. (*See* Aug. 6, 2025 Declaration of Cardoso).

29

Defendant Hochberg attempted to legitimize her unauthorized business dealings by sending Saks Fifth Avenue and AMEX brand decks and detailed financial proposals that included Plaintiff Cardoso and The Surf Lodge—none of which had been authorized by Plaintiff Cardoso—and extensively communicating with both companies under the material misrepresentation that Plaintiff Cardoso was not only involved, but a key partner in Defendant Hochberg's projects. This is confirmed by Defendant Hochberg herself at paragraph 159 of her Declaration and in Hochberg's Exhibit AK. Hochberg admits in paragraph 159 of her declaration that, as it relates to the February 2021 AMEX correspondence, she "independently discussed opportunities relating to The Sanctuary of which I was 50% owner of . . . " At the time of this correspondence, The Sanctuary was closed as a business. Hochberg's Exhibit AK reveals that Cardoso was in fact not copied on the initial pitch deck proposal sent via email on February 23, 2021 to AMEX despite Cardoso's name being referenced numerous times throughout the email.  It is clear that Defendant Hochberg was illegally trying to operate and conduct business as The Sanctuary without Cardoso's permission or consent, and was deceptively misusing Cardoso's name and The Surf Lodge name as a vehicle to gain business for herself by creating a false association with Plaintiff Cardoso and The Surf Lodge. The fact that Hochberg forwarded the email to Cardoso the next day does not negate the deceptiveness of the behavior, in fact it supports Plaintiffs' allegations that Hochberg was caught by Cardoso attempting unauthorized dealings.

Defendant Hochberg has failed to establish a meritorious defense against Plaintiffs' claims under Section 1125(a) of the Lanham Act and Sections 349 and 350 of the New York General Business Law. In order to vacate the default judgment, there must be a showing that the default was not willful _and_ that there exists a meritorious defense. Neither element has been met here and thus, the Court should uphold its finding in the November 7, 2025 Order and Opinion and deny

Defendant's motion to vacate default.

<strong><u>POINT III:</u></strong>

<strong><u>DEFENDANT HOCHBERG'S REQUEST FOR VACATUR FOR "FRAUD ON THE COURT" IS WITHOUT MERIT AND MUST BE DENIED BY THE COURT.</u></strong>

Defendant Hochberg alternatively claims that the Court vacate the default judgment pursuant to Fed. R. Civ. P. 60 (b)(3), or in the alternative, 60(d)(3) which permits a court to "set aside a judgment for fraud on the court". Defendant Hochberg's assertion that Plaintiffs' claims in this litigation are based on fraud to the court is outlandish, offensive, and plainly unsupported.

Plaintiffs' claims against Defendant Hochberg are grounded in her continued use of trademarked and licensed material she had no right to use and continues to hold herself out to the public *via* social media as affiliated with the Surf Lodge brand after being terminated by the company and severed from the business relationship with Plaintiff Cardoso, and after being sent not one, but three cease and desist letters prior to the initiation of this lawsuit. Plaintiffs were left with no choice but to file suit against Defendant. The essence of Plaintiffs' claims is based on the evasive and defiant behavior of Defendant Hochberg, which was then placed on full display over the course of this three-year litigation.

The extensive procedural history detailing the breakdown of the relationship with not one but two defense attorneys, both of whom cited to harassment, refusal to cooperate, and threatening behavior by Hochberg against them, directly shows Ms. Hochberg's repeated pattern of erratic behavior and bad faith conduct. Not to mention Hochberg's fraudulent and deceptive conduct related to her refusal to pay rent on a luxury property in the Hamptons during the COVID-19 pandemic. Defendant Hochberg clearly has a pattern of deceptive behavior. It is not a coincidence that two sets of defense counsel, Plaintiffs' counsel, and Plaintiff Cardoso all experienced this same threatening, deceptive, and offensive behavior over the course of this litigation and in the

31

events leading up to the initiation of this litigation. Plaintiff's conduct cannot be excused because it is beyond the scope of any reasonable behavior.

The standard for fraud under 60(b)(3) and "fraud on the court" under 60(d)(3) is an extreme basis for relief that requires definitive evidence and a high bar to meet. The movant "must prove by clear and convincing evidence, that the [non-moving party] interfered with the judicial system's ability to adjudicate impartially and that the acts of the defendant must have been of such a nature as to have prevented the [moving party] from fully and fairly presenting a case or defense." *Mazzei v. The Money Store*, 62 F.4th 88, 93–94 (2d Cir. 2023). Defendant Hochberg's claim is without merit and entirely based on her perceived beliefs that are not grounded in any facts sufficient to meet the standard of "fraud on the court". As such, Defendant Hochberg's requested relief under Fed. R. Civ. P. 60 (b)(3), or in the alternative, 60(d)(3) must be denied.

<u>**POINT IV:**</u>

**PLAINTIFFS WILL BE UNDULY PREJUDICED BY A VACATUR OF THE DEFAULT JUDGMENT**

Contrary to Hochberg's assertion, Plaintiffs have been and continue to be prejudiced in this case. This case has been met with constant resistance and defiance from Defendant Hochberg for over three years where absolutely no meaningful headway has been made in this case until the Court's entry of default judgment against Hochberg.

Courts have consistently held that prejudice to the opposing party will be found when the defendant has failed to cooperate throughout the litigation. In *King v. Galluzzo Equip. & Excavating Inc.* the court found that "Plaintiffs' claim of prejudice is further supported by defendants' repeated failure to cooperate with plaintiffs' pre- and post-judgment discovery requests." *King,* 223 F.R.D. at 99 (citing *Trustees of Tapers' Ins., Annuity & Pension Funds v. Albee Drywall Partitions Corp.,* 1996 WL 294306, at *5 (S.D.N.Y. June 3, 1996))(prejudice where

32

plaintiffs would have to proceed with a lengthy trial and defendants had never responded adequately to discovery requests); *Sony Corp. v. S.W.I. Trading, Inc.,* 104 F.R.D. 535, 541 (S.D.N.Y. 1985) (prejudice where vacating judgment against defendant with history of failing to respond to discovery requests "would provide defendant an additional opportunity for stonewalling and even for disposing of additional evidence"); *see also Sasso,* 144 F.R.D. at 190 (in ERISA case, plaintiffs' "diligent efforts met largely with reluctance on the part of the defendant, and should not now serve as a basis for allowing the defendant further to delay plaintiffs' recovery").

Defendant Hochberg says she is now ready to engage in discovery and defend herself in this lawsuit. Her opportunity to defend herself here has long passed. The Court has established procedural deadlines for a reason. She does not get to say she wants to engage in discovery over two years after she was served with discovery demands and two years after discovery deadlines had passed. Not to mention a discovery conference had to be canceled by the Court because it was abundantly clear Defendant Hochberg was refusing to engage in discovery. There is no legal basis or precedent here wherein discovery should be reopened when the Defendant blatantly rejected it during the discovery window. The infringement remains ongoing. The defamation against Plaintiff Cardoso remains ongoing. As such, Defendant's motion to vacate default must be denied to avoid further prejudice to Plaintiffs.

### POINT V:

### NO EXTRAORDINARY CIRCUMSTANCES EXIST THAT WOULD WARRANT RELIEF FROM DEFAULT JUDGMENT UNDER FED. R. CIV. P. 60(b)(6)

Defendant Hochberg also seeks relief under Fed. R. Civ. P. 60(b)(6), which provides that "the court may relieve a party ... from a final judgment, order, or proceeding for ... any other reason that justifies relief." Fed. R. Civ. P. 60(b)(6). While this provision of the Rule is considered a "catchall provision" and a "'grand reservoir of equitable power to do justice in a particular case,'

33

... that reservoir is not bottomless." *Circuito Cerrado, Inc*, 296 F.R.D. at 126 (quoting *Stevens v. Miller,* 676 F.3d 62, 67 (2d Cir. 2012)). "A party seeking relief under Rule 60(b)(6) must 'demonstrate that extraordinary circumstances warrant relief.'" *Id*. (quoting *Stevens,* 676 F.3d at 67). To justify relief under Fed. R. Civ. P. 60(b)(6), "'the party seeking such relief must demonstrate that it is "faultless in the delay.'" *Circuito Cerrado, Inc.,* 296 F.R.D. at 127 (quoting *Pioneer Inv. Servs. Co. v. Brunswick Assoc. Ltd. P'ship,* 507 U.S. 380, 393 (1993)). It is clear that Defendant Hochberg is not faultless in the delays in the case. Furthermore, our courts have found that "personal problems are insufficiently "extraordinary" to justify relief under Rule 60(b)(6). These personal problems—illness and financial hardship—although evocative of sympathy, do not rise to the level of extraordinary circumstances contemplated by Rule 60(b)(6)." *Long v. Carberry*, 151 F.R.D. 240, 244–45 (S.D.N.Y. 1993). Defendant Hochberg's conduct throughout the entirety of this litigation does not entitle her to relief under Fed. R. Civ. P. 60(b)(6).

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendant Hochberg's Motion to Vacate Default Judgment.

Respectfully submitted,

*JOHN J. ZIDZIUNAS & ASSOCIATES, LLC*
By:    */s/ John J. Zidziunas*
John J. Zidziunas, Esq.

*Attorneys for Plaintiffs,*
*JC Hospitality, LLC and Jayma Cardoso*

**Dated: June 30, 2026**